

2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

# INDEMNITY AGREEMENT
## IN FAVOR OF

### TRISURA INSURANCE COMPANY and/or TRISURA GUARANTEE INSURANCE COMPANY

made under the laws of the State of New York of **February 3rd, 2022**

BY:

**Bighorn Construction and Reclamation, LLC (**████████████**)** ■
**Bighorn Investments and Properties, LLC (**███████████**)**
**Bighorn Sand & Gravel LLC (**███████████**)**
**Bridgelink Commodities LLC (**███████████**)**
**Bridgelink Engineering LLC (**██████████**)**
**Bridgelink Investments, LLC (**███████████**)**
**Bridgelink Renewable Energy Development LLC (**███████████**)**
**Bridgelink Renewable Energy Investments LLC (**███████████**)**
**Intermountain Electric Service, Inc. (**███████████**)**
**Cole Wayne Johnson (**████████████**)**
**Cord Henry Johnson (**███████████**)**
**Cassie Hamilton (**███████████**)**

(the person(s) listed above being collectively the "Indemnitors" and each an "Indemnitor")

**WHEREAS**
(A)   one or more of the Indemnitors, in his, its or their own name(s) or as joint venturer(s) with others, may desire, or be required, to procure the execution and delivery by Trisura Insurance Company (the "Surety") of Bonds as hereinafter defined or one or more of the Indemnitors may request the Surety to refrain from cancelling or attempting to cancel such Bonds as the Surety may already have executed or procured the execution of;

(B)   each of the Indemnitors understands that the Surety expressly requires the delivery of this Agreement as part of the consideration for the execution by the Surety of such Bonds which may already have been furnished by the Surety in reliance upon a representation that this Agreement would be executed, or which may hereafter be furnished, or for the refraining from cancelling or attempting to cancel said Bonds; and

(C)   each of the Indemnitors hereby represents to the Surety that such Indemnitor has a substantial, material and beneficial interest in the obtaining of Bonds (whether or not such Indemnitor is a principal under any Bond(s) as hereinafter defined) or in the Surety's refraining from cancelling or attempting to cancel Bonds.

**NOW THEREFORE**, in consideration of the sum of Two Dollars ($2.00) and other good and valuable consideration paid or furnished by the Surety to each of the Indemnitors (the receipt and sufficiency of which are hereby acknowledged) and of the Surety having executed in the past, presently executing or procuring the execution of Bonds for which application is now pending, or which may be hereafter applied for, or executing in the future one or more Bonds, or of any alteration, renewal, continuation or extension thereof, or of the Surety's refraining from cancelling or attempting to cancel the same, the Indemnitors jointly, severally and for each other do hereby covenant and agree with the Surety as follows:

1.   **DEFINITIONS**
In the present Agreement:
(a)   "Bond" means a contract of suretyship, guarantee or indemnity, an agreement or consent to provide such a contract and the continuation, extension, alteration, amendment, increase, decrease, renewal or substitution of such a contract, agreement or consent, in respect of the Indemnitor(s) (or any or all of them, if more than one, or any affiliate(s) and/or partner(s) of any of them, or any other principal for which the same is requested by an Indemnitor), whether issued by the Surety, any successor of the Surety, or any Beneficiary as defined by section 8 below, and whether issued before, on or after the date of this Agreement;

(b)   "Bonded Contract" means a Contract in respect of which any Bond(s) is or may at any time hereafter be issued;

(c)   "Bonding Facility" means any past, present or future agreement or arrangement between the Surety and the Indemnitors or any of them providing for the issuance of any Bond(s);

(d)   "Contract" includes all documents comprising the contract documents including but not limited to general and special conditions, specifications and drawings, and every change, addition, substitution, successor, or new contract;

(e)   "Event of Default" means:



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

(i)    any breach or alleged breach of any of the covenants and agreements herein contained, Including, but not limited to, any failure to post collateral as required under this Agreement, or of any term or condition of any Bonding Facility; or

(ii)    any abandonment, forfeiture, or breach of, or failure, refusal or inability to perform, any Bonded Contract or any liability under a Bond; or

(iii)    any failure, refusal or inability of a principal to pay bills or other indebtedness incurred in, or in connection with, the performance of any Bonded Contract or any other contract; or

(iv)    a declaration of Bonded Contract default by an obligee;

(v)    Surety's good faith establishment of a reserve;

(vi)    improper diversion of Bonded Contract funds or any Indemnitor's assets to the detriment of Bonded Contract obligations;

(vii)    any Indemnitor's dying, becoming legally incompetent, being imprisoned, being convicted of a felony, or disappearing and being unable to be located;

(viii)    any representation furnished to Surety by or on behalf of any Indemnitor proving to have been materially false or misleading when made;

(ix)    any assignment by any of the Indemnitors for the benefit of creditors, or the appointment, or any application for the appointment, of a receiver or trustee for any of the Indemnitors, whether insolvent or not; or

(x)    any proceeding or the exercise of any right which deprives any of the Indemnitors of the use of any of the Bonded Contract Equipment and Material or any assets necessary or desirable to complete any Bonded Contract; or

(xi)    any change or threat of change in the character, identity, control (the addition or departure of any person or entity having a twenty percent (20%) or greater ownership), management, beneficial ownership or existence of a principal; or

(xii)    any other occurrence, condition or circumstance (whether or not similar to any of the foregoing) which in the sole opinion of the Surety may expose the Surety to loss, cost or expense;

(f)    "execute" and "execution" include procure and procurement for execution;

(g)    "hereof", "herein", "hereto" and similar expressions mean and refer to this Agreement and not to any particular section, subsection, clause or subclause;

(h)    "person" means and includes individuals, partnerships, joint ventures, trusts, corporations and associations;

(i)    "principal" means, in relation to any Bond or Bonded Contract, each and all of the principal(s) named therein or a party thereto;

(j)    the singular form includes the plural and the plural includes the singular, and the word "Indemnitors" or any pronoun referring thereto, whether singular or plural, is to be construed as referring to the undersigned person(s), though they be or include one or more individuals, partnerships, associations or corporations;

(k)    the neuter pronoun shall be read as masculine or feminine, as circumstances require; and

(l)    the division of this Agreement into sections, subsections, clauses and subclauses, and the insertion of headings, are for convenience of reference only and shall not affect the interpretation or construction hereof.

## 2.    INDEMNITY

Each of the Indemnitors shall indemnify and keep indemnified the Surety, against any and all losses, charges, expenses, costs, claims, demands and liabilities (hereinafter called "Indemnity Losses") of whatsoever kind or nature (including, but not limited to, the fees and disbursements of adjusters, consultants and counsel and the establishment or increase of a reserve to cover any possible Indemnity Loss) which the Surety may sustain or incur:

(a)    by reason of having executed or procured the execution of any Bond(s) (or an allegation that the Surety should have done so), including, but not limited, Indemnity Loss incurred in making any investigation in connection with any Bond, prosecuting or defending any action in connection with any Bond, obtaining the release of any Bond; or

(b)    by reason of the failure of the Indemnitors to perform or comply with this Agreement or any Bonding Facility; or

(c)    in enforcing any of the covenants and conditions hereof.

## 3.    PERFORMANCE AND FEES

(a)    The Indemnitors covenant to perform all the conditions of each Bond, Bonded Contract, and any and all alterations, modifications, renewals, continuations, and extensions thereof.

(b)    Without limiting the generality of the foregoing, the Indemnitors shall pay to the Surety:

(i)    all premiums and fees related to Bonds, and all modifications, renewals, and extensions thereto;

(ii)    any annual fee, setup fee or prequalification fee related to any Bonding Facility; and

(iii)    any other expenses incurred by the Surety in relation to the establishment and maintenance of a Bonding Facility for the Indemnitors or any of them.

## 4.    APPLICATION OF THIS AGREEMENT

(a)    This Agreement shall apply to all Bonds executed by or on behalf of the Surety, and any Bonding Facility relating thereto, on behalf of:

(i)    any Indemnitor(s);

(ii)    any present or future affiliate(s) or partner(s) of any Indemnitor; or

(iii)    any other principal at the request of an Indemnitor;



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

in each case in its own name or as joint venturer with others, from time to time, whether prior to or subsequent to the execution and delivery hereof, and over an indefinite period of years, until this Agreement shall be terminated in accordance with the terms hereof, and the Indemnitors agree that notice of the execution of such Bonds need not be communicated to them. For greater certainty, and without limiting the generality of any other provision hereof, this

Agreement shall also apply to any other matter arising out of or connected with any such Bond (including any Bond applied for but not issued) or any Bonded Contract relating to any such party.

(b)    This Agreement shall bind:

    (i)    any present or future affiliate or partner of any of the Indemnitors; and

    (ii)    any participant in any joint venture or other form of common enterprise of which the Indemnitor was a member (or was to become a member) at the time a Bond was furnished;

and the Indemnitors shall, upon the request of the Surety, cause any such affiliate, partner or participant to execute and deliver to the Surety an adhesion, in such form and terms as may be required by the Surety, agreeing to be bound by this Agreement.

## 5.    AUTHORITY TO EXECUTE BONDS

Requests to the Surety to execute any Bond(s) may be made by any of the Indemnitors or (where an Indemnitor is not an individual) any officer, employee or partner of any of the Indemnitors, or by any agent or broker reasonably believed by the Surety to be representing any of the Indemnitors. Such requests, whether made in writing (mailed, delivered or telecopied), by telegraph, by personal interview or by telephone, shall be regarded as sufficient and ample authority for the Surety to execute any such Bond(s).

## 6.    ABSOLUTE RIGHT TO DECLINE TO ISSUE BONDS

(a)    The Surety, at its option and in its sole discretion, may decline to execute, or provide any Bond(s) applied for without incurring any liability whatever to the Indemnitors or any of them or affecting the liability of the Indemnitors or any of them hereunder to the Surety.

(b)    Each of the Indemnitors acknowledges that:

    (i)    the Surety is under no obligation to issue any Bond(s);

    (ii)    such Indemnitor is not relying and will not rely on any agreement, assurance, understanding, warranty, representation, condition precedent, collateral agreement or other commitment of any kind whatsoever (including without limitation any letter setting out terms and conditions for a Bonding Facility) purporting to be made or entered into by or on behalf of the Surety obliging the Surety to issue any Bond(s);

    (iii)    issuance of any Bond(s) shall not estop the Surety from declining to issue any other Bond(s) or constitute a waiver of the Surety's absolute right to decline to issue any Bond(s); and

    (iv)    if the Surety issues a bid bond, agreement to bond (or "surety's consent") or similar undertaking and the applicant is successful in bidding the project, the Surety may nevertheless decline to issue the performance bond, the payment bond, or any other bond required by the awarding entity, without incurring any liability to the Indemnitors, who hereby agree that such a bid bond, agreement or undertaking is a Bond to which this Agreement applies.

## 7.    PARTIAL INVALIDITY OF EXECUTION

(a)    If any of the persons named herein as an Indemnitor fails to execute this Agreement or if the execution hereof by any of the Indemnitors shall be defective or invalid for any reason, such failure, defect, or invalidity shall not in any manner diminish or otherwise affect the obligation or liability hereunder of any other of the Indemnitors.

(b)    Failure of the principal to sign any Bond shall not relieve the Indemnitors of liability under this Agreement.

## 8.    PROTECTION OF OTHER SURETIES

If the Surety issues any Bond with a co-surety, reinsures any portion of a Bond with any other company, or procures the issuance of any Bond by any other company (whether or not the Surety issues, or retains any portion of, such Bond), the Indemnitors agree with any and all such co-sureties, reinsurers or issuing companies (hereinafter collectively referred to as the "Beneficiaries") that the benefits hereof shall extend to and protect each of the Beneficiaries. The Surety hereby declares that it is the trustee of all of the rights of the Beneficiaries under the foregoing covenant.

## 9.    DEFENSE- RESERVE – DEPOSIT

(a)    If the Indemnitors desire that a claim or demand against the Surety shall be resisted and litigated, the Indemnitors shall:

    (i)    give notice to the Surety to this effect; and

    (ii)    if requested, at any time, by the Surety, deposit with the Surety cash (or collateral satisfactory to the Surety) in an amount sufficient to cover the expenses and fees of defense; and

    (iii)    if requested, at any time, by the Surety, deposit with the Surety cash (or collateral satisfactory to the Surety) in an amount sufficient to cover the claim or demand and interest thereon to the probable date of disposition.



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

(b)     Upon an Event of Default or determination by Surety that a potential for Indemnity Loss exists, Surety may demand that Indemnitors deposit a sum of money equal to an amount determined by Surety, or collateral security of a type and value satisfactory to Surety, to cover any Indemnity Loss or anticipated Indemnity Loss, whether Surety has established or increased any reserve, made any Indemnity Loss payment; or received any notice of any claims therefor. Without limiting the generality of the foregoing, If for any reason the Surety deems it necessary to establish or to increase a reserve (the amount of which shall be in the sole discretion of the Surety, as from time to time revised) to cover any possible Indemnity Loss (including, for greater certainty, the costs of investigating and defending any claim or demand and interest on the amount thereof at the rate or rates claimed on or

applicable to such claim or demand, to the probable date of its resolution), the Indemnitors shall deposit with the Surety immediately upon demand (and make such further deposits as may be required of) cash or collateral satisfactory to the Surety in an amount equal to such reserve or such increase.  The Indemnitors acknowledge that the failure of the Indemnitors to deposit with the Surety, immediately upon demand, the sum demanded by the Surety shall cause irreparable harm to the Surety for which the Surety has no adequate remedy at law, and that the Surety shall be entitled to injunctive relief (including specific performance of the obligation to make such deposit with the Surety), and hereby waive any claims or defenses to the contrary.

(c)     The Surety may:
   (i)     hold any deposit made under this section 9 in such form as the Surety may in its absolute discretion decide, and shall have no obligation to invest, or provide any income or return on, any such deposit; and
   (ii)    in its sole discretion, use all or any part of such deposit, and of any income earned thereon, in payment, settlement or compromise of any Indemnity Loss.

(d)     The Indemnitors shall be entitled to the return of any unused portion of the deposit, and the income (if any) earned on the balance of the deposit outstanding from time to time (to the extent such income has not been used in payment or compromise of an Indemnity Loss), upon termination of the liability of the Surety on the Bonds and the performance by the Indemnitors of all obligations to the Surety under the terms hereof.  The Surety's calculation of the income, if any, attributable to any such deposit shall be final and binding on the Indemnitors.

10.     **SETTLEMENT OF CLAIMS**
(a)     The Surety shall have the sole right to pay, settle or compromise, without any prior obligation to notify the Indemnitors, any charge, expense, cost, claim, demand, suit, judgment or liability under any Bond(s), and any such payment, settlement or compromise shall be binding upon the Indemnitors and included as an Indemnity Loss.

(b)     In the event of any such payment, settlement, investigation, or compromise by the Surety, an itemized statement thereof sworn to by any officer or authorized representative of the Surety, or the voucher(s), cancelled cheque(s) or other evidence of such payment, settlement or compromise, shall be prima facie evidence of the fact and amount of the liability of the Indemnitors under this Agreement in respect of such payment, settlement or compromise.

(c)     In the event of any payment by the Surety, the Indemnitors agree that in any accounting between the Surety and the Indemnitors, the Surety shall be entitled to charge for any and all disbursements made by it in and about the matters contemplated by this Agreement.

11.     **ADVANCES BY SURETY**
The Surety, at its sole election and discretion, is authorized and empowered, but not obligated, to advance or loan to a principal any money which the Surety may see fit to advance to such principal, and to guarantee re-payment of such loans made by others, and all moneys so advanced or loaned, as well as all costs, counsel fees and expenses incurred by the Surety in connection with such advances or loans, unless repaid with legal interest by the principal, shall be included as Indemnity Losses.

12.     **ACKNOWLEDGEMENT OF CONTINUING LIABILITY**
(a)     Each of the Indemnitors acknowledges that this Agreement shall remain in full force and effect, even if such Indemnitor never had or no longer has any interest in the principal, as long as this Agreement has not been terminated by such Indemnitor in accordance herewith; without limiting the generality of the foregoing, the rights of the Surety under this Agreement and any other agreement with any of the Indemnitors shall be cumulative, and this Agreement shall not be construed as having merged with or been cancelled, limited or superseded by any other agreement, whether or not in the same form as this Agreement, unless such other agreement is in writing, expressly states that this Agreement is terminated thereby, and is signed by an officer of the Surety.

(b)     The Indemnitors shall continue to remain bound under this Agreement, notwithstanding the occurrence at any time or from time to time, with or without notice to or knowledge of the Indemnitors, and whether by prior agreement or otherwise, of any or all of the following events, which are in addition to any other rights of the Surety, and which shall not in any way release, limit or abridge any right or remedy which the Surety may have under this Agreement, and this Agreement shall remain in full force and effect after such event:
   (i)     the acceptance by the Surety of payment for any Bond(s);
   (ii)    the acceptance or release by the Surety of other agreements of indemnity, collateral security or guarantees, from any or all of the Indemnitors or from others;
   (iii)   the Surety's assent to any act of the principal;
   (iv)    a suit or a settlement deriving from this Agreement;



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

(v)    any waiver, extension, or indulgence granted by the Surety to any of the Indemnitors or to others; or

(vi)    any failure or refusal by the Surety to pursue any remedy or take proceedings against any person or property.

13.    **INFORMATION TO BE PROVIDED TO SURETY**

(a)    Each of the Indemnitors shall:

    (i)    forward immediately to the Surety every letter, document, advice, statement of claim or writ received by him from or on behalf of any person who asserts or threatens; and

    (ii)    whenever requested by the Surety, aid in securing information and evidence and the attendance of any witness for, and co-operate fully with the Surety in the defense of;

    any claim or demand arising out of or in connection with any Bond(s).

(b)    The Indemnitors shall furnish to the Surety fully, accurately and promptly all such information as it may request from time to time concerning:

    (i)    the financial condition of the Indemnitors;

    (ii)    the status of any Bonded Contract(s), other contract(s) or other obligations of the Indemnitors and the condition of the performance thereof;

    (iii)    the payment of obligations incurred in connection with any Bonded Contract(s), other contract(s) or other obligations; and

    (iv)    all such other information as the Surety may from time to time reasonably request.

(c)    The Surety and any representative, agent or advisor authorized in writing by the Surety may at reasonable times and places and from time to time, examine and copy the books, records and accounts of the Indemnitors.

(d)    Any of the Indemnitors who are individuals shall notify the Surety of any change in their respective marital circumstances which might affect their ownership of any assets or confer on their respective spouses any right, actual or potential, to claim an interest in any of their respective assets.

(e)    Each of the Indemnitors shall provide the Surety with thirty (30) days prior written notice of any change in his or its name, corporate or other company or entity status, state of formation or registration, or residency.

(f)    If any of the Indemnitors merges, amalgamates, consolidates, reorganizes, forms a partnership or joins with, or sells, transfers or leases all or substantially all of its undertaking, property and assets to, any other person, firm, corporation, trust, partnership or venture (hereinafter called a "Successor") and, where an Indemnitor is a partnership, if there is any change in the constitution of the partnership, including (but not limited to) the death, retirement, or addition of a member or members, or subsequent incorporation (the partnership so reconstituted or incorporated being included in the term "Successor"), then:

    (i)    such Indemnitor shall immediately notify each of the other Indemnitors and the Surety; and

    (ii)    whether or not such notice is given, this Agreement shall extend and apply to any Bonds theretofore issued (to the extent that such Bonds relate to the Successor) and any Bonds thereafter issued in respect of the Successor as principal.

14.    **CONSENT TO CHANGES**

The Surety is authorized and empowered, without notice to or knowledge of the Indemnitors, notice being hereby expressly waived:

(a)    to correct any mistakes herein or in any Bond(s);

(b)    to assent or refuse to assent to any change whatsoever in any Bond(s), any Bonded Contract(s) and any Bonding Facility, including but not limited to any change in the time for the completion of any Bonded Contract(s) and for payments or advances thereunder and/or in the general conditions, plans or specifications which accompany said Bonded Contract(s) and any increase or decrease in the limit of any Bonding Facility; and

(c)    to assent to or to take any assignment or assignments, to execute or consent to the execution of any continuations, extensions, renewals, enlargements, modifications, change or alterations of any Bond(s) or Bonding Facility or Bonding Facilities, and to execute any substitute or substitutes therefor, with the same or different conditions, provisions and obligees and with the same or larger or smaller penalties;

(d)    Surety will have the right, and is hereby authorized and empowers, but not required:

    (i)    upon the request of any Indemnitor to increase or decrease the penalty or penalties of ay Bonds, to change the obligee(s) therein, to execute any continuation, enlargements, modification, and renewals thereof or substitute therefor with the same or different conditions, provisions or obligee(s), and with the same, larger, or smaller penalties, it being agreed that this instrument will apply to and cover such new or changed Bonds or renewals even though the consent of Surety may or does substantially increase the liability of Indemnitors and Principals; or

    (ii)    to take such steps as it may deem necessary or proper to obtain release from liability under the Bonds; or

    (iii)    to assent to any changes in any Bonded Contract, including but not limited to, any change in the time for completion of any Bonded Contract and to payments or advances thereunder; or

    (iv)    to assent to or take any assignment(s);

and the Indemnitors shall remain bound under the terms hereof even though any such correction, assent or refusal by the Surety does or may substantially increase the liability of the Indemnitors.

15.    **COLLATERAL SECURITY/DEFAULT**



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

(a)    The Indemnitors shall obtain, maintain, and make available to Surety, or any Person designated by Surety, all equipment, materials, and other assets necessary for the performance of all Bonded Contract(s).

(b)    Each of the Indemnitors hereby assigns and transfers to the Surety, as collateral, to secure the obligations herein of the Indemnitors and all other indebtedness or liabilities of the Indemnitors to the Surety, whether heretofore or hereafter incurred, all the right, title, and interest of the Indemnitors in and to all:

(i)    accounts, as defined in the Uniform Commercial Code ("the UCC"), but also includes whether the same is included in such definition in the UCC, all of Indemnitors' now owned or hereafter acquired accounts, accounts receivable, and proceeds, including without limitation, all insurance proceeds, proceeds of any letter of credit on which any of Indemnitors is a beneficiary, in each case including, but not limited to, accounts, accounts receivable, and proceeds that arise out of any and all Bonded Contracts, and all forms of obligations whatsoever owing to Indemnitors under

instruments and documents of title representing the foregoing; and all rights, securities, and guarantees with respect to each of the foregoing;

(ii)    chattel Paper, as defined in the UCC;

(iii)    contracts, contract rights (including, but not limited to, rights under contracts for work performed by Indemnitors', subcontract, and contracts for the purchase of supplies), and rights under any and all Bonded Contracts;

(iv)    documents, as defined in the UCC;

(v)    general intangibles, as defined in the UCC, but also includes whether the same are included in such definition in the UCC, all choses in action, causes of action, corporate or other business Records, inventions, designs, patents, patent applications, trademarks, trademark applications, trade names, trade secrets, goodwill, registrations, copyrights, licenses, franchises, customer lists, tax refunds, tax refund claims, all insurance proceeds, insurance refunds and equivalents, rebates of insurance premiums, rights and claims against carriers and shippers, leases, rights to indemnification, and all other intangible personal property of every kind and nature (including, but not limited to, any equity or other interest in any limited liability company, general or limited partnership, joint venture);

(vi)    equipment, as defined in the UCC, but also includes whether the same is included in such definition in the UCC, supplies, equipment, vehicles, plant, tools, materials, plans, specifications, computers, computer systems, hardware and software of every nature and description which are now owned or hereafter acquired, about or upon the site or sites of any and all of the Bonded Contracts or elsewhere, including, but not limited to, materials purchased for or chargeable to any and all Bonded Contracts, equipment or materials for Bonded Contracts which may be in process of construction, in storage elsewhere, or in transportation to any and all of said sites;

(vii)    goods, as defined in the UCC;

(viii)    inventory, as defined in the UCC, but also includes whether the same are included as such definition in the UCC, all of Indemnitors' goods, merchandise, and other personal property furnished under any contract of service, Bonded Contract, or intended for sale or lease, all raw materials, glass, gravel, cement, sand, work in process, finished goods and materials, and supplies of any kind, nature, or description which are or might be used or consumed in Debtors' business or are or might be used in connection with the manufacture, packaging, shipping, advertising, selling, or finishing of such goods, merchandise, and other personal property, all returned or repossessed goods now, or hereafter, in the possession or under the control of Indemnitors, and all documents of title or documents representing the same;

(ix)    instruments, as defined in the UCC;

(x)    records, correspondence, memoranda, tapes, books, disks, paper, magnetic storage and other documents or information of any type, whether expressed in ordinary or machine language; and

(xii)    commercial tort claims, as defined in the UCC, but includes whether the same is included in such definition in the UCC, any claims against any accountants, financial advisors, or other person arising out of the preparation or delivery of any financial statements or information.

## 16.    TRUST FUNDS

(a)    Each Indemnitor agrees and hereby expressly declares that all funds due or to become due under any Bonded Contract, are, whether in the possession of the Indemnitor or another, trust funds for the benefit of and payment to all persons to whom the Indemnitor incurs, in the performance of such Bonded Contract, obligations for which the Surety would be liable under such Bond. If the Surety assumes or discharges any such obligation, with or without a claim asserted against Surety under the Bonds, it shall be entitled to assert the claim of such person to the trust funds. All payments received for or on account of any Bonded Contract will be held in a trust fund to assure the payment of obligations incurred or to be incurred in the performance of any Bonded Contract and for labor, materials, and services furnished in the prosecution of the work under any Bonded Contract or any extension or modification thereof. The trust funds will further inure to the benefit of Surety for any liability or Indemnity Loss it may have or sustain under any Bond, and this Agreement and declaration constitute notice of such trust. The trust funds, unless otherwise restricted or regulated by state or



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

local laws, can be comingled with other funds, but the trust fund nature and purpose as stated in this paragraph will not be modified nor waived by this commingling provision.

(b)     Each Indemnitor shall, upon demand by the Surety and in implementation of any trust hereby created, open an account or accounts with a bank or similar depository designated by the Indemnitor and approved by the Surety, which account or accounts shall be designated as a trust account or accounts for the deposit of such trust funds, and shall deposit therein all monies received pursuant to said Bonded Contract or contracts.   Withdrawals from such accounts shall be by cheque or similar instrument signed by a representative of the Surety and, at Surety's option, counter signed by an Indemnitor.

(c)     Said trust or trusts shall terminate on the payment by the Indemnitor of all the contractual obligations for the payment of which the trust or trusts are hereby created or upon the expiration of twenty years from the date hereof, whichever shall first occur.

17.     **POWER OF ATTORNEY**

(a)     Each Indemnitor agrees to sign, execute, file, and/or deliver to Surety all documents, reports, papers, pleadings, and/or instruments required to obtain, and/or perfect any Surety's rights under this Agreement.

(b)     Each of the Indemnitors hereby irrevocably nominates, constitutes, appoints and designates the Surety, or any person or persons designated by the Surety, as its attorney to exercise all of its rights assigned, transferred or set over to the Surety by this Agreement, and in its name to execute and deliver (and without limiting the generality of the foregoing, to complete any blanks and insert dates in) any and all additional or other assignments, instruments or documents deemed necessary or desirable by the Surety:

(i)       to vest in the Surety or its designees absolute title to any and all monies, property and rights hereby assigned; and

(ii)      to provide the protections and rights to the Surety contemplated by all the provisions hereof.

Each of the Indemnitors hereby expressly declares that such power of attorney may be exercised during any subsequent legal incapacity on the part of such Indemnitor.   Indemnitors recognize that the appointment of such attorney-in-fact constitutes a power coupled with an interest.

18.     **DISCLOSURE AND REGISTRATION**

The Indemnitors consent to:

(a)     the service hereof at any time upon any person, firm, or corporation (but nothing herein shall be construed as permitting the Surety to take enforcement proceedings contrary to subparagraph above);

(b)     the filing of any financing statement or other documents deemed necessary or desirable by the Surety to perfect and enforce its security interest in the Collateral; and

(c)     the registration hereof (or of a notice or other instrument in respect hereof) under any scheme or system of registration for any purpose.

19.     **ACTIONS TO ENFORCE THIS AGREEMENT**

(a)     In the event of any claim or demand being made by the Surety against the Indemnitors, whether or not proceedings have been commenced against one or more of the Indemnitors, the Surety is hereby expressly authorized to:

(i)       bring separate suits on this Agreement as causes of action accrue against any or all of the Indemnitors, and the bringing of a suit or the recovery of judgment upon any cause of action shall not prejudice nor bar the bringing of other suits upon other causes of action, whether theretofore or thereafter arising; and

(ii)      settle or compromise any claim based upon this Agreement with any one or more of the Indemnitors individually without reference to the others, and such settlement or compromise shall not affect the liability of any of the rest of the Indemnitors, and each of the Indemnitors hereby expressly waives the right to be discharged and released by reason of the release of one or more of the other Indemnitors, and consents to any settlement or composition that may hereafter be made.

(b)     Any settlement or agreement concluded with an Indemnitor following a claim against him by the Surety under this Agreement shall not create a new agreement nor extinguish the Indemnitor's obligations under this Agreement, and this Agreement shall remain in full force and effect in case of default on the part of an Indemnitor to fulfil the terms of such settlement or agreement with the Surety.

20.     **COSTS AND INTEREST**

(a)     In the event the Surety commences proceedings to enforce the terms hereof, the Surety shall be entitled to recover (but without duplication) its attorneys' and other professionals' fees and costs (on a full indemnity basis), judicial and extra-judicial costs and the fees and disbursements of its counsel and other professionals in connection with such proceedings.

(b)     Any and all amounts which the Surety is entitled to be paid under this Agreement shall bear interest at a rate of 10% per year, calculated monthly from the date on which any such payment therefor is made (or deemed to have been made) by Surety to the date of payment by Indemnitors to Surety; the Surety's claim for such interest shall not merge in any judgment against any of the Indemnitors, and any such judgment shall bear interest at such rate until payment.

21.     **WAIVER OF NOTICE AND OTHER RIGHTS**

(a)     Each of the Indemnitors hereby waives notice of the execution of any Bond and of any act, fact or information concerning or affecting the rights or liabilities of the Surety or the rights or liabilities of the Indemnitors, including without limitation the release of any other Indemnitor, the adhesion hereto of any additional Indemnitor, and any change in the terms of any Bonding Facility.

(b)     The Indemnitors waive the benefit of division between themselves and of discussion of any principal.



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

**22.     SUBORDINATION OF INDEMNITORS**
None of the Indemnitors shall enforce any rights of contribution or indemnity against any Indemnitor or its property and undertaking until such Indemnitor's obligations to the Surety under this Agreement have been satisfied in full.


**23.     EXCLUSION OF LIABILITY**
None of the Indemnitors shall have any claim against the Surety, for indemnity or otherwise, in respect of any alleged error or omission on the part of the Surety in issuing or failing to issue any Bond.

**24.     DISCHARGE FROM SURETYSHIP**
(a)     The Indemnitors shall, at any time upon the request of the Surety, procure the discharge of the Surety from any Bond and from all liability by reason thereof.
(b)     The Surety may, at any time, take such action as it deems necessary or proper to obtain its release from any and all liability under any Bond.

**25.     TERMINATION**
(a)     An Indemnitor may give thirty (30) days' prior written notice of termination to the Surety by registered mail to the Surety at its head office, specifying the effective date of such termination.  No such notice of termination shall be deemed to have been received by the Surety, and such thirty (30) day period shall not commence, unless and until such notice is actually delivered to the Surety and the Surety has given a written acknowledgement of such delivery. Any such notice shall not operate to modify, bar, limit, affect, impair or discharge the liability of the Indemnitor(s) so terminating or the remaining Indemnitors (if any), upon or by reason of any and all such Bonds executed:
        (i)      before the effective date of termination; or
        (ii)     executed after the effective date of termination:
                 (A)     upon the award of a contract on a bid, proposal or tender with respect to which the Surety has executed a bid bond, agreement to bond (or "surety's consent") or similar undertaking prior to such date; or
                 (B)     which the Surety has become obligated, prior to such date, to execute.
(b)     Such a notice of termination shall operate only with respect to the Indemnitor(s) giving it.  This Agreement shall remain in full force and effect, with respect to the other Indemnitor(s), without obligation for the Surety to notify such other(s) of the termination by one or more of the Indemnitors.
(c)     It shall be the responsibility of the terminating party to ascertain the correct address for the time being of the head office of the Surety.  Such address is always a matter of public record.  The head office of the Surety is now at 2 Stamford Plaza, Suite 1504, 281 Tresser Boulevard, Stamford, Connecticut 06901

**26.     ADDITIONAL INDEMNITORS**
Any person may, by completing, executing and delivering to the Surety Rider in the form annexed to this Agreement, become bound as an Indemnitor hereunder as if such person had been an original signatory hereto.

**27.     DEMANDS BY SURETY**
Any demand by the Surety on any of the Indemnitors may be hand delivered, telecopied, telexed or sent by registered mail to such party at the address shown above, or to such other address as such party may have notified to the Surety in writing (including any address shown in an Adhesion), and shall be conclusively deemed to have been received:
(a)     if hand delivered, telecopied or telexed:
        (i)      on the date of delivery or transmission, if prior to 4:00 p.m. (local time) on a day (other than a Saturday) on which chartered banks in the municipality named in such address are open for business during normal business hours (a "Business Day"); or
        (ii)     otherwise, on the next following Business Day; or
(b)     if mailed, on the second Business Day after mailing.

**28.     GOVERNING LAW AND JURISDICTION**
Each Indemnitor understands and agrees that the interpretation and enforcement of this Agreement shall be governed, construed, and interpreted in accordance with the laws of the State of New York, without giving effect to any conflicts of laws principles of that State or any other State or jurisdiction. Each Indemnitor further understands and agrees that the venue for any suit, action or proceeding, or otherwise reuses to exercise jurisdiction over any dispute that may arise, each Indemnitor further understands and agrees that the venue shall be in the federal courts for the State of New York unless any jurisdictional prerequisites are not met, in which case it will lie with the state courts of New York. Each Indemnitor irrevocably and unconditionally submits to the jurisdiction of said courts and waives any claim or defense in any such suit, action or proceeding based on any alleged lack of personal jurisdiction, improper venue, forum non conveniences, or any similar basis.



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

29.    **SEVERABILITY**

If any provision or provisions hereof are held to be void or unenforceable under the laws governing its construction or enforcement, this Agreement shall not be void or unenforceable thereby but shall continue in effect and be enforced as though such provision or provisions were omitted.

30.    **BINDING EFFECT**

This Agreement is binding jointly and severally upon the Indemnitors, their heirs, executors, personal representatives, successors and assigns. This Agreement shall enure to and benefit any successor to the Surety (including without limitation any person to whom the Surety may in future transfer all or any substantial part of its business assets). The Indemnitors represent and warrant to the Surety that they have a

substantial, material, and beneficial interest in the obtaining of Bonds by any of the Principals and Indemnitors and in the transaction(s) for which any of the Indemnitors and/or Principals has applied or will apply to the Surety for Bonds pursuant to this Agreement. The Indemnitors further represent and warrant to the Surety that they have the full power and authority to execute, deliver, and perform this Agreement and to carry out the obligations stated herein. The Indemnitors further represent and warrant to the Surety that their execution, delivery, and performance of this Agreement does not and will not conflict with, constitute a default under, or result in a breach or violation of any of their respective organizational documents, any law, governmental rule, regulation, order, writ, injunction, judgment, or decree of any court or governmental authority, or any other agreement applicable to or binding upon the Indemnitors.

31.    **RIGHTS AND REMEDIES OF SURETY**

Each of the Indemnitors hereby authorizes and empowers the Surety, if an Event of Default has occurred and is continuing, to:

(a)    in its sole discretion, take possession of the work under any Bonded Contract and to complete such Bonded Contract, or cause the same to be completed, or to consent to the completion thereof, and to take any other action which the Surety may deem appropriate to obtain the discharge of the Surety's obligations as surety including, but not limited to, a monetary settlement with the obligee, and all losses, charges, expenses, and costs incurred by the Surety in so doing shall be included as Indemnity Losses;

(b)    immediately take possession of Indemnitors' tools, plan, equipment, materials, and subcontracts and all other collateral security mentioned in this Agreement and enforce, use, employ, and dispose thereof for the purposes set forth in this Agreement and for the completion of the work under the Bonded Contracts without payment for such use.

(c)    assert or prosecute any right or claim in the name of any Indemnitor and to settle any such right; or claim as Surety sees fit;

(d)    require an obligee to withhold payment of Bonded Contract funds unless and until Surety consents to its release;

(e)    be subrogated to all the rights, remedies, properties, funds, securities, and receivables related to Indemnitors' Bonded Contracts or Unbonded Contracts and have the right to offset Indemnity Losses on any Contract or Bond against proceeds, funds, or property due from another Bonded Contract, bond or contract. Further, in the Event of Default and upon demand Indemnitors will direct that all payments, money, and properties that are due or may become due on any Contract or contract be made payable to, and/or sent directly to, Surety, and shall issue whatever writing or notices as deemed necessary by Surety to effectuate the default and/or termination of any Bonded Contract;

(f)    execute in the name of any Indemnitor any instruments deemed necessary or desirable by the Surety to provide absolute title to the Surety of any funds, property and rights as are hereby assigned, transferred or conveyed, and the Surety and such person(s) as the Surety may designate for this purpose are hereby authorized to take immediate possession of such funds, property, and rights;

(g)    instruct any obligee(s) under any Bonds, and/or any owners under any Bonded Contracts, to withhold further payment to any Indemnitor or other person who is a party to the relevant Bonded Contract(s);

(h)    collect any cheque, draft, warrant, or other instrument made or issued in payment of any monies due on any Bonded Contract(s); and

(i)    endorse in the name of an Indemnitor as payee and to cash any such instruments and to retain or disburse the proceeds thereof.

The rights, powers and remedies afforded to the Surety by the terms hereof may not be waived or modified orally and no written change or modification shall be effective until signed by an authorized officer of the Surety. No agent or broker is authorized to sign any such change or modification on behalf of the Surety. All rights and remedies of the Surety under this Agreement shall be cumulative, and the exercise of or failure to exercise any right or remedy at any time shall not be an election of remedy or a waiver of any other right or remedy or of the same right or remedy as at any other time. The Surety is not required to exhaust its remedies or rights against the principal or to await receipt of any dividends from the legal representatives of the principal before asserting its rights under this Agreement against the Indemnitors and may assert such rights against one or more of the Indemnitors without asserting them against all or other Indemnitors. The rights, powers and remedies conferred upon the Surety by this Agreement are in addition to any other rights the Surety may have or acquire against the Indemnitors or others, whether arising by the terms of any other agreement, by operation of law, or otherwise.

32.    **ENTIRE AGREEMENT**

EACH OF THE INDEMNITORS REPRESENTS TO THE SURETY THAT SUCH INDEMNITOR HAS CAREFULLY READ THE ENTIRE AGREEMENT AND THAT THERE ARE NO OTHER AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OR MODIFY THE OBLIGATIONS SET FORTH HEREIN.



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

**33.    WAIVER TO TRIAL BY JURY**

EACH INDEMNITOR HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM, CAUSE OF ACTION, OR PROCEEDING TO WHICH ANY OR ALL OF PRINCIPAL, INDEMNITORS, AND SURETY MAY BE PARTIES, ARISING OUT OF OR PERTAINING, DIRECTLY OR INDIRECTLY, TO ANY OF THE BONDS OR THIS AGREEMENT. EACH INDEMNITOR UNDERSTANDS AND AGREES THAT THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST ALL PARTIES TO ANY SUIT, CAUSE OF ACTION, OR PROCEEDINGS, INCLUDING CLAIMS AGAINST PARTIES WHO ARE NOT PARTIES TO THIS AGREEMENT. INDEMNITORS ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT FOR SURETY TO ENTER INTO A BUSINESS RELATIONSHIP, THAT HAS AND WILL RELY ON THIS WAIVER WHEN CONSIDERING ANY APPLICATION OF THE ISSUANCE OF BONDS AND WILL CONTINUE TO RELY ON THIS WAIVER IN FUTURE DEALINGS. INDEMNITORS FURTHER WARRANT AND REPRESENT THAT THEY HAVE REVIEWED THIS WAIVER WITH LEGAL COUNSEL AND HAVE KNOWINGLY AND VOLUNTARILY WAIVED THEIR JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL. THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THE WAIVER WILL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS, OR MODIFICATIONS TO THIS AGREEMENT. IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

**34.    COUNTERPARTS; ORIGINALS**

This Agreement may be executed in counterparts (including by means of facsimile or .pdf signature pages), any one of which need not contain the signatures of more than one party, but all such counterparts taken together will constitute one and the same agreement. This Agreement and each other agreement or instrument entered into in connection herewith or therewith or contemplated hereby or thereby, and any amendments hereto or thereto, to the extent signed and delivered by means of a facsimile machine or other electronic transmission (including .pdf files), will be treated in all manner and respects and for all purposes as an original agreement or instrument and will be considered to have the same binding legal effect as if it were to the original signed version thereof delivered in person. At the request of any party hereto or to any such agreement or instrument, each other party hereto or thereto will re-executed original forms thereof and deliver them to all other parties, except that the failure of any party to comply with such a request will not render this Agreement invalid or unenforceable. No party hereto or to any such agreement or instrument will raise the use of a facsimile machine or other electronic transmission to deliver a signature or the fact that any signature or agreement or instrument was transmitted or communicated through the use of a facsimile machine or other electronic transmission as a defense to the formation or enforceability of a contract and each party forever waives any such defense.

IN WITNESS WHEREOF the Indemnitors have executed and delivered these presents as their respective deeds, each who is an individual having hereunto set his or her hand (and having, by so signing, adopted the word ("seal") hereon as his or her personal seal), and each which is a partnership, joint venture, trust, corporation or unincorporated association having caused this Agreement to be duly executed by its duly authorized representative or representatives, as of the date shown on the first page hereof, which date each of the Indemnitors hereby affirms as the effective date of this Agreement, regardless of the date on which such Indemnitor in fact executed this Agreement.

 **TRISURA**®

2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

SIGNED, SEALED AND DELIVERED:
Corporations and/or Partnership Sign Hereunder

| Witness | Name of Corporation |
|---|---|
| *(Signature)* | **Bighorn Construction and Reclamation, LLC** |
| Trent Cornelius | Cord Johnson |
| Print name | Name of Authorized Officer |
| 127 Trace Dr, Weatherford TX 76087 | Signature of Authorized Officer |
| Address of Witness | I HAVE THE AUTHORITY TO BIND THE CORPORATION |
| 432 ~~940~~ (432) 556-0301 | Address of Corporation: |
| Phone number | 777 Main St., Suite 2800 Fort Worth, TX 76102 |
| | Phone Number: 682-816-5006 |

**CORPORATE ACKNOWLEDGMENT**

State of  Texas                                   ss.:
County of  Tarrant

On this 4th day of February        , in the year 2022, before me personally comes  Cord Johnson
to me known, who being by me duly sworn, deposes and says that he resides in the City of  Weatherford
that he is the  CEO            of the  Bighorn Construction and Reclamation the corporation described in and which executed
the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was
so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

Michelle L. Grass
(Signature of Notary Public)
My Commission expires 8-5-2024

MICHELLE L GRASS
Notary ID #1973047
My Commission Expires
August 5, 2024



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

| Witness | Name of Corporation |
|---|---|
| _(Signature)_ | **Bighorn Investments and Properties, LLC** |
| Trent Cornelius | Name of Authorized Officer |
| Print name | Cord Johnson |
| 127 Tree Dr, Weatherford, TX 76087 | Signature of Authorized Officer |
| Address of Witness | I HAVE THE AUTHORITY TO BIND THE CORPORATION |
| (432) 556-0301 | Address of Corporation: |
| Phone number | 777 Main St., Suite 2800 Fort Worth, TX 76102 |
| | Phone Number: 682-816-5006 |

**CORPORATE ACKNOWLEDGMENT**

State of Texas                     ss.:
County of Tarrant

On this 4th day of February, in the year 2022, before me personally comes Cord Johnson to me known, who being by me duly sworn, deposes and says that he resides in the City of Weatherford that he is the CEO of the Bighorn Investments & Prop the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

Michelle L. Grass
(Signature of Notary Public)
My Commission expires 8-5-2024

MICHELLE L GRASS
Notary ID #1973047
My Commission Expires
August 5, 2024



TRISURA®

2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

| Witness | Name of Corporation |
| --- | --- |

Witness

_(Signature)_

Trent Cornelius
Print name

127 Trace Dr., Weatherford, TX 76087
Address of Witness

(432) 556-0301
Phone number

**Name of Corporation**

**Bighorn Sand & Gravel LLC**

Cord Johnson
Name of Authorized Officer

Signature of Authorized Officer
I HAVE THE AUTHORITY TO BIND THE CORPORATION

Address of Corporation:

777 Main St., Suite 2800 Fort Worth, TX 76102

Phone Number: 682-816-5006

---

**CORPORATE ACKNOWLEDGMENT**

State of Texas                           ss.:
County of Tarrant

On this 4th day of February, in the year 2022, before me personally comes Cord Johnson
to me known, who being by me duly sworn, deposes and says that he resides in the City of Weatherford
that he is the President of the Bighorn Sand & Gravel the corporation described in and which executed
the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was
so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

Michelle L. Grass
(Signature of Notary Public)
My Commission expires 8-5-2024

MICHELLE L GRASS
Notary ID #1973047
My Commission Expires
August 5, 2024



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

**Witness**

_____ *(Signature)*

Trent Cornelius
Print name

127 Trace Dr, Weatherford, TX 76087
Address of Witness

(432) 556-0301
Phone number

**Name of Corporation**

**Bridgelink Commodities LLC**

Cord Johnson
Name of Authorized Officer

_____
Signature of Authorized Officer
I HAVE THE AUTHORITY TO BIND THE CORPORATION

Address of Corporation:

777 Main St., Suite 3000 Fort Worth, TX 76102

Phone Number:

---

**CORPORATE ACKNOWLEDGMENT**

State of Texas                              ss.:
County of Tarrant

On this 4th day of February, in the year 2022, before me personally comes Cord Johnson
to me known, who being by me duly sworn, deposes and says that he resides in the City of _____
that he is the Vice President of the Bridgelink Commodities the corporation described in and which executed
the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was
so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

Michelle L. Grass
(Signature of Notary Public)
My Commission expires 8-5-2024

MICHELLE L GRASS
Notary ID #1973047
My Commission Expires
August 5, 2024



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

| Witness | Name of Corporation |
|---|---|
| _(Signature)_ | **Bridgelink Engineering LLC** |
| | Cord Johnson |
| | Name of Authorized Officer |
| Trent Cornelius | |
| Print name | |
| | Signature of Authorized Officer |
| 127 Trace Dr., Weatherford, TX 76087 | I HAVE THE AUTHORITY TO BIND THE CORPORATION |
| Address of Witness | |
| | Address of Corporation: |
| (432) 556-0301 | 777 Main St., Suite 2800 Fort Worth, TX 76102 |
| Phone number | |
| | Phone Number: |

**CORPORATE ACKNOWLEDGMENT**

State of Texas                      ss.:
County of Tarrant

On this 4th day of February, in the year 2022, before me personally comes Cord Johnson to me known, who being by me duly sworn, deposes and says that he resides in the City of Weatherford that he is the President of the Bridge link Engineering the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

Michelle L. Grass
(Signature of Notary Public)
My Commission expires 8-5-2024

MICHELLE L GRASS
Notary ID #1973047
My Commission Expires
August 5, 2024



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

| Witness | Name of Corporation |
|---|---|
| _(Signature)_ | **Bridgelink Investments, LLC** |
| Trent Cornelius | _Cord Johnson_ |
| Print name | Name of Authorized Officer |
| 127 Trace Dr, Weatherford, TX 76087 | |
| Address of Witness | Signature of Authorized Officer |
| | I HAVE THE AUTHORITY TO BIND THE CORPORATION |
| (432) 556-0301 | Address of Corporation: |
| Phone number | 777 Main St., Suite 3000 Fort Worth, TX 76102 |
| | Phone Number: |

**CORPORATE ACKNOWLEDGMENT**

State of _Texas_                    ss.:
County of _Tarrant_

On this _4th_ day of _February_ , in the year 20_22_, before me personally comes _____
_Cord Johnson_
to me known, who being by me duly sworn, deposes and says that he resides in the City of _Weatherford_ ____
that he is the _Vice President_ of the _Bridgelink Investments_ the corporation described in and which executed
the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was
so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

_Michelle L. Grass_
(Signature of Notary Public)
My Commission expires _8-5-2024_

NOTARY PUBLIC
MICHELLE L GRASS
Notary ID #1973047
My Commission Expires
August 5, 2024
STATE OF TEXAS



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

| Witness | Name of Corporation |
|---|---|
| _(Signature)_ | **Bridgelink Renewable Energy Development LLC** |
| Trent Cornelius | Cord Johnson |
| Print name | Name of Authorized Officer |
| 127 Travee Dr, Weatherford, TX 76087 | |
| Address of Witness | Signature of Authorized Officer |
| | I HAVE THE AUTHORITY TO BIND THE CORPORATION |
| (432) 556-0301 | Address of Corporation: |
| Phone number | 777 Main St., Suite 3000 Fort Worth, TX 76102 |
| | Phone Number: |

**CORPORATE ACKNOWLEDGMENT**

State of Texas          ss.:
County of Tarrant

On this 4th day of February, in the year 2022, before me personally comes Cord Johnson to me known, who being by me duly sworn, deposes and says that he resides in the City of Weatherford that he is the Vice President of the Bridgelink Renewable Energy Dev the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

Michelle L. Grass
(Signature of Notary Public)
My Commission expires 8-5-2024

MICHELLE L GRASS
Notary ID #1973047
My Commission Expires
August 5, 2024



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

| Witness | Name of Corporation |
|---|---|
| _(Signature)_ | **Bridgelink Renewable Energy Investments LLC** |
| Trent Cornelius | Name of Authorized Officer |
| Print name          Weatherford, TX | |
| 127 Trace Dr, 76087 | Signature of Authorized Officer |
| Address of Witness | I HAVE THE AUTHORITY TO BIND THE CORPORATION |
| (832) 556-0301 | Address of Corporation: |
| Phone number | 777 Main St., Suite 3000 Fort Worth, TX 76102 |
| | Phone Number: |

**CORPORATE ACKNOWLEDGMENT**

State of Texas                    ss.:
County of Tarrant

On this 4th day of February, in the year 2022, before me personally comes _____
Cord Johnson
to me known, who being by me duly sworn, deposes and says that he resides in the City of Weatherford
that he is the Vice President of the Bridgelink Renewable Energy Investment the corporation described in and which executed
the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was
so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

Michelle L. Grass
(Signature of Notary Public)
My Commission expires 8-5-2024

MICHELLE L GRASS
Notary ID #1973047
My Commission Expires
August 5, 2024



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

**Witness**

_(Signature)_

Trent Cornelius
Print name

127 Trace Dr, Weatherford, TX 76087
Address of Witness

(432) 556-0201
Phone number

Name of Corporation

**Intermountain Electric Service, Inc.**

Cord Johnson
Name of Authorized Officer

Signature of Authorized Officer
I HAVE THE AUTHORITY TO BIND THE CORPORATION

Address of Corporation:

P.O. Box 2169 Rock Springs, WY 82902

Phone Number:

---

**CORPORATE ACKNOWLEDGMENT**

State of Texas
County of Tarrant                    ss.:

On this 4th day of February, in the year 2022, before me personally comes _____
Cord Johnson
to me known, who being by me duly sworn, deposes and says that he resides in the City of Weatherford
that he is the Manager of the Intermountain Electric Service corporation described in and which executed
the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was
so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

Michelle L. Grass
(Signature of Notary Public)
My Commission expires 8-5-2024

MICHELLE L GRASS
Notary ID #1973047
My Commission Expires
August 5, 2024



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

Personal Indemnitors Sign Hereunder

| Witness | Name of Indemnitor |
|---|---|
| *(Signature)* | **Cole Wayne Johnson** |
| Trent Cornelius | *(Signature)* |
| Print name | Address of Indemnitor: |
| 127 Trace Dr, Weatherford, TX 76087 | 4204 S. County Rd. 1128, Midland, TX 79706 |
| Address of Witness | |
| 432-536-0301 | |
| Phone number | Phone Number: |
| | Date of Birth : ▉ |

---

**NOTARY ACKNOWLEDGMENT**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of Texas

County of Tarrant

On 2/4/2022 before me Michelle Grass, personally appeared **Cole Wayne Johnson** who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person(s), or the entity(ies) upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Texas that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature Michelle L. Grass

Notary Public residing at: 4200 Buckeye St. Fort Worth TX

My commission expires: 8-5-2024

NOTARY PUBLIC
STATE OF TEXAS
MICHELLE L GRASS
Notary ID #1973047
My Commission Expires
August 5, 2024



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

Witness

_(Signature)_

Trent Cornelius
Print name

127 Truce Dr., Weatherford, TX 76087
Address of Witness
432·556-6301
Phone number

Name of Indemnitor

**Cord Henry Johnson**

_(Signature)_

Address of Indemnitor:
1677 Center Point Rd., Weatherford, TX 76087

Phone Number: ████████████

Date of Birth : ████████

---

**NOTARY ACKNOWLEDGMENT**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of Texas

County of Tarrant

On 2/4/22 before me, Michelle Grass , personally appeared **Cord Henry Johnson** who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person(s), or the entity(ies) upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Texas that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature Michelle L. Grass

Notary Public residing at: 4200 Buckeye St., Fort Worth, TX

My commission expires: 8-5-2024

NOTARY PUBLIC
STATE OF TEXAS

MICHELLE L GRASS
Notary ID #1973047
My Commission Expires
August 5, 2024



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

| Witness | Name of Indemnitor |
|---|---|
| _(Signature)_ | **Cassie Hamilton** |
| _Trent Cornelius_ | _(Signature)_ |
| Print name | Address of Indemnitor: |
| _127 Trace Dr, Weatherford, TX 76087_ | 1677 Center Point Rd., Weatherford, TX 76087 |
| Address of Witness | |
| _432-556-0301_ | Phone Number: ███████████ |
| Phone number | Date of Birth : ███████ |

---

## NOTARY ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _Texas_
County of _Tarrant_

On _2/4/2022_ before me, _Michelle Grass_, personally appeared **Cassie Hamilton** who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person(s), or the entity(ies) upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _Texas_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Michelle L. Grass_

Notary Public residing at: _4200 Buckeye St Fort Worth TX_
My commission expires: _8-5-2024_

MICHELLE L GRASS
Notary ID #1973047
My Commission Expires
August 5, 2024