# Exhibit 2-B

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

Southern District of New York ▼

| | |
|---|---|
| TRISURA INSURANCE COMPANY,<br><br>_____<br>*Plaintiff(s)*<br>v.<br>Bighorn Construction and Reclamation, LLC; Bighorn Investments and Properties, LLC; Bighorn Sand & Gravel LLC; Bridgelink Commodities LLC; Bridgelink Engineering LLC; Bridgelink Investments, LLC; et al.<br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 23-cv-11053 |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

Bighorn Construction and Reclamation, LLC
777 Main Street, Suite 2800
Forth Worth, TX 76102

[See Rider to Summons for other Defendants.]

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

McElroy, Deutsch, Mulvaney & Carpenter, LLP
225 Liberty Street, 36th Floor
New York, NY 10281

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:  12/22/2023                                                         /S/ V. BRAHIMI
_____                    _____
                                                                 *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

Rider to Summons

BIGHORN INVESTMENTS AND PROPERTIES, LLC
777 Main Street, Suite 2800
Fort Worth, TX 76102

BIGHORN SAND & GRAVEL LLC
777 Main Street, Suite 2800
Fort Worth, TX 76102

BRIDGELINK COMMODITIES LLC
777 Main Street, Suite 2800
Fort Worth, TX 76102

BRIDGELINK ENGINEERING LLC
777 Main Street, Suite 2800
Fort Worth, TX 76102

BRIDGELINK INVESTMENTS, LLC
777 Main Street, Suite 2800
Fort Worth, TX 76102

BRIDGELINK RENEWABLE ENERGY DEVELOPMENT LLC
777 Main Street, Suite 2800
Fort Worth, TX 76102

BRIDGELINK RENEWABLE ENERGY INVESTMENTS LLC
777 Main Street, Suite 2800
Fort Worth, TX 76102

INTERMOUTAIN ELECTRIC SERVICE, INC.
P.O. Box 2169
Rock Springs, WY 82902

COLE WAYNE JOHNSON
4204 S. County Rd. 1128
Midland, TX 79706

CORD HENRY JOHNSON
1677 Center Point Rd.
Weatherford, TX 76087

CASSIE HAMILTON,
1677 Center Point Rd.
Weatherford, TX 76087

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

TRISURA INSURANCE COMPANY,

               Plaintiff,

  -against-

BIGHORN CONSTRUCTION AND
RECLAMATION, LLC; BIGHORN
INVESTMENTS AND PROPERTIES, LLC;
BIGHORN SAND & GRAVEL LLC;
BRIDGELINK COMMODITIES LLC;
BRIDGELINK ENGINEERING LLC;
BRIDGELINK INVESTMENTS, LLC;
BRIDGELINK RENEWABLE ENERGY
DEVELOPMENT LLC; BRIDGELINK
RENEWABLE ENERGY INVESTMENTS LLC;
INTERMOUTAIN ELECTRIC SERVICE, INC.;
COLE WAYNE JOHNSON; CORD HENRY
JOHNSON; CASSIE HAMILTON,

               Defendants.

Civil Action No. 1:23-cv-11053-GHW-JW

**AMENDED
COMPLAINT**

---

       Plaintiff, Trisura Insurance Company, by way of it Amended Complaint ("Complaint")

against defendants, Bighorn Construction and Reclamation, LLC, Bighorn Investments and

Properties, LLC, Bighorn Sand & Gravel LLC, Bridgelink Commodities LLC, Bridgelink

Engineering LLC, Bridgelink Investments, LLC, Bridgelink Renewable Energy Development

LLC, Bridgelink Renewable Energy Investments LLC, Intermountain Electric Service, Inc., Cole

Wayne Johnson, Cord Henry Johnson, and Cassie Hamilton, alleges as follows:

<u>**JURISDICTION AND VENUE**</u>

       1.     Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1332 in that this

is an action between citizens of different states and the amount in controversy exceeds $75,000.00,

exclusive of interest and costs.

2.      Venue and jurisdiction is also proper in the United States District Court for the Southern District of New York pursuant to the venue and jurisdiction provisions in the Indemnity Agreement (referenced below) executed by the Defendants.

## PARTIES

3.      Plaintiff, Trisura Insurance Company ("Trisura"), is a corporation organized and existing under the laws of the State of Oklahoma, and maintains its principal place of business in Oklahoma.

4.      Upon information and belief, Defendant Bighorn Construction and Reclamation LLC ("Bighorn Construction") is a Wyoming limited liability company with its principal place of business in Texas, and the members of Bighorn Construction are Cole Wayne Johnson and Cord Henry Johnson, both of whom are residents of Texas; accordingly, Bighorn Construction is a citizen of Texas for purpose of 28 U.S.C. § 1332.

5.      Upon information and belief, Defendant Bighorn Investments and Properties, LLC ("Bighorn Investments") is a Wyoming limited liability company with its principal place of business located in Texas, and the members of Bighorn Investments are Cole Wayne Johnson and Cord Henry Johnson, both of whom are residents of Texas; accordingly, Bighorn Investments is a citizen of Texas for purpose of 28 U.S.C. § 1332.

6.      Upon information and belief, Defendant Bighorn Sand & Gravel LLC ("Bighorn Sand") is a Delaware limited liability company with its principal place of business in Texas, and the sole member of Bighorn Sand is Bighorn Construction.  The members of Bighorn Construction are Cole Wayne Johnson and Cord Henry Johnson, both of whom are residents of Texas; accordingly, Bighorn Sand is a citizen of Texas for purpose of 28 U.S.C. § 1332.

7.     Upon information and belief, Defendant Bridgelink Commodities LLC ("Bridgelink Commodities") is a Delaware limited liability company organized and with its principal place of business in Texas, and, members of Bridgelink Commodities are Cole Wayne Johnson and Cord Henry Johnson, both of whom are residents of Texas; accordingly, Bighorn Sand is a citizen of Texas for purpose of 28 U.S.C. § 1332.

8.     Upon information and belief, Defendant Bridgelink Engineering LLC ("Bridgelink Engineering") is a Delaware limited liability company with its principal place of business in Texas, and the members of Bridgelink Engineering are Cole Wayne Johnson and Cord Henry Johnson, both of whom are residents of Texas; accordingly, Bridgelink Engineering is a citizen of Texas for purpose of 28 U.S.C. § 1332.

9.     Upon information and belief, Defendant Bridgelink Investments, LLC ("Bridgelink Investments") is a Texas limited liability company with its principal place of business in Texas, and the members of Bridgelink Investments are Cole Wayne Johnson and Cord Henry Johnson, both of whom are residents of Texas; accordingly, Bridgelink Investments is a citizen of Texas for purpose of 28 U.S.C. § 1332.

10.     Upon information and belief, Defendant Bridgelink Renewable Energy Development LLC ("Bridgelink Renewable Energy Development") is a Delaware limited liability company with its principal place of business in Texas, and the members of Bridgelink Renewable Energy Development are Cole Wayne Johnson and Cord Henry Johnson, both of whom are residents of Texas; accordingly, Bridgelink Renewable Energy Development is a citizen of Texas for purpose of 28 U.S.C. § 1332.

11.     Upon information and belief, Defendant Bridgelink Renewable Energy Investments LLC ("Bridgelink Renewable Energy Investments") is a Delaware limited liability

company with its principal place of business in Texas, and the members of Bridgelink Renewable Energy Investments are Cole Wayne Johnson and Cord Henry Johnson, both of whom are residents of Texas; accordingly, Bridgelink Renewable Energy Investments is a citizen of Texas for purpose of 28 U.S.C. § 1332.

12.     Upon information and belief, Defendant Intermountain Electric Service, Inc. ("Intermountain") is a corporation organized and existing under the laws of the State of Wyoming and has its principal place of business in Texas.

13.     Upon information and belief, Defendant Cole Wayne Johnson is an individual adult resident of Texas ("Cole Johnson").

14.     Upon information and belief, Defendant Cord Henry Johnson is an individual adult resident of Texas ("Cord Johnson").

15.     Upon information and belief, Defendant Cassie Hamilton is an individual adult resident of Texas ("Cassie Hamilton").

## GENERAL ALLEGATIONS

### I.     THE INDEMNITY AGREEMENT

16.     Bridgelink Engineering, at all relevant times, was engaged in the engineering, procurement and construction business.

17.     Bridgelink Engineering was required to provide surety bonds in connection with certain of its construction contracts.

18.     On or about February 4, 2022, in consideration for and to induce Trisura, as surety, to issue certain surety bonds on behalf of Bridgelink Engineering, as principal, Bighorn Construction, Bighorn Investments, Bighorn Sand, Bridgelink Commodities, Bridgelink Investments, Bridgelink Renewable Energy Development, Bridgelink Renewable Energy

Investments, Intermountain, Cole Johnson, Cord Johnson, and Cassie Hamilton, (collectively, the "Indemnitors"), executed and delivered an Indemnity Agreement in favor of Trisura, as indemnitee.

19.     A true and accurate copy of the Indemnity Agreement is annexed hereto as Exhibit A.

20.     Pursuant to the Indemnity Agreement, the Indemnitors agreed:

INDEMNITY

Each of the Indemnitors shall indemnity and keep indemnified the Surety, against any and all losses, charges, expenses, costs, claims, demands and liabilities (hereinafter called "Indemnity Losses") of whatsoever kind or nature (including, but not limited to, the fees and disbursements of adjusters, consultants and counsel and the establishment or increase of a reserve to cover any possible Indemnity Loss) which the Surety may sustain or incur:

   (a) by reason of having executed or procured the execution of any Bond(s) (or an allegation that the Surety should have done so), including, but not limited, Indemnity Loss incurred in making any investigation in connection with any Bond, prosecuting or defending any action in connection with any Bond, obtaining the release of any Bond; or
   (b) by reason of the failure of the Indemnitors to perform or comply with the Agreement or any Bonding Facility; or
   (c) in enforcing any of the covenants and conditions hereof.

Ex. A at ¶ 2.

21. Pursuant to the Indemnity Agreement, the Indemnitors further agreed:

SETTLEMENT OF CLAIMS

   (a) The Surety shall have the sole right to pay, settle or compromise, without any prior obligation to notify the Indemnitors, any charge, expense, cost, claim, demand, suit, judgment or liability under any Bond(s), and any such payment, settlement or compromise shall be binding upon the Indemnitors and included as an Indemnity Loss.

(b) In the event of any such payment, settlement investigation or compromise by the Surety, an itemized statement thereof sworn to by any officer or authorized representative of the Surety, or the voucher(s), cancelled cheque(s) or other evidence of such payment, settlement or compromise, shall be prima facie evidence of the fact and amount of the liability of the Indemnitors under this Agreement in respect of such payment, settlement or compromise.

(c) In the event of any payment by the Surety, the Indemnitors agree that in any accounting between the Surety and the Indemnitors, the Surety shall be entitled to charge for any and all disbursements made by it in and about the matters contemplated by this Agreement.

Ex. A at ¶ 10.

22.    Pursuant to the Indemnity Agreement, the Indemnitors further agreed:

GOVERNING LAW AND JURISDICTION

Each Indemnitor understands and agrees that the interpretation land enforcement of this Agreement shall be governed, construed, and interpreted in accordance with the laws of the State of New York, without giving effect to any conflicts of laws principles of that State or any other State or jurisdiction.   Each Indemnitor further understands and agrees that the venue for any suit, action or proceeding, or otherwise refuses to exercise jurisdiction over any dispute that may arise, each Indemnitor further understands and agrees that the venue shall be in the federal courts for the State of New York unless any jurisdictional prerequisites are not met, in which case it will lie with the state courts of New York.  Each Indemnitor irrevocably and unconditionally submits to the jurisdiction of said courts and waives any claim or defense in any such suit, action or proceeding based on any alleged lack of personal jurisdiction, improper venue, forum non conveniences, or any similar basis.

Ex. A at ¶ 28.

23. Under the Indemnity Agreement, the Indemnitors agreed:

DEFENSE-RESERVE-DEPOSIT

(b) Upon an Event of Default or determination by Surety that a potential for Indemnity Loss Exists, Surety may demand that Indemnitors deposit a sum or money equal to an amount

determined by Surety, or collateral security of a type and value satisfactory to Surety, to cover any Indemnity Loss or anticipated Indemnity Loss, whether Surety has established or increased any reserve, made any Indemnity Loss payment, or received any notice of any claims therefor.  Without limiting the generality of the foregoing, if for any reason the Surety deems it necessary to establish or to increase a reserve (the amount of which shall be in the sole discretion of the Surety, as from time to time revised) to cover any possible Indemnity Loss (including, for greater certainty, the costs of investigating and defending any claim or demand and interest on the amount thereof at the rate or rates claimed on or applicable to such a demand, to the probably date of its resolution:, the Indemnitors shall deposit with the Surety immediately upon demand (and make such further deposits as may be required of) cash or collateral satisfactory to the Surety in an amount equal to such reserve or such increase.  The Indemnitors acknowledge that the failure of the Indemnitors to deposit with the Surety, immediately upon demand, the sum demanded by the Surety shall cause irreparable harm to the Surety for which the Surety has no adequate remedy at law, and that the Surety shall be entitled to injunctive relief (including specific performance of the obligation to make such deposit with the Surety), and hereby waive any claims or defenses to the contrary.

Ex. A at ¶ 9.

## II.   THE SOLAR CONTRACT AND THE SOLAR BONDS

24.     On or about February 4, 2022, Jicarilla Solar 1, LLC ("Jicarilla Solar") entered into an agreement with Bridgelink Engineering pursuant to which Bridgelink Engineering agreed to perform certain work in connection with a solar power facility engineering, procurement and construction contract (the "Solar Contract").

25.     On or about February 10, 2022, Trisura, as surety, on behalf of Bridgelink Engineering, as principal, issued a Performance Bond (the "Solar Performance Bond") and a Payment Bond (the "Solar Payment Bond"), each bearing Bond No. TIC01702, and each in the penal sum of $24,465,404.00 (collectively, the "Solar Bonds"), in favor of Repsol Renewables Development Company, LLC, as owner ("Owner"), as modified by Rider No. 1, in connection

7

with the Solar Contract.   A copy of the Solar Bonds and Rider No. 1 are annexed hereto as **Exhibit B**.

### III.  JICARILLA SOLAR DECLARES BRIDGELINK ENGINEERING IN DEFAULT ON THE JICARILLA SOLAR CONTRACT

26.     On or about October 14, 2022, Jicarilla Solar provided Bridgelink Engineering and Trisura with Notice of Termination and for Contractor Default in connection with Solar Contract.

27.     Further, Owner made demand on Trisura under the Solar Performance Bond.

### IV.  THE INDEMNITORS FAIL TO POST COLLATERAL WITH TRISURA

28.     On or about January 13, 2023, Trisura demanded that the Indemnitors post collateral with Trisura under the terms of the Indemnity Agreement in connection with the demand and claims asserted against the Solar Performance Bond.  A copy of the collateral demand letter is annexed hereto as **Exhibit C**.

29.     To date, the Indemnitors have failed to post this collateral with Trisura as required by the Indemnity Agreement.

### V.  TRISURA'S LOSSES AND EXPENSES

30.     As a result of the declaration of the Solar Contract in default and termination of Bridgelink Engineering, Trisura was required to make payments to the Owner to complete the Solar Contract pursuant to the Solar Performance Bond.

31.     By reason of Trisura having executed the Bonds, the failure of the Indemnitors to perform or comply with this Indemnity Agreement and/or Trisura's enforcing any of the covenants and conditions of the Indemnity Agreement, Trisura has paid, sustained, or incurred Indemnity Losses (as that term is defined in the Indemnity Agreement) in an amount exceeding $75,000.00.

## FIRST CAUSE OF ACTION

### CONTRACTUAL INDEMNIFICATION
### AGAINST THE  INDEMNITORS

32.     Trisura repeats and re-avers each and every one of the allegations set forth in the preceding paragraphs of this Complaint with the same force and effect as if each were fully set forth at length herein.

33.     The Indemnitors have failed to honor, and have breached, their obligations under the Indemnity Agreement to, among other things, indemnify Trisura for the Indemnity Losses it incurred by reason of having executed the Bonds, the failure of the Indemnitors to perform or comply with the Indemnity Agreement, and/or Trisura's enforcing of any of the covenants and conditions of the Indemnity Agreement.

34.     As a result of the Indemnitors' breach of the Indemnity Agreement, Trisura has incurred substantial Indemnity Losses.

**WHEREFORE**, Trisura respectfully demands judgment against the Indemnitors, jointly and severally, as follows:

(a)     for contractual indemnification for the Indemnity Losses incurred by Trisura, and any and all liability, loss, cost, expense, professional and consulting fees and attorneys' fees to be incurred by Trisura, together with appropriate interest thereon;

(b)     for declaratory relief, declaring that the Indemnitors are jointly and severally liable to Trisura for all Indemnity Losses to which Trisura may be exposed or which it may sustain;

(c)     for an order, compelling each Indemnitor to perform its obligations to Trisura under the Indemnity Agreement and the Bonds; and

(d)  awarding interest, costs of suit, attorneys' fees and such other and further relief as may be just and equitable.

## SECOND CAUSE OF ACTION

### COMMON LAW INDEMNIFICATION
### AGAINST BRIDGELINK ENGINEERING

35.  Trisura repeats and re-avers each and every one of the allegations set forth in the preceding paragraphs of this Complaint with the same force and effect as if each were fully set forth at length herein.

36.  As between Trisura and Bridgelink Engineering, Trisura is secondarily obligated under the Bonds, while Bridgelink Engineering is primarily obligated under the Bonds, and otherwise owes a duty to Trisura to procure the discharge of all obligations arising under the Bonds.

37.  Based on the foregoing, Bridgelink Engineering should be required to pay any financial obligations related to the Bonds issued by Trisura on behalf of Bridgelink Engineering.

38.  Trisura has sustained and/or will sustain damages by reason of Bridgelink Engineering's failure to honor its common law obligations arising under the Bonds.

**WHEREFORE**, Trisura respectfully demands judgment against Bridgelink Engineering as follows:

(a)  ordering Bridgelink Engineering to discharge any financial obligations asserted against Trisura under the Bonds, and to reimburse Trisura for any outlays which it may have had to make in connection therewith;

(b)  ordering and directing Bridgelink Engineering to immediately reimburse Trisura in an amount sufficient to indemnify Trisura from any and all liability, loss, cost and

10

expense incurred as a result of having executed the Bonds, together with appropriate interest thereon;

(c)    awarding in favor of Trisura, and against Bridgelink Engineering, damages in the amount of all expenditures, and outlays made by Trisura, including attorneys' fees, consultant's fees, litigation expenses, interest and court costs; and

(d)    awarding interest, costs of suit, attorneys' fees and such other and further relief as may be just and equitable.

### THIRD CAUSE OF ACTION
#### SUBROGATION AGAINST BRIDGELINK ENGINEERING

39.    Trisura repeats and re-avers each and every one of the allegations set forth in the preceding paragraphs of this Complaint with the same force and effect as if each were fully set forth at length herein.

40.    To the extent that Trisura has, or will make, payments to extinguish Bridgelink Engineering's debts arising from the Bonds, Trisura has, and will, become subrogated to the rights of, among others, those whom it has paid, or will pay in connection with the Bonds.

41.    As a result of Bridgelink Engineering's failure to honor its obligations under the Bonds, Trisura has sustained damages and/or is likely to sustain damages.

**WHEREFORE**, Trisura respectfully demands judgment against Bridgelink Engineering as follows:

(a)    for subrogation in an amount equal to any payment made, or hereafter made, by Trisura on Bridgelink Engineering's behalf in connection with any bond issued by Trisura to Bridgelink Engineering;

(b)    for attorneys' fees and costs of suit; and

(c)    for such other and further relief, legal or otherwise that this Court may deem just

and proper.

McELROY, DEUTSCH, MULVANEY &
CARPENTER, LLP
*Attorneys for Plaintiff,*
*Trisura Insurance Company*

Dated: January 10, 2024

By: _____

John W. Morris
Adam R. Schwartz
Dennis O'Neil Cowling
225 Liberty Street, 36th Floor
New York, New York 10281
(212) 483-9490
jmorris@mdmc-law.com
aschwartz@mdmc-law.com
dcowling@mdmc-law.com

12

# Exhibit A



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

# INDEMNITY AGREEMENT
### IN FAVOR OF

### TRISURA INSURANCE COMPANY and/or TRISURA GUARANTEE INSURANCE COMPANY

made under the laws of the State of New York of **February 3rd, 2022**

BY:

**Bighorn Construction and Reclamation, LLC (**████████████**)** ▪
**Bighorn Investments and Properties, LLC (**████████████**)**
**Bighorn Sand & Gravel LLC (**████████████**)**
**Bridgelink Commodities LLC (**████████████**)**
**Bridgelink Engineering LLC (**████████████**)**
**Bridgelink Investments, LLC (**████████████**)**
**Bridgelink Renewable Energy Development LLC (**████████████**)**
**Bridgelink Renewable Energy Investments LLC (**████████████**)**
**Intermountain Electric Service, Inc. (**████████████**)**
**Cole Wayne Johnson (**████████████**)**
**Cord Henry Johnson (**████████████**)**
**Cassie Hamilton (**████████████**)**

(the person(s) listed above being collectively the "Indemnitors" and each an "Indemnitor")

**WHEREAS**
(A)     one or more of the Indemnitors, in his, its or their own name(s) or as joint venturer(s) with others, may desire, or be required, to procure the execution and delivery by Trisura Insurance Company (the "Surety") of Bonds as hereinafter defined or one or more of the Indemnitors may request the Surety to refrain from cancelling or attempting to cancel such Bonds as the Surety may already have executed or procured the execution of;

(B)     each of the Indemnitors understands that the Surety expressly requires the delivery of this Agreement as part of the consideration for the execution by the Surety of such Bonds which may already have been furnished by the Surety in reliance upon a representation that this Agreement would be executed, or which may hereafter be furnished, or for the refraining from cancelling or attempting to cancel said Bonds; and

(C)     each of the Indemnitors hereby represents to the Surety that such Indemnitor has a substantial, material and beneficial interest in the obtaining of Bonds (whether or not such Indemnitor is a principal under any Bond(s) as hereinafter defined) or in the Surety's refraining from cancelling or attempting to cancel Bonds.

**NOW THEREFORE**, in consideration of the sum of Two Dollars ($2.00) and other good and valuable consideration paid or furnished by the Surety to each of the Indemnitors (the receipt and sufficiency of which are hereby acknowledged) and of the Surety having executed in the past, presently executing or procuring the execution of Bonds for which application is now pending, or which may be hereafter applied for, or executing in the future one or more Bonds, or of any alteration, renewal, continuation or extension thereof, or of the Surety's refraining from cancelling or attempting to cancel the same, the Indemnitors jointly, severally and for each other do hereby covenant and agree with the Surety as follows:

1.      **DEFINITIONS**
In the present Agreement:
(a)     "Bond" means a contract of suretyship, guarantee or indemnity, an agreement or consent to provide such a contract and the continuation, extension, alteration, amendment, increase, decrease, renewal or substitution of such a contract, agreement or consent, in respect of the Indemnitor(s) (or any or all of them, if more than one, or any affiliate(s) and/or partner(s) of any of them, or any other principal for which the same is requested by an Indemnitor), whether issued by the Surety, any successor of the Surety, or any Beneficiary as defined by section 8 below, and whether issued before, on or after the date of this Agreement;

(b)     "Bonded Contract" means a Contract in respect of which any Bond(s) is or may at any time hereafter be issued;

(c)     "Bonding Facility" means any past, present or future agreement or arrangement between the Surety and the Indemnitors or any of them providing for the issuance of any Bond(s);

(d)     "Contract" includes all documents comprising the contract documents including but not limited to general and special conditions, specifications and drawings, and every change, addition, substitution, successor, or new contract;

(e)     "Event of Default" means:



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

| | | |
|---|---|---|
| (i) | | any breach or alleged breach of any of the covenants and agreements herein contained, Including, but not limited to, any failure to post collateral as required under this Agreement, or of any term or condition of any Bonding Facility; or |
| (ii) | | any abandonment, forfeiture, or breach of, or failure, refusal or inability to perform, any Bonded Contract or any liability under a Bond; or |
| (iii) | | any failure, refusal or inability of a principal to pay bills or other indebtedness incurred in, or in connection with, the performance of any Bonded Contract or any other contract; or |
| (iv) | | a declaration of Bonded Contract default by an obligee; |
| (v) | | Surety's good faith establishment of a reserve; |
| (vi) | | improper diversion of Bonded Contract funds or any Indemnitor's assets to the detriment of Bonded Contract obligations; |
| (vii) | | any Indemnitor's dying, becoming legally incompetent, being imprisoned, being convicted of a felony, or disappearing and being unable to be located; |
| (viii) | | any representation furnished to Surety by or on behalf of any Indemnitor proving to have been materially false or misleading when made; |
| (ix) | | any assignment by any of the Indemnitors for the benefit of creditors, or the appointment, or any application for the appointment, of a receiver or trustee for any of the Indemnitors, whether insolvent or not; or |
| (x) | | any proceeding or the exercise of any right which deprives any of the Indemnitors of the use of any of the Bonded Contract Equipment and Material or any assets necessary or desirable to complete any Bonded Contract; or |
| (xi) | | any change or threat of change in the character, identity, control (the addition or departure of any person or entity having a twenty percent (20%) or greater ownership), management, beneficial ownership or existence of a principal; or |
| (xii) | | any other occurrence, condition or circumstance (whether or not similar to any of the foregoing) which in the sole opinion of the Surety may expose the Surety to loss, cost or expense; |
| (f) | | "execute" and "execution" include procure and procurement for execution; |
| (g) | | "hereof", "herein", "hereto" and similar expressions mean and refer to this Agreement and not to any particular section, subsection, clause or subclause; |
| (h) | | "person" means and includes individuals, partnerships, joint ventures, trusts, corporations and associations; |
| (i) | | "principal" means, in relation to any Bond or Bonded Contract, each and all of the principal(s) named therein or a party thereto; |
| (j) | | the singular form includes the plural and the plural includes the singular, and the word "Indemnitors" or any pronoun referring thereto, whether singular or plural, is to be construed as referring to the undersigned person(s), though they be or include one or more individuals, partnerships, associations or corporations; |
| (k) | | the neuter pronoun shall be read as masculine or feminine, as circumstances require; and |
| (l) | | the division of this Agreement into sections, subsections, clauses and subclauses, and the insertion of headings, are for convenience of reference only and shall not affect the interpretation or construction hereof. |

## 2.    INDEMNITY

Each of the Indemnitors shall indemnify and keep indemnified the Surety, against any and all losses, charges, expenses, costs, claims, demands and liabilities (hereinafter called "Indemnity Losses") of whatsoever kind or nature (including, but not limited to, the fees and disbursements of adjusters, consultants and counsel and the establishment or increase of a reserve to cover any possible Indemnity Loss) which the Surety may sustain or incur:

(a)    by reason of having executed or procured the execution of any Bond(s) (or an allegation that the Surety should have done so), including, but not limited, Indemnity Loss incurred in making any investigation in connection with any Bond, prosecuting or defending any action in connection with any Bond, obtaining the release of any Bond; or

(b)    by reason of the failure of the Indemnitors to perform or comply with this Agreement or any Bonding Facility; or

(c)    in enforcing any of the covenants and conditions hereof.

## 3.    PERFORMANCE AND FEES

(a)    The Indemnitors covenant to perform all the conditions of each Bond, Bonded Contract, and any and all alterations, modifications, renewals, continuations, and extensions thereof.

(b)    Without limiting the generality of the foregoing, the Indemnitors shall pay to the Surety:

| | | |
|---|---|---|
| (i) | | all premiums and fees related to Bonds, and all modifications, renewals, and extensions thereto; |
| (ii) | | any annual fee, setup fee or prequalification fee related to any Bonding Facility; and |
| (iii) | | any other expenses incurred by the Surety in relation to the establishment and maintenance of a Bonding Facility for the Indemnitors or any of them. |

## 4.    APPLICATION OF THIS AGREEMENT

(a)    This Agreement shall apply to all Bonds executed by or on behalf of the Surety, and any Bonding Facility relating thereto, on behalf of:

| | | |
|---|---|---|
| (i) | | any Indemnitor(s); |
| (ii) | | any present or future affiliate(s) or partner(s) of any Indemnitor; or |
| (iii) | | any other principal at the request of an Indemnitor; |



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

in each case in its own name or as joint venturer with others, from time to time, whether prior to or subsequent to the execution and delivery hereof, and over an indefinite period of years, until this Agreement shall be terminated in accordance with the terms hereof, and the Indemnitors agree that notice of the execution of such Bonds need not be communicated to them. For greater certainty, and without limiting the generality of any other provision hereof, this

Agreement shall also apply to any other matter arising out of or connected with any such Bond (including any Bond applied for but not issued) or any Bonded Contract relating to any such party.

(b)     This Agreement shall bind:
  (i)     any present or future affiliate or partner of any of the Indemnitors; and
  (ii)    any participant in any joint venture or other form of common enterprise of which the Indemnitor was a member (or was to become a member) at the time a Bond was furnished;

and the Indemnitors shall, upon the request of the Surety, cause any such affiliate, partner or participant to execute and deliver to the Surety an adhesion, in such form and terms as may be required by the Surety, agreeing to be bound by this Agreement.


**5.     AUTHORITY TO EXECUTE BONDS**

Requests to the Surety to execute any Bond(s) may be made by any of the Indemnitors or (where an Indemnitor is not an individual) any officer, employee or partner of any of the Indemnitors, or by any agent or broker reasonably believed by the Surety to be representing any of the Indemnitors. Such requests, whether made in writing (mailed, delivered or telecopied), by telegraph, by personal interview or by telephone, shall be regarded as sufficient and ample authority for the Surety to execute any such Bond(s).


**6.     ABSOLUTE RIGHT TO DECLINE TO ISSUE BONDS**

(a)     The Surety, at its option and in its sole discretion, may decline to execute, or provide any Bond(s) applied for without incurring any liability whatever to the Indemnitors or any of them or affecting the liability of the Indemnitors or any of them hereunder to the Surety.

(b)     Each of the Indemnitors acknowledges that:
  (i)     the Surety is under no obligation to issue any Bond(s);
  (ii)    such Indemnitor is not relying and will not rely on any agreement, assurance, understanding, warranty, representation, condition precedent, collateral agreement or other commitment of any kind whatsoever (including without limitation any letter setting out terms and conditions for a Bonding Facility) purporting to be made or entered into by or on behalf of the Surety obliging the Surety to issue any Bond(s);
  (iii)   issuance of any Bond(s) shall not estop the Surety from declining to issue any other Bond(s) or constitute a waiver of the Surety's absolute right to decline to issue any Bond(s); and
  (iv)    if the Surety issues a bid bond, agreement to bond (or "surety's consent") or similar undertaking and the applicant is successful in bidding the project, the Surety may nevertheless decline to issue the performance bond, the payment bond, or any other bond required by the awarding entity, without incurring any liability to the Indemnitors, who hereby agree that such a bid bond, agreement or undertaking is a Bond to which this Agreement applies.


**7.     PARTIAL INVALIDITY OF EXECUTION**

(a)     If any of the persons named herein as an Indemnitor fails to execute this Agreement or if the execution hereof by any of the Indemnitors shall be defective or invalid for any reason, such failure, defect, or invalidity shall not in any manner diminish or otherwise affect the obligation or liability hereunder of any other of the Indemnitors.

(b)     Failure of the principal to sign any Bond shall not relieve the Indemnitors of liability under this Agreement.


**8.     PROTECTION OF OTHER SURETIES**

If the Surety issues any Bond with a co-surety, reinsures any portion of a Bond with any other company, or procures the issuance of any Bond by any other company (whether or not the Surety issues, or retains any portion of, such Bond), the Indemnitors agree with any and all such co-sureties, reinsurers or issuing companies (hereinafter collectively referred to as the "Beneficiaries") that the benefits hereof shall extend to and protect each of the Beneficiaries. The Surety hereby declares that it is the trustee of all of the rights of the Beneficiaries under the foregoing covenant.


**9.     DEFENSE- RESERVE – DEPOSIT**

(a)     If the Indemnitors desire that a claim or demand against the Surety shall be resisted and litigated, the Indemnitors shall:
  (i)     give notice to the Surety to this effect; and
  (ii)    if requested, at any time, by the Surety, deposit with the Surety cash (or collateral satisfactory to the Surety) in an amount sufficient to cover the expenses and fees of defense; and
  (iii)   if requested, at any time, by the Surety, deposit with the Surety cash (or collateral satisfactory to the Surety) in an amount sufficient to cover the claim or demand and interest thereon to the probable date of disposition.



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

(b)     Upon an Event of Default or determination by Surety that a potential for Indemnity Loss exists, Surety may demand that Indemnitors deposit a sum of money equal to an amount determined by Surety, or collateral security of a type and value satisfactory to Surety, to cover any Indemnity Loss or anticipated Indemnity Loss, whether Surety has established or increased any reserve, made any Indemnity Loss payment; or received any notice of any claims therefor. Without limiting the generality of the foregoing, If for any reason the Surety deems it necessary to establish or to increase a reserve (the amount of which shall be in the sole discretion of the Surety, as from time to time revised) to cover any possible Indemnity Loss (including, for greater certainty, the costs of investigating and defending any claim or demand and interest on the amount thereof at the rate or rates claimed on or

applicable to such claim or demand, to the probable date of its resolution), the Indemnitors shall deposit with the Surety immediately upon demand (and make such further deposits as may be required of) cash or collateral satisfactory to the Surety in an amount equal to such reserve or such increase.  The Indemnitors acknowledge that the failure of the Indemnitors to deposit with the Surety, immediately upon demand, the sum demanded by the Surety shall cause irreparable harm to the Surety for which the Surety has no adequate remedy at law, and that the Surety shall be entitled to injunctive relief (including specific performance of the obligation to make such deposit with the Surety), and hereby waive any claims or defenses to the contrary.

(c)     The Surety may:
(i)      hold any deposit made under this section 9 in such form as the Surety may in its absolute discretion decide, and shall have no obligation to invest, or provide any income or return on, any such deposit; and
(ii)     in its sole discretion, use all or any part of such deposit, and of any income earned thereon, in payment, settlement or compromise of any Indemnity Loss.

(d)     The Indemnitors shall be entitled to the return of any unused portion of the deposit, and the income (if any) earned on the balance of the deposit outstanding from time to time (to the extent such income has not been used in payment or compromise of an Indemnity Loss), upon termination of the liability of the Surety on the Bonds and the performance by the Indemnitors of all obligations to the Surety under the terms hereof.  The Surety's calculation of the income, if any, attributable to any such deposit shall be final and binding on the Indemnitors.

10.     **SETTLEMENT OF CLAIMS**
(a)     The Surety shall have the sole right to pay, settle or compromise, without any prior obligation to notify the Indemnitors, any charge, expense, cost, claim, demand, suit, judgment or liability under any Bond(s), and any such payment, settlement or compromise shall be binding upon the Indemnitors and included as an Indemnity Loss.
(b)     In the event of any such payment, settlement, investigation, or compromise by the Surety, an itemized statement thereof sworn to by any officer or authorized representative of the Surety, or the voucher(s), cancelled cheque(s) or other evidence of such payment, settlement or compromise, shall be prima facie evidence of the fact and amount of the liability of the Indemnitors under this Agreement in respect of such payment, settlement or compromise.
(c)     In the event of any payment by the Surety, the Indemnitors agree that in any accounting between the Surety and the Indemnitors, the Surety shall be entitled to charge for any and all disbursements made by it in and about the matters contemplated by this Agreement.

11.     **ADVANCES BY SURETY**
The Surety, at its sole election and discretion, is authorized and empowered, but not obligated, to advance or loan to a principal any money which the Surety may see fit to advance to such principal, and to guarantee re-payment of such loans made by others, and all moneys so advanced or loaned, as well as all costs, counsel fees and expenses incurred by the Surety in connection with such advances or loans, unless repaid with legal interest by the principal, shall be included as Indemnity Losses.

12.     **ACKNOWLEDGEMENT OF CONTINUING LIABILITY**
(a)     Each of the Indemnitors acknowledges that this Agreement shall remain in full force and effect, even if such Indemnitor never had or no longer has any interest in the principal, as long as this Agreement has not been terminated by such Indemnitor in accordance herewith; without limiting the generality of the foregoing, the rights of the Surety under this Agreement and any other agreement with any of the Indemnitors shall be cumulative, and this Agreement shall not be construed as having merged with or been cancelled, limited or superseded by any other agreement, whether or not in the same form as this Agreement, unless such other agreement is in writing, expressly states that this Agreement is terminated thereby, and is signed by an officer of the Surety.
(b)     The Indemnitors shall continue to remain bound under this Agreement, notwithstanding the occurrence at any time or from time to time, with or without notice to or knowledge of the Indemnitors, and whether by prior agreement or otherwise, of any or all of the following events, which are in addition to any other rights of the Surety, and which shall not in any way release, limit or abridge any right or remedy which the Surety may have under this Agreement, and this Agreement shall remain in full force and effect after such event:
(i)      the acceptance by the Surety of payment for any Bond(s);
(ii)     the acceptance or release by the Surety of other agreements of indemnity, collateral security or guarantees, from any or all of the Indemnitors or from others;
(iii)    the Surety's assent to any act of the principal;
(iv)     a suit or a settlement deriving from this Agreement;



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

(v)    any waiver, extension, or indulgence granted by the Surety to any of the Indemnitors or to others; or

(vi)    any failure or refusal by the Surety to pursue any remedy or take proceedings against any person or property.

13.    **INFORMATION TO BE PROVIDED TO SURETY**

(a)    Each of the Indemnitors shall:

    (i)    forward immediately to the Surety every letter, document, advice, statement of claim or writ received by him from or on behalf of any person who asserts or threatens; and

    (ii)    whenever requested by the Surety, aid in securing information and evidence and the attendance of any witness for, and co-operate fully with the Surety in the defense of;

    any claim or demand arising out of or in connection with any Bond(s).

(b)    The Indemnitors shall furnish to the Surety fully, accurately and promptly all such information as it may request from time to time concerning:

    (i)    the financial condition of the Indemnitors;

    (ii)    the status of any Bonded Contract(s), other contract(s) or other obligations of the Indemnitors and the condition of the performance thereof;

    (iii)    the payment of obligations incurred in connection with any Bonded Contract(s), other contract(s) or other obligations; and

    (iv)    all such other information as the Surety may from time to time reasonably request.

(c)    The Surety and any representative, agent or advisor authorized in writing by the Surety may at reasonable times and places and from time to time, examine and copy the books, records and accounts of the Indemnitors.

(d)    Any of the Indemnitors who are individuals shall notify the Surety of any change in their respective marital circumstances which might affect their ownership of any assets or confer on their respective spouses any right, actual or potential, to claim an interest in any of their respective assets.

(e)    Each of the Indemnitors shall provide the Surety with thirty (30) days prior written notice of any change in his or its name, corporate or other company or entity status, state of formation or registration, or residency.

(f)    If any of the Indemnitors merges, amalgamates, consolidates, reorganizes, forms a partnership or joins with, or sells, transfers or leases all or substantially all of its undertaking, property and assets to, any other person, firm, corporation, trust, partnership or venture (hereinafter called a "Successor") and, where an Indemnitor is a partnership, if there is any change in the constitution of the partnership, including (but not limited to) the death, retirement, or addition of a member or members, or subsequent incorporation (the partnership so reconstituted or incorporated being included in the term "Successor"), then:

    (i)    such Indemnitor shall immediately notify each of the other Indemnitors and the Surety; and

    (ii)    whether or not such notice is given, this Agreement shall extend and apply to any Bonds theretofore issued (to the extent that such Bonds relate to the Successor) and any Bonds thereafter issued in respect of the Successor as principal.

14.    **CONSENT TO CHANGES**

The Surety is authorized and empowered, without notice to or knowledge of the Indemnitors, notice being hereby expressly waived:

(a)    to correct any mistakes herein or in any Bond(s);

(b)    to assent or refuse to assent to any change whatsoever in any Bond(s), any Bonded Contract(s) and any Bonding Facility, including but not limited to any change in the time for the completion of any Bonded Contract(s) and for payments or advances thereunder and/or in the general conditions, plans or specifications which accompany said Bonded Contract(s) and any increase or decrease in the limit of any Bonding Facility; and

(c)    to assent to or to take any assignment or assignments, to execute or consent to the execution of any continuations, extensions, renewals, enlargements, modifications, change or alterations of any Bond(s) or Bonding Facility or Bonding Facilities, and to execute any substitute or substitutes therefor, with the same or different conditions, provisions and obligees and with the same or larger or smaller penalties;

(d)    Surety will have the right, and is hereby authorized and empowers, but not required:

    (i)    upon the request of any Indemnitor to increase or decrease the penalty or penalties of ay Bonds, to change the obligee(s) therein, to execute any continuation, enlargements, modification, and renewals thereof or substitute therefor with the same or different conditions, provisions or obligee(s), and with the same, larger, or smaller penalties, it being agreed that this instrument will apply to and cover such new or changed Bonds or renewals even though the consent of Surety may or does substantially increase the liability of Indemnitors and Principals; or

    (ii)    to take such steps as it may deem necessary or proper to obtain release from liability under the Bonds; or

    (iii)    to assent to any changes in any Bonded Contract, including but not limited to, any change in the time for completion of any Bonded Contract and to payments or advances thereunder; or

    (iv)    to assent to or take any assignment(s);

and the Indemnitors shall remain bound under the terms hereof even though any such correction, assent or refusal by the Surety does or may substantially increase the liability of the Indemnitors.

15.    **COLLATERAL SECURITY/DEFAULT**



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

(a)    The Indemnitors shall obtain, maintain, and make available to Surety, or any Person designated by Surety, all equipment, materials, and other assets necessary for the performance of all Bonded Contract(s).

(b)    Each of the Indemnitors hereby assigns and transfers to the Surety, as collateral, to secure the obligations herein of the Indemnitors and all other indebtedness or liabilities of the Indemnitors to the Surety, whether heretofore or hereafter incurred, all the right, title, and interest of the Indemnitors in and to all:

(i)    accounts, as defined in the Uniform Commercial Code ("the UCC"), but also includes whether the same is included in such definition in the UCC, all of Indemnitors' now owned or hereafter acquired accounts, accounts receivable, and proceeds, including without limitation, all insurance proceeds, proceeds of any letter of credit on which any of Indemnitors is a beneficiary, in each case including, but not limited to, accounts, accounts receivable, and proceeds that arise out of any and all Bonded Contracts, and all forms of obligations whatsoever owing to Indemnitors under

     instruments and documents of title representing the foregoing; and all rights, securities, and guarantees with respect to each of the foregoing;

(ii)    chattel Paper, as defined in the UCC;

(iii)    contracts, contract rights (including, but not limited to, rights under contracts for work performed by Indemnitors', subcontract, and contracts for the purchase of supplies), and rights under any and all Bonded Contracts;

(iv)    documents, as defined in the UCC;

(v)    general intangibles, as defined in the UCC, but also includes whether the same are included in such definition in the UCC, all choses in action, causes of action, corporate or other business Records, inventions, designs, patents, patent applications, trademarks, trademark applications, trade names, trade secrets, goodwill, registrations, copyrights, licenses, franchises, customer lists, tax refunds, tax refund claims, all insurance proceeds, insurance refunds and equivalents, rebates of insurance premiums, rights and claims against carriers and shippers, leases, rights to indemnification, and all other intangible personal property of every kind and nature (including, but not limited to, any equity or other interest in any limited liability company, general or limited partnership, joint venture);

(vi)    equipment, as defined in the UCC, but also includes whether the same is included in such definition in the UCC, supplies, equipment, vehicles, plant, tools, materials, plans, specifications, computers, computer systems, hardware and software of every nature and description which are now owned or hereafter acquired, about or upon the site or sites of any and all of the Bonded Contracts or elsewhere, including, but not limited to, materials purchased for or chargeable to any and all Bonded Contracts, equipment or materials for Bonded Contracts which may be in process of construction, in storage elsewhere, or in transportation to any and all of said sites;

(vii)    goods, as defined in the UCC;

(viii)    inventory, as defined in the UCC, but also includes whether the same are included as such definition in the UCC, all of Indemnitors' goods, merchandise, and other personal property furnished under any contract of service, Bonded Contract, or intended for sale or lease, all raw materials, glass, gravel, cement, sand, work in process, finished goods and materials, and supplies of any kind, nature, or description which are or might be used or consumed in Debtors' business or are or might be used in connection with the manufacture, packaging, shipping, advertising, selling, or finishing of such goods, merchandise, and other personal property, all returned or repossessed goods now, or hereafter, in the possession or under the control of Indemnitors, and all documents of title or documents representing the same;

(ix)    instruments, as defined in the UCC;

(x)    records, correspondence, memoranda, tapes, books, disks, paper, magnetic storage and other documents or information of any type, whether expressed in ordinary or machine language; and

(xii)    commercial tort claims, as defined in the UCC, but includes whether the same is included in such definition in the UCC, any claims against any accountants, financial advisors, or other person arising out of the preparation or delivery of any financial statements or information.

16.    **TRUST FUNDS**

(a)    Each Indemnitor agrees and hereby expressly declares that all funds due or to become due under any Bonded Contract, are, whether in the possession of the Indemnitor or another, trust funds for the benefit of and payment to all persons to whom the Indemnitor incurs, in the performance of such Bonded Contract, obligations for which the Surety would be liable under such Bond. If the Surety assumes or discharges any such obligation, with or without a claim asserted against Surety under the Bonds, it shall be entitled to assert the claim of such person to the trust funds. All payments received for or on account of any Bonded Contract will be held in a trust fund to assure the payment of obligations incurred or to be incurred in the performance of any Bonded Contract and for labor, materials, and services furnished in the prosecution of the work under any Bonded Contract or any extension or modification thereof. The trust funds will further inure to the benefit of Surety for any liability or Indemnity Loss it may have or sustain under any Bond, and this Agreement and declaration constitute notice of such trust. The trust funds, unless otherwise restricted or regulated by state or



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

local laws, can be comingled with other funds, but the trust fund nature and purpose as stated in this paragraph will not be modified nor waived by this comingling provision.

(b)    Each Indemnitor shall, upon demand by the Surety and in implementation of any trust hereby created, open an account or accounts with a bank or similar depository designated by the Indemnitor and approved by the Surety, which account or accounts shall be designated as a trust account or accounts for the deposit of such trust funds, and shall deposit therein all monies received pursuant to said Bonded Contract or contracts. Withdrawals from such accounts shall be by cheque or similar instrument signed by a representative of the Surety and, at Surety's option, counter signed by an Indemnitor.

(c)    Said trust or trusts shall terminate on the payment by the Indemnitor of all the contractual obligations for the payment of which the trust or trusts are hereby created or upon the expiration of twenty years from the date hereof, whichever shall first occur.

### 17.    POWER OF ATTORNEY

(a)    Each Indemnitor agrees to sign, execute, file, and/or deliver to Surety all documents, reports, papers, pleadings, and/or instruments required to obtain, and/or perfect any Surety's rights under this Agreement.

(b)    Each of the Indemnitors hereby irrevocably nominates, constitutes, appoints and designates the Surety, or any person or persons designated by the Surety, as its attorney to exercise all of its rights assigned, transferred or set over to the Surety by this Agreement, and in its name to execute and deliver (and without limiting the generality of the foregoing, to complete any blanks and insert dates in) any and all additional or other assignments, instruments or documents deemed necessary or desirable by the Surety:

(i)    to vest in the Surety or its designees absolute title to any and all monies, property and rights hereby assigned; and

(ii)    to provide the protections and rights to the Surety contemplated by all the provisions hereof.

Each of the Indemnitors hereby expressly declares that such power of attorney may be exercised during any subsequent legal incapacity on the part of such Indemnitor. Indemnitors recognize that the appointment of such attorney-in-fact constitutes a power coupled with an interest.

### 18.    DISCLOSURE AND REGISTRATION

The Indemnitors consent to:

(a)    the service hereof at any time upon any person, firm, or corporation (but nothing herein shall be construed as permitting the Surety to take enforcement proceedings contrary to subparagraph above);

(b)    the filing of any financing statement or other documents deemed necessary or desirable by the Surety to perfect and enforce its security interest in the Collateral; and

(c)    the registration hereof (or of a notice or other instrument in respect hereof) under any scheme or system of registration for any purpose.

### 19.    ACTIONS TO ENFORCE THIS AGREEMENT

(a)    In the event of any claim or demand being made by the Surety against the Indemnitors, whether or not proceedings have been commenced against one or more of the Indemnitors, the Surety is hereby expressly authorized to:

(i)    bring separate suits on this Agreement as causes of action accrue against any or all of the Indemnitors, and the bringing of a suit or the recovery of judgment upon any cause of action shall not prejudice nor bar the bringing of other suits upon other causes of action, whether theretofore or thereafter arising; and

(ii)    settle or compromise any claim based upon this Agreement with any one or more of the Indemnitors individually without reference to the others, and such settlement or compromise shall not affect the liability of any of the rest of the Indemnitors, and each of the Indemnitors hereby expressly waives the right to be discharged and released by reason of the release of one or more of the other Indemnitors, and consents to any settlement or composition that may hereafter be made.

(b)    Any settlement or agreement concluded with an Indemnitor following a claim against him by the Surety under this Agreement shall not create a new agreement nor extinguish the Indemnitor's obligations under this Agreement, and this Agreement shall remain in full force and effect in case of default on the part of an Indemnitor to fulfil the terms of such settlement or agreement with the Surety.

### 20.    COSTS AND INTEREST

(a)    In the event the Surety commences proceedings to enforce the terms hereof, the Surety shall be entitled to recover (but without duplication) its attorneys' and other professionals' fees and costs (on a full indemnity basis), judicial and extra-judicial costs and the fees and disbursements of its counsel and other professionals in connection with such proceedings.

(b)    Any and all amounts which the Surety is entitled to be paid under this Agreement shall bear interest at a rate of 10% per year, calculated monthly from the date on which any such payment therefor is made (or deemed to have been made) by Surety to the date of payment by Indemnitors to Surety; the Surety's claim for such interest shall not merge in any judgment against any of the Indemnitors, and any such judgment shall bear interest at such rate until payment.

### 21.    WAIVER OF NOTICE AND OTHER RIGHTS

(a)    Each of the Indemnitors hereby waives notice of the execution of any Bond and of any act, fact or information concerning or affecting the rights or liabilities of the Surety or the rights or liabilities of the Indemnitors, including without limitation the release of any other Indemnitor, the adhesion hereto of any additional Indemnitor, and any change in the terms of any Bonding Facility.

(b)    The Indemnitors waive the benefit of division between themselves and of discussion of any principal.



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

**22.   SUBORDINATION OF INDEMNITORS**
None of the Indemnitors shall enforce any rights of contribution or indemnity against any Indemnitor or its property and undertaking until such Indemnitor's obligations to the Surety under this Agreement have been satisfied in full.

**23.   EXCLUSION OF LIABILITY**
None of the Indemnitors shall have any claim against the Surety, for indemnity or otherwise, in respect of any alleged error or omission on the part of the Surety in issuing or failing to issue any Bond.

**24.   DISCHARGE FROM SURETYSHIP**
(a)   The Indemnitors shall, at any time upon the request of the Surety, procure the discharge of the Surety from any Bond and from all liability by reason thereof.

(b)   The Surety may, at any time, take such action as it deems necessary or proper to obtain its release from any and all liability under any Bond.

**25.   TERMINATION**
(a)   An Indemnitor may give thirty (30) days' prior written notice of termination to the Surety by registered mail to the Surety at its head office, specifying the effective date of such termination.  No such notice of termination shall be deemed to have been received by the Surety, and such thirty (30) day period shall not commence, unless and until such notice is actually delivered to the Surety and the Surety has given a written acknowledgement of such delivery. Any such notice shall not operate to modify, bar, limit, affect, impair or discharge the liability of the Indemnitor(s) so terminating or the remaining Indemnitors (if any), upon or by reason of any and all such Bonds executed:
   (i)   before the effective date of termination; or
   (ii)   executed after the effective date of termination:
      (A)   upon the award of a contract on a bid, proposal or tender with respect to which the Surety has executed a bid bond, agreement to bond (or "surety's consent") or similar undertaking prior to such date; or
      (B)   which the Surety has become obligated, prior to such date, to execute.

(b)   Such a notice of termination shall operate only with respect to the Indemnitor(s) giving it.  This Agreement shall remain in full force and effect, with respect to the other Indemnitor(s), without obligation for the Surety to notify such other(s) of the termination by one or more of the Indemnitors.

(c)   It shall be the responsibility of the terminating party to ascertain the correct address for the time being of the head office of the Surety.  Such address is always a matter of public record.  The head office of the Surety is now at 2 Stamford Plaza, Suite 1504, 281 Tresser Boulevard, Stamford, Connecticut 06901

**26.   ADDITIONAL INDEMNITORS**
Any person may, by completing, executing and delivering to the Surety Rider in the form annexed to this Agreement, become bound as an Indemnitor hereunder as if such person had been an original signatory hereto.

**27.   DEMANDS BY SURETY**
Any demand by the Surety on any of the Indemnitors may be hand delivered, telecopied, telexed or sent by registered mail to such party at the address shown above, or to such other address as such party may have notified to the Surety in writing (including any address shown in an Adhesion), and shall be conclusively deemed to have been received:
(a)   if hand delivered, telecopied or telexed:
   (i)   on the date of delivery or transmission, if prior to 4:00 p.m. (local time) on a day (other than a Saturday) on which chartered banks in the municipality named in such address are open for business during normal business hours (a "Business Day"); or
   (ii)   otherwise, on the next following Business Day; or
(b)   if mailed, on the second Business Day after mailing.

**28.   GOVERNING LAW AND JURISDICTION**
Each Indemnitor understands and agrees that the interpretation and enforcement of this Agreement shall be governed, construed, and interpreted in accordance with the laws of the State of New York, without giving effect to any conflicts of laws principles of that State or any other State or jurisdiction.  Each Indemnitor further understands and agrees that the venue for any suit, action or proceeding, or otherwise reuses to exercise jurisdiction over any dispute that may arise, each Indemnitor further understands and agrees that the venue shall be in the federal courts for the State of New York unless any jurisdictional prerequisites are not met, in which case it will lie with the state courts of New York.  Each Indemnitor irrevocably and unconditionally submits to the jurisdiction of said courts and waives any claim or defense in any such suit, action or proceeding based on any alleged lack of personal jurisdiction, improper venue, forum non conveniences, or any similar basis.



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

29.     **SEVERABILITY**
If any provision or provisions hereof are held to be void or unenforceable under the laws governing its construction or enforcement, this Agreement shall not be void or unenforceable thereby but shall continue in effect and be enforced as though such provision or provisions were omitted.

30.     **BINDING EFFECT**
This Agreement is binding jointly and severally upon the Indemnitors, their heirs, executors, personal representatives, successors and assigns. This Agreement shall enure to and benefit any successor to the Surety (including without limitation any person to whom the Surety may in future transfer all or any substantial part of its business assets).  The Indemnitors represent and warrant to the Surety that they have a

substantial, material, and beneficial interest in the obtaining of Bonds by any of the Principals and Indemnitors and in the transaction(s) for which any of the Indemnitors and/or Principals has applied or will apply to the Surety for Bonds pursuant to this Agreement.  The Indemnitors further represent and warrant to the Surety that they have the full power and authority to execute, deliver, and perform this Agreement and to carry out the obligations stated herein.  The Indemnitors further represent and warrant to the Surety that their execution, delivery, and performance of this Agreement does not and will not conflict with, constitute a default under, or result in a breach or violation of any of their respective organizational documents, any law, governmental rule, regulation, order, writ, injunction, judgment, or decree of any court or governmental authority, or any other agreement applicable to or binding upon the Indemnitors.

31.     **RIGHTS AND REMEDIES OF SURETY**
Each of the Indemnitors hereby authorizes and empowers the Surety, if an Event of Default has occurred and is continuing, to:
(a)     in its sole discretion, take possession of the work under any Bonded Contract and to complete such Bonded Contract, or cause the same to be completed, or to consent to the completion thereof, and to take any other action which the Surety may deem appropriate to obtain the discharge of the Surety's obligations as surety including, but not limited to, a monetary settlement with the obligee, and all losses, charges, expenses, and costs incurred by the Surety in so doing shall be included as Indemnity Losses;
(b)     immediately take possession of Indemnitors' tools, plan, equipment, materials, and subcontracts and all other collateral security mentioned in this Agreement and enforce, use, employ, and dispose thereof for the purposes set forth in this Agreement and for the completion of the work under the Bonded Contracts without payment for such use.
(c)     assert or prosecute any right or claim in the name of any Indemnitor and to settle any such right; or claim as Surety sees fit;
(d)     require an obligee to withhold payment of Bonded Contract funds unless and until Surety consents to its release;
(e)     be subrogated to all the rights, remedies, properties, funds, securities, and receivables related to Indemnitors' Bonded Contracts or Unbonded Contracts and have the right to offset Indemnity Losses on any Contract or Bond against proceeds, funds, or property due from another Bonded Contract, bond or contract.  Further, in the Event of Default and upon demand Indemnitors will direct that all payments, money, and properties that are due or may become due on any Contract or contract be made payable to, and/or sent directly to, Surety, and shall issue whatever writing or notices as deemed necessary by Surety to effectuate the default and/or termination of any Bonded Contract;
(f)     execute in the name of any Indemnitor any instruments deemed necessary or desirable by the Surety to provide absolute title to the Surety of any funds, property and rights as are hereby assigned, transferred or conveyed, and the Surety and such person(s) as the Surety may designate for this purpose are hereby authorized to take immediate possession of such funds, property, and rights;
(g)     instruct any obligee(s) under any Bonds, and/or any owners under any Bonded Contracts, to withhold further payment to any Indemnitor or other person who is a party to the relevant Bonded Contract(s);
(h)     collect any cheque, draft, warrant, or other instrument made or issued in payment of any monies due on any Bonded Contract(s); and
(i)     endorse in the name of an Indemnitor as payee and to cash any such instruments and to retain or disburse the proceeds thereof.

The rights, powers and remedies afforded to the Surety by the terms hereof may not be waived or modified orally and no written change or modification shall be effective until signed by an authorized officer of the Surety.  No agent or broker is authorized to sign any such change or modification on behalf of the Surety. All rights and remedies of the Surety under this Agreement shall be cumulative, and the exercise of or failure to exercise any right or remedy at any time shall not be an election of remedy or a waiver of any other right or remedy or of the same right or remedy as at any other time. The Surety is not required to exhaust its remedies or rights against the principal or to await receipt of any dividends from the legal representatives of the principal before asserting its rights under this Agreement against the Indemnitors and may assert such rights against one or more of the Indemnitors without asserting them against all or other Indemnitors. The rights, powers and remedies conferred upon the Surety by this Agreement are in addition to any other rights the Surety may have or acquire against the Indemnitors or others, whether arising by the terms of any other agreement, by operation of law, or otherwise.

32.     **ENTIRE AGREEMENT**
EACH OF THE INDEMNITORS REPRESENTS TO THE SURETY THAT SUCH INDEMNITOR HAS CAREFULLY READ THE ENTIRE AGREEMENT AND THAT THERE ARE NO OTHER AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OR MODIFY THE OBLIGATIONS SET FORTH HEREIN.



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

**33.   WAIVER TO TRIAL BY JURY**

EACH INDEMNITOR HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM, CAUSE OF ACTION, OR PROCEEDING TO WHICH ANY OR ALL OF PRINCIPAL, INDEMNITORS, AND SURETY MAY BE PARTIES, ARISING OUT OF OR PERTAINING, DIRECTLY OR INDIRECTLY, TO ANY OF THE BONDS OR THIS AGREEMENT. EACH INDEMNITOR UNDERSTANDS AND AGREES THAT THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST ALL PARTIES TO ANY SUIT, CAUSE OF ACTION, OR PROCEEDINGS, INCLUDING CLAIMS AGAINST PARTIES WHO ARE NOT PARTIES TO THIS AGREEMENT.  INDEMNITORS ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT FOR SURETY TO ENTER INTO A BUSINESS RELATIONSHIP, THAT HAS AND WILL RELY ON THIS WAIVER WHEN CONSIDERING ANY APPLICATION OF THE ISSUANCE OF BONDS AND WILL CONTINUE TO RELY ON THIS WAIVER IN FUTURE DEALINGS. INDEMNITORS FURTHER WARRANT AND REPRESENT THAT THEY HAVE REVIEWED THIS WAIVER WITH LEGAL COUNSEL AND HAVE KNOWINGLY AND VOLUNTARILY WAIVED THEIR JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL.  THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THE WAIVER WILL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS, OR MODIFICATIONS TO THIS AGREEMENT.  IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

**34.   COUNTERPARTS; ORIGINALS**

This Agreement may be executed in counterparts (including by means of facsimile or .pdf signature pages), any one of which need not contain the signatures of more than one party, but all such counterparts taken together will constitute one and the same agreement. This Agreement and each other agreement or instrument entered into in connection herewith or therewith or contemplated hereby or thereby, and any amendments hereto or thereto, to the extent signed and delivered by means of a facsimile machine or other electronic transmission (including .pdf files), will be treated in all manner and respects and for all purposes as an original agreement or instrument and will be considered to have the same binding legal effect as if it were to the original signed version thereof delivered in person. At the request of any party hereto or to any such agreement or instrument, each other party hereto or thereto will re-executed original forms thereof and deliver them to all other parties, except that the failure of any party to comply with such a request will not render this Agreement invalid or unenforceable.  No party hereto or to any such agreement or instrument will raise the use of a facsimile machine or other electronic transmission to deliver a signature or the fact that any signature or agreement or instrument was transmitted or communicated through the use of a facsimile machine or other electronic transmission as a defense to the formation or enforceability of a contract and each party forever waives any such defense.

IN WITNESS WHEREOF the Indemnitors have executed and delivered these presents as their respective deeds, each who is an individual having hereunto set his or her hand (and having, by so signing, adopted the word ("seal") hereon as his or her personal seal), and each which is a partnership, joint venture, trust, corporation or unincorporated association having caused this Agreement to be duly executed by its duly authorized representative or representatives, as of the date shown on the first page hereof, which date each of the Indemnitors hereby affirms as the effective date of this Agreement, regardless of the date on which such Indemnitor in fact executed this Agreement.



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

SIGNED, SEALED AND DELIVERED:
Corporations and/or Partnership Sign Hereunder

| Witness | Name of Corporation |
|---|---|
| _(Signature)_ | **Bighorn Construction and Reclamation, LLC** |
| Trent Cornelius | Cord Johnson |
| Print name | Name of Authorized Officer |
| 127 Trace Dr, Weatherford, TX 76087 | |
| Address of Witness | Signature of Authorized Officer |
| | I HAVE THE AUTHORITY TO BIND THE CORPORATION |
| 432 | |
| (~~926~~) 556-0301 | Address of Corporation: |
| Phone number | 777 Main St., Suite 2800 Fort Worth, TX 76102 |
| | Phone Number: |
| | 682-816-5006 |

**CORPORATE ACKNOWLEDGMENT**

State of  Texas                                    ss.:
County of  Tarrant

On this 4th day of February , in the year 2022, before me personally comes  Cord Johnson
to me known, who being by me duly sworn, deposes and says that he resides in the City of  Weatherford
that he is the  CEO  of the  Bighorn Construction and Reclamation the corporation described in and which executed
the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was
so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

Michelle L. Grass
(Signature of Notary Public)
My Commission expires 8-5-2024

MICHELLE L GRASS
Notary ID #1973047
My Commission Expires
August 5, 2024

 **TRISURA**®

2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

| Witness | Name of Corporation |
| --- | --- |
| _(Signature)_ | **Bighorn Investments and Properties, LLC** |
| Trent Cornelius | Name of Authorized Officer |
| Print name | _Cord Johnson_ |
| 127 Truce Dr, Weatherford, TX 76087 | Signature of Authorized Officer |
| Address of Witness | I HAVE THE AUTHORITY TO BIND THE CORPORATION |
| (432) 556-0301 | Address of Corporation: |
| Phone number | 777 Main St., Suite 2800 Fort Worth, TX 76102 |
|  | Phone Number: 682-816-5006 |

**CORPORATE ACKNOWLEDGMENT**

State of Texas                           ss.:
County of Tarrant

On this 4th day of February, in the year 2022, before me personally comes Cord Johnson to me known, who being by me duly sworn, deposes and says that he resides in the City of Weatherford that he is the CEO of the Bighorn Investments & Prop the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

_Michelle L. Grass_
(Signature of Notary Public)
My Commission expires 8-5-2024

MICHELLE L GRASS
Notary ID #1973047
My Commission Expires
August 5, 2024



TRISURA®

2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

| Witness | Name of Corporation |
|---|---|
| _(Signature)_ | **Bighorn Sand & Gravel LLC** |
| | Cord Johnson |
| | Name of Authorized Officer |
| Trent Cornelius | |
| Print name | |
| | Signature of Authorized Officer |
| 127 Trace Dr., Weatherford, TX 76087 | I HAVE THE AUTHORITY TO BIND THE CORPORATION |
| Address of Witness | |
| | Address of Corporation: |
| (432) 556-0301 | 777 Main St., Suite 2800 Fort Worth, TX 76102 |
| Phone number | |
| | Phone Number: 682-816-5006 |

**CORPORATE ACKNOWLEDGMENT**

State of Texas                    ss.:
County of Tarrant

On this 4th day of February, in the year 2022, before me personally comes Cord Johnson

to me known, who being by me duly sworn, deposes and says that he resides in the City of Weatherford

that he is the President of the Bighorn Sand & Gravel the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

Michelle L. Grass
(Signature of Notary Public)
My Commission expires 8-5-2024

MICHELLE L GRASS
Notary ID #1973047
My Commission Expires
August 5, 2024



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

**Witness**

_____ *(Signature)*

Trent Corneliue
Print name

127 Trace Dr, Weatherford, TX 76087
Address of Witness

(432) 556-0301
Phone number

Name of Corporation

**Bridgelink Commodities LLC**

Cord Johnson
Name of Authorized Officer

_____
Signature of Authorized Officer
I HAVE THE AUTHORITY TO BIND THE CORPORATION

Address of Corporation:

777 Main St., Suite 3000 Fort Worth, TX 76102

Phone Number: _____

---

**CORPORATE ACKNOWLEDGMENT**

State of Texas                         ss.:
County of Tarrant

On this 4th day of February, in the year 2022, before me personally comes Cord Johnson
to me known, who being by me duly sworn, deposes and says that he resides in the City of _____
that he is the Vice President of the Bridgelink Commodities the corporation described in and which executed
the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was
so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

Michelle L. Grass
(Signature of Notary Public)
My Commission expires 8-5-2024

MICHELLE L GRASS
Notary ID #1973047
My Commission Expires
August 5, 2024



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

| Witness | Name of Corporation |
|---|---|
| *(Signature)* | **Bridgelink Engineering LLC** |
| Trent Cornelius | *Cord Johnson* |
| Print name | Name of Authorized Officer |
| 127 Trace Dr., Weatherford, TX 76087 | Signature of Authorized Officer |
| Address of Witness | I HAVE THE AUTHORITY TO BIND THE CORPORATION |
| (432) 556-0301 | Address of Corporation: |
| Phone number | 777 Main St., Suite 2800 Fort Worth, TX 76102 |
| | Phone Number: |

**CORPORATE ACKNOWLEDGMENT**

State of Texas                                  ss.:
County of Tarrant

On this 4th day of February , in the year 2022, before me personally comes Cord Johnson to me known, who being by me duly sworn, deposes and says that he resides in the City of Weatherford that he is the President of the Bridgelink Engineering the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

Michelle L. Grass
(Signature of Notary Public)
My Commission expires 8-5-2024

MICHELLE L GRASS
Notary ID #1973047
My Commission Expires
August 5, 2024



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

| Witness | Name of Corporation |
|---|---|
| _(Signature)_ | **Bridgelink Investments, LLC** |
| Trent Cornelius | Cord Johnson |
| Print name | Name of Authorized Officer |
| 127 Trenc Dr, Weatherford, TX 76087 | |
| Address of Witness | Signature of Authorized Officer |
| | I HAVE THE AUTHORITY TO BIND THE CORPORATION |
| (432) 556-0301 | Address of Corporation: |
| Phone number | 777 Main St., Suite 3000 Fort Worth, TX 76102 |
| | Phone Number: |

**CORPORATE ACKNOWLEDGMENT**

State of Texas

County of Tarrant                    ss.:

On this 4th day of February, in the year 2022, before me personally comes Cord Johnson
to me known, who being by me duly sworn, deposes and says that he resides in the City of Weatherford
that he is the Vice President of the Bridgelink Investments the corporation described in and which executed
the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was
so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

Michelle L. Grass
(Signature of Notary Public)
My Commission expires 8-5-2024

MICHELLE L GRASS
Notary ID #1973047
My Commission Expires
August 5, 2024



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

| Witness | Name of Corporation |
|---|---|
| _(Signature)_ | **Bridgelink Renewable Energy Development LLC** |
| Trent Cornelius | Cord Johnson |
| Print name | Name of Authorized Officer |
| 127 Traver Dr, Weatherford, TX 76087 | Signature of Authorized Officer |
| Address of Witness | I HAVE THE AUTHORITY TO BIND THE CORPORATION |
| ( 432 ) 556-0301 | Address of Corporation: |
| Phone number | 777 Main St., Suite 3000 Fort Worth, TX 76102 |
| | Phone Number: |

---

**CORPORATE ACKNOWLEDGMENT**

State of Texas          ss.:
County of Tarrant

On this 4th day of February, in the year 2022, before me personally comes Cord Johnson to me known, who being by me duly sworn, deposes and says that he resides in the City of Weatherford that he is the Vice President of the Bridgelink Renewable Energy Dev. the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

Michelle L. Grass
(Signature of Notary Public)
My Commission expires 8-5-2024

MICHELLE L GRASS
Notary ID #1973047
My Commission Expires
August 5, 2024



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

| Witness | Name of Corporation |
|---|---|
| *(Signature)* | **Bridgelink Renewable Energy Investments LLC** |
| Trent Cornelius | Cord Johnson |
| Print name    Weatherford, TX | Name of Authorized Officer |
| 127 Trace Dr, 76087 | |
| Address of Witness | Signature of Authorized Officer |
| | I HAVE THE AUTHORITY TO BIND THE CORPORATION |
| (832) 556-0301 | Address of Corporation: |
| Phone number | 777 Main St., Suite 3000 Fort Worth, TX 76102 |
| | Phone Number: |

**CORPORATE ACKNOWLEDGMENT**

State of Texas

County of Tarrant               ss.:

On this 4th day of February, in the year 2022, before me personally comes Cord Johnson to me known, who being by me duly sworn, deposes and says that he resides in the City of Weatherford that he is the Vice President of the Bridgelink Renewable Energy Investments the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

Michelle L. Grass
(Signature of Notary Public)
My Commission expires 8-5-2024

MICHELLE L GRASS
Notary ID #1973047
My Commission Expires
August 5, 2024



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

| Witness | Name of Corporation |
|---|---|
| *(Signature)* | **Intermountain Electric Service, Inc.** |
| _Trent Cornelius_ Print name | _Cord Johnson_ Name of Authorized Officer |
| _127 Trace Dr, Weatherford, TX 76087_ Address of Witness | Signature of Authorized Officer I HAVE THE AUTHORITY TO BIND THE CORPORATION |
| _(492) 556-0201_ Phone number | Address of Corporation: P.O. Box 2169 Rock Springs, WY 82902 Phone Number: |

**CORPORATE ACKNOWLEDGMENT**

State of _Texas_                    ss.:
County of _Tarrant_

On this _4th_ day of _February_____, in the year 20_22_, before me personally comes _____
_Cord Johnson_
to me known, who being by me duly sworn, deposes and says that he resides in the City of _Weatherford_
that he is the _Manager_____ of the _Intermountain Electric Service_ corporation described in and which executed
the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was
so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

_Michelle L. Grass_
(Signature of Notary Public)
My Commission expires _8-5-2024_

NOTARY PUBLIC
STATE OF TEXAS
MICHELLE L GRASS
Notary ID #1973047
My Commission Expires
August 5, 2024



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

Personal Indemnitors Sign Hereunder

| Witness | Name of Indemnitor |
|---|---|
| *(Signature)* | **Cole Wayne Johnson** |
| Trent Cornelius | *(Signature)* |
| Print name | Address of Indemnitor: |
| 127 Trace Dr, Weatherford, TX 76087 | 4204 S. County Rd. 1128, Midland, TX 79706 |
| Address of Witness | |
| 432-536-0301 | Phone Number: |
| Phone number | Date of Birth : ▮ |

---

### NOTARY ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of Texas

County of Tarrant

On 2/4/2022 before me Michelle Grass, personally appeared **Cole Wayne Johnson** who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person(s), or the entity(ies) upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Texas that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature Michelle L. Grass

Notary Public residing at: 4200 Buckeye St. Fort Worth TX

My commission expires: 8-5-2024

MICHELLE L GRASS
Notary ID #1973047
My Commission Expires
August 5, 2024



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

| Witness | Name of Indemnitor |
|---|---|
| *(Signature)* | **Cord Henry Johnson** |
| Trent Cornelius | *(Signature)* |
| Print name | |
| 127 Trace Dr., Weatherford, TX 76087 | Address of Indemnitor: |
| Address of Witness | 1677 Center Point Rd., Weatherford, TX 76087 |
| 432-556-6301 | |
| Phone number | Phone Number: ▮▮▮▮▮ |
| | Date of Birth : ▮▮▮▮ |

### NOTARY ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of Texas

County of Tarrant

On 2/4/22 before me, Michelle Grass , personally appeared **Cord Henry Johnson** who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person(s), or the entity(ies) upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Texas that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature Michelle L. Grass

Notary Public residing at: 4200 Buckeye St., Fort Worth, TX

My commission expires: 8-5-2024

MICHELLE L GRASS
Notary ID #1973047
My Commission Expires
August 5, 2024



2 Stamford Plaza, Suite 1504
281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

Witness

_(Signature)_

Trent Cornelius
Print name

127 Trace Dr, Weatherford, TX 76087
Address of Witness
432-556-0301
Phone number

Name of Indemnitor

**Cassie Hamilton**

_(Signature)_

Address of Indemnitor:
1677 Center Point Rd., Weatherford, TX 76087

Phone Number: ███████████████

Date of Birth : ██████████

---

### NOTARY ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of Texas

County of Tarrant

On 2/4/2022 before me, Michelle Grass, personally appeared **Cassie Hamilton** who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person(s), or the entity(ies) upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Texas that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature Michelle L. Grass

Notary Public residing at: 4200 Buckeye St Fort Worth TX
My commission expires: 8-5-2024

MICHELLE L GRASS
Notary ID #1973047
My Commission Expires
August 5, 2024

# Exhibit B-1

Bond No.   TIC01702

# Document A312™ – 2010
**Conforms with The American Institute of Architects AIA Document 312**

## *Performance Bond*

**CONTRACTOR:**
*(Name, legal status and address)*

Bridgelink Engineering, LLC

777 Main Street, Suite 2800

Fort Worth, TX  76102

**SURETY:**
*(Name, legal status and principal place of business)*

Trisura Insurance Company

2 Stamford Plaza Suite 1504, 281 Tresser Boulevard
Stamford, CT  06901
**Mailing Address for Notices**

1411 Opus Place, Suite 450

Downers Grove, IL  60515

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

**OWNER:**
*(Name, legal status and address)*

Jicarilla Solar 1, LLC

c/o Hecate Energy, LLC, 621 W. Randolph Street

Chicago, IL  60661

**CONSTRUCTION CONTRACT**
Date:  February 4, 2022

Amount: $ 24,465,404.00          Twenty Four Million Four Hundred Sixty Five Thousand Four Hundred Four Dollars and 00/100

Description:
*(Name and location)*

Solar Power Facility Engineering, Procurement and Construction

**BOND**
Date:  February 10, 2022

*(Not earlier than Construction Contract Date)*

Amount: $ 24,465,404.00          Twenty Four Million Four Hundred Sixty Five Thousand Four Hundred Four Dollars and 00/100

Modifications to this Bond:     ☒ None          ☐ See Section 16

**CONTRACTOR AS PRINCIPAL**
Company:                              *(Corporate Seal)*

Bridgelink Engineering, LLC

Signature: _____

Name
and Title:

**SURETY**
Company:                              *(Corporate Seal)*

Trisura Insurance Company

Signature: _____

Name         Martin Moss
and Title:  Attorney-in-Fact

*(Any additional signatures appear on the last page of this Performance Bond.)*

*(FOR INFORMATION ONLY — Name, address and telephone)*

**AGENT or BROKER:**
HUB International Midwest Limited

1411 Opus Place, Ste. 450

Downers Grove, IL  60515

630-468-5600

**OWNER'S REPRESENTATIVE:**
*(Architect, Engineer or other party:)*

S-1852/AS 8/10

**§ 1** The Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

**§ 2** If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except when applicable to participate in a conference as provided in Section 3.

**§ 3** If there is no Owner Default under the Construction Contract, the Surety's obligation under this Bond shall arise after

.1  the Owner first provides notice to the Contractor and the Surety that the Owner is considering declaring a Contractor Default. Such notice shall indicate whether the Owner is requesting a conference among the Owner, Contractor and Surety to discuss the Contractor's performance. If the Owner does not request a conference, the Surety may, within five (5) business days after receipt of the Owner's notice, request such a conference. If the Surety timely requests a conference, the Owner shall attend. Unless the Owner agrees otherwise, any conference requested under this Section 3.1 shall be held within ten (10) business days of the Surety's receipt of the Owner's notice. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default;

.2  the Owner declares a Contractor Default, terminates the Construction Contract and notifies the Surety; and

.3  the Owner has agreed to pay the Balance of the Contract Price in accordance with the terms of the Construction Contract to the Surety or to a contractor selected to perform the Construction Contract.

**§ 4** Failure on the part of the Owner to comply with the notice requirement in Section 3.1 shall not constitute a failure to comply with a condition precedent to the Surety's obligations, or release the Surety from its obligations, except to the extent the Surety demonstrates actual prejudice.

**§ 5** When the Owner has satisfied the conditions of Section 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

**§ 5.1** Arrange for the Contractor, with the consent of the Owner, to perform and complete the Construction Contract;

**§ 5.2** Undertake to perform and complete the Construction Contract itself, through its agents or independent contractors;

**§ 5.3** Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and a contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Section 7 in excess of the Balance of the Contract Price incurred by the Owner as a result of the Contractor Default; or

**§ 5.4** Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

.1  After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, make payment to the Owner; or

.2  Deny liability in whole or in part and notify the Owner, citing the reasons for denial.

**§ 6** If the Surety does not proceed as provided in Section 5 with reasonable promptness, the Surety shall be deemed to be in default on this Bond seven days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Section 5.4, and the Owner refuses the payment or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

§ 7 If the Surety elects to act under Section 5.1, 5.2 or 5.3, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. Subject to the commitment by the Owner to pay the Balance of the Contract Price, the Surety is obligated, without duplication, for

> .1 the responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;
> .2 additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Section 5; and
> .3 liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

§ 8 If the Surety elects to act under Section 5.1, 5.3 or 5.4, the Surety's liability is limited to the amount of this Bond.

§ 9 The Surety shall not be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators, successors and assigns.

§ 10 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

§ 11 Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after a declaration of Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

§ 12 Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the page on which their signature appears.

§ 13 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. When so furnished, the intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

## § 14 Definitions

§ 14.1 Balance of the Contract Price. The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made, including allowance to the Contractor of any amounts received or to be received by the Owner in settlement of insurance or other claims for damages to which the Contractor is entitled, reduced by all valid and proper payments made to or on behalf of the Contractor under the Construction Contract.

§ 14.2 Construction Contract. The agreement between the Owner and Contractor identified on the cover page, including all Contract Documents and changes made to the agreement and the Contract Documents.

§ 14.3 Contractor Default. Failure of the Contractor, which has not been remedied or waived, to perform or otherwise to comply with a material term of the Construction Contract.

§ 14.4 Owner Default. Failure of the Owner, which has not been remedied or waived, to pay the Contractor as required under the Construction Contract or to perform and complete or comply with the other material terms of the Construction Contract.

§ 14.5 Contract Documents. All the documents that comprise the agreement between the Owner and Contractor.

§ 15 If this Bond is issued for an agreement between a Contractor and subcontractor, the term Contractor in this Bond shall be deemed to be Subcontractor and the term Owner shall be deemed to be Contractor.

**§ 16** Modifications to this bond are as follows:

*(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)*

| **CONTRACTOR AS PRINCIPAL** | | **SURETY** | |
|---|---|---|---|
| Company: | *(Corporate Seal)* | Company: | *(Corporate Seal)* |
| | | | |
| Signature: _____ | | Signature: _____ | |
| Name and Title: | | Name and Title: | |
| Address | | Address | |

S-1852/AS 8/10

Bond No.   TIC01702

# Document A312™ – 2010

### Conforms with The American Institute of Architects AIA Document 312

## *Payment Bond*

**CONTRACTOR:**
*(Name, legal status and address)*

Bridgelink Engineering, LLC

777 Main Street, Suite 2800

Fort Worth, TX  76102

**SURETY:**
*(Name, legal status and principal place of business)*

Trisura Insurance Company

2 Stamford Plaza Suite 1504, 281 Tresser Boulevard
Stamford, CT  06901
**Mailing Address for Notices**

1411 Opus Place, Suite 450

Downers Grove, IL  60515

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

**OWNER:**
*(Name, legal status and address)*

Jicarilla Solar 1, LLC

c/o Hecate Energy, LLC, 621 W. Randolph Street

Chicago, IL  60661

**CONSTRUCTION CONTRACT**
Date:   February 4, 2022

Amount: $ 24,465,404.00   Twenty Four Million Four Hundred Sixty Five Thousand Four Hundred Four Dollars and 00/100

Description:
*(Name and location)*
Solar Power Facility Engineering, Procurement and Construction

**BOND**
Date:   February 10, 2022
*(Not earlier than Construction Contract Date)*

Amount: $ 24,465,404.00   Twenty Four Million Four Hundred Sixty Five Thousand Four Hundred Four Dollars and 00/100

Modifications to this Bond:   [X] None      [ ] See Section 18

| **CONTRACTOR AS PRINCIPAL** | | **SURETY** | |
|---|---|---|---|
| Company: | *(Corporate Seal)* | Company: | *(Corporate Seal)* |
| Bridgelink Engineering, LLC | | Trisura Insurance Company | |
| Signature: _____ | | Signature: _____ | |
| Name and Title: | | Name and Title: Martin Moss  Attorney-in-Fact | |

*(Any additional signatures appear on the last page of this Payment Bond.)*

*(FOR INFORMATION ONLY — Name, address and telephone)*

**AGENT or BROKER:**
HUB International Midwest Limited
1411 Opus Place, Ste. 450
Downers Grove, IL  60515
630-468-5600

**OWNER'S REPRESENTATIVE:**
*(Architect, Engineer or other party:)*

S-2149/AS 8/10

**§ 1** The Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference, subject to the following terms.

**§ 2** If the Contractor promptly makes payment of all sums due to Claimants, and defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, then the Surety and the Contractor shall have no obligation under this Bond.

**§ 3** If there is no Owner Default under the Construction Contract, the Surety's obligation to the Owner under this Bond shall arise after the Owner has promptly notified the Contractor and the Surety (at the address described in Section 13) of claims, demands, liens or suits against the Owner or the Owner's property by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety.

**§ 4** When the Owner has satisfied the conditions in Section 3, the Surety shall promptly and at the Surety's expense defend, indemnify and hold harmless the Owner against a duly tendered claim, demand, lien or suit.

**§ 5** The Surety's obligations to a Claimant under this Bond shall arise after the following:

**§ 5.1** Claimants, who do not have a direct contract with the Contractor,
- **.1** have furnished a written notice of non-payment to the Contractor, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were, or equipment was, furnished or supplied or for whom the labor was done or performed, within ninety (90) days after having last performed labor or last furnished materials or equipment included in the Claim; and
- **.2** have sent a Claim to the Surety (at the address described in Section 13).

**§ 5.2** Claimants, who are employed by or have a direct contract with the Contractor, have sent a Claim to the Surety (at the address described in Section 13).

**§ 6** If a notice of non-payment required by Section 5.1.1 is given by the Owner to the Contractor, that is sufficient to satisfy a Claimant's obligation to furnish a written notice of non-payment under Section 5.1.1.

**§ 7** When a Claimant has satisfied the conditions of Sections 5.1 or 5.2, whichever is applicable, the Surety shall promptly and at the Surety's expense take the following actions:

**§ 7.1** Send an answer to the Claimant, with a copy to the Owner, within sixty (60) days after receipt of the Claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed; and

**§ 7.2** Pay or arrange for payment of any undisputed amounts.

**§ 7.3** The Surety's failure to discharge its obligations under Section 7.1 or Section 7.2 shall not be deemed to constitute a waiver of defenses the Surety or Contractor may have or acquire as to a Claim, except as to undisputed amounts for which the Surety and Claimant have reached agreement. If, however, the Surety fails to discharge its obligations under Section 7.1 or Section 7.2, the Surety shall indemnify the Claimant for the reasonable attorney's fees the Claimant incurs thereafter to recover any sums found to be due and owing to the Claimant.

**§ 8** The Surety's total obligation shall not exceed the amount of this Bond, plus the amount of reasonable attorney's fees provided under Section 7.3, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

**§ 9** Amounts owed by the Owner to the Contractor under the Construction Contract shall be used for the performance of the Construction Contract and to satisfy claims, if any, under any construction performance bond. By the Contractor furnishing and the Owner accepting this Bond, they agree that all funds earned by the Contractor in the performance of the Construction Contract are dedicated to satisfy obligations of the Contractor and Surety under this Bond, subject to the Owner's priority to use the funds for the completion of the work.

§ **10** The Surety shall not be liable to the Owner, Claimants or others for obligations of the Contractor that are unrelated to the Construction Contract. The Owner shall not be liable for the payment of any costs or expenses of any Claimant under this Bond, and shall have under this Bond no obligation to make payments to, or give notice on behalf of, Claimants or otherwise have any obligations to Claimants under this Bond.

§ **11** The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

§ **12** No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the state in which the project that is the subject of the Construction Contract is located or after the expiration of one year from the date (1) on which the Claimant sent a Claim to the Surety pursuant to Section 5.1.2 or 5.2, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

§ **13** Notice and Claims to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the page on which their signature appears. Actual receipt of notice or Claims, however accomplished, shall be sufficient compliance as of the date received.

§ **14** When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. When so furnished, the intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

§ **15** Upon request by any person or entity appearing to be a potential beneficiary of this Bond, the Contractor and Owner shall promptly furnish a copy of this Bond or shall permit a copy to be made.

§ **16 Definitions**
§ **16.1 Claim.** A written statement by the Claimant including at a minimum:
    .1   the name of the Claimant;
    .2   the name of the person for whom the labor was done, or materials or equipment furnished;
    .3   a copy of the agreement or purchase order pursuant to which labor, materials or equipment was furnished for use in the performance of the Construction Contract;
    .4   a brief description of the labor, materials or equipment furnished;
    .5   the date on which the Claimant last performed labor or last furnished materials or equipment for use in the performance of the Construction Contract;
    .6   the total amount earned by the Claimant for labor, materials or equipment furnished as of the date of the Claim;
    .7   the total amount of previous payments received by the Claimant; and
    .8   the total amount due and unpaid to the Claimant for labor, materials or equipment furnished as of the date of the Claim.

§ **16.2 Claimant.** An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Construction Contract. The term Claimant also includes any individual or entity that has rightfully asserted a claim under an applicable mechanic's lien or similar statute against the real property upon which the Project is located. The intent of this Bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract, architectural and engineering services required for performance of the work of the Contractor and the Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

§ **16.3 Construction Contract.** The agreement between the Owner and Contractor identified on the cover page, including all Contract Documents and all changes made to the agreement and the Contract Documents.

**§ 16.4 Owner Default.** Failure of the Owner, which has not been remedied or waived, to pay the Contractor as required under the Construction Contract or to perform and complete or comply with the other material terms of the Construction Contract.

**§ 16.5 Contract Documents.** All the documents that comprise the agreement between the Owner and Contractor.

**§ 17** If this Bond is issued for an agreement between a Contractor and subcontractor, the term Contractor in this Bond shall be deemed to be Subcontractor and the term Owner shall be deemed to be Contractor.

**§ 18** Modifications to this bond are as follows:

*(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)*

| **CONTRACTOR AS PRINCIPAL** | | **SURETY** | |
| --- | --- | --- | --- |
| Company: | *(Corporate Seal)* | Company: | *(Corporate Seal)* |
| | | | |
| Signature: _____ | | Signature: _____ | |
| Name and Title: | | Name and Title: | |
| Address | | Address | |

S-2149/AS 8/10

# Exhibit B-2



2 Stamford Plaza
Suite 1504, 281 Tresser Boulevard
Stamford, Connecticut  06901
us.surety@trisura.com

**RIDER NO. 1**

To be attached to and form part of Bond No.: **TIC01702**

Issued on behalf of as Principal:          **Bridgelink Engineering, LLC**

Issued in favour of as Obligee:          **Jicarilla Solar 1, LLC**

Bond issuance date:          **February 10th, 2022**

**IT IS HEREBY UNDERSTOOD AND AGREED THAT:**

The **OWNER NAME AND ADDRESS** on the Performance and Payment bond is hereby amended :

From:   **Jicarella Solar 1, LLCc/o Hecale Energy, LLC**
        621 W. Randolph Street
        Chicago, IL 60661

To:     **Repsol Renewables Development Company, LLC**
        2455 Technology Forest Blvd.
        The Woodlands, TX, 77381

All other terms and conditions of the said bond remain unchanged.

Signed, sealed and dated the   **22nd** day of **June,  2022**

                              **BRIDGELINK ENGINEERING, LLC**

                              _____

                              Principal

                              **TRISURA INSURANCE COMPANY**

                              Kyle Bambule, Attorney-in-Fact

 **TRISURA**

2 Stamford Plaza
Suite 1504, 281 Tresser Boulevard
Stamford, Connecticut 06901
us.surety@trisura.com

## POWER OF ATTORNEY

Bond # TIC01702

**KNOW ALL MEN BY THESE PRESENTS**: That **TRISURA INSURANCE COMPANY**, a corporation organized and existing under the laws of the State of Oklahoma, authorized to conduct a surety business, and having its principal place of business at 2 Stamford Plaza, Suite 1504, Tresser Boulevard, Stamford, Connecticut 06901, does hereby constitute and appoint:

**Kyle Bambule, Jenna Leuck**

their true and lawful attorney(s)-in-fact to execute, seal and deliver for and on its behalf as surety, any and all bonds and undertakings, contracts of indemnity and other writings obligatory in the nature thereof, which are or may be allowed, required or permitted by law, statute, rule, regulation, contract or otherwise, and the execution of such instrument(s) in pursuance of these presents, shall be as binding upon the said **TRISURA INSURANCE COMPANY**, as fully and amply, to all intents and purposes, as if the same had been duly executed and acknowledged by their regularly elected officers at their principal offices.

This Power of Attorney is executed, and may be revoked, pursuant to and by authority of the By-Laws of **TRISURA INSURANCE COMPANY** and is granted under and by authority of the following resolution adopted by the Board of Directors of **TRISURA INSURANCE COMPANY** at a meeting duly held on the **11th** day of **December, 2020**.

"**RESOLVED**, that (1) the Chief Executive Officer, President, Executive Vice President, Senior Vice President, Vice President, or Secretary of the Corporation shall have the power to appoint, and to revoke the appointments of, Attorneys-in-Fact or agents with power and authority as defined or limited in their respective powers of attorney, and to execute on behalf of the Corporation and affix the Corporation's seal thereto, bonds, undertakings, recognizances, contracts of indemnity and other written obligations in the nature thereof or related thereto; and (2) any such Officers of the Corporation may appoint and revoke the appointments of joint-control custodians, agents for acceptance of process, and Attorneys-in-fact with authority to execute waivers and consents on behalf of the Corporation; and (3) the signature of any such Officer of the Corporation and the Corporation's seal may be affixed by facsimile to any power of attorney or certification given for the execution of any bond, undertaking, recognizance, contract of indemnity or other written obligation in the nature thereof or related thereto, such signature and seals when so used whether heretofore or hereafter, being hereby adopted by the Corporation as the original signature of such officer and the original seal of the Corporation, to be valid and binding upon the Corporation with the same force and effect as though manually affixed."

IN WITNESS WHEREOF, **TRISURA INSURANCE COMPANY** have each executed and attested these presents on this **28th** day of **July, 2021**.

STATE OF Connecticut
County of Fairfield

George James, Chief Underwriting Officer, Surety

*Trisura Insurance Company CORPORATE SEAL*

On this **28th** day of **July, 2021**, before me came the individual who executed the preceding instrument, to me personally known, and, being by me duly sworn, said he is the therein described and authorized officer of **TRISURA INSURANCE COMPANY**; that the seals affixed to said instrument are the Corporate Seals of said Companies; that the said Corporate Seals and his signature were duly affixed by order of the Boards of Directors of said Companies.

IN TESTIMONY WHEREOF, I have hereunto set my hand affixed my Official Seal, at Fairfield, Connecticut the day and year first above written.

_____ seal

Kathryn Josephsen, a Notary Public of Connecticut
My Commission Expires:

**KATHRYN M. JOSEPHSEN**
**NOTARY PUBLIC OF CONNECTICUT**
**My Commission Expires 2/28/2024**

TO CONFIRM AUTHENTICITY OF THIS BOND OR DOCUMENT EMAIL: us.surety@trisura.com

# Exhibit C



Trisura Guarantee Insurance Company
Bay Adelaide Centre
333 Bay Street, Suite 1610, Box 22
Toronto, Ontario, M5H 2R2
Phone: (416) 214-2555
Fax: (416) 214-9597

January 13, 2023

**VIA CERTIFIED MAIL -
RETURN RECEPT REQUESTED
AND FIRST CLASS MAIL**

Bighorn Construction and Reclamation,
 LLC
Attn:  Cord Johnson
777 Main St., Ste. 2800
Fort Worth, TX  76102

Bridgelink Renewable Energy Development
 LLC
Attn:  Cord Johnson
777 Main St., Ste. 3000
Fort Worth, TX  76102

Bighorn Investments and Properties, LLC
Attn:  Cord Johnson
777 Main St., Ste. 2800
Fort Worth, TX  76102

Bridgelink Renewable Energy Investments
 LLC
Attn:  Cord Johnson
777 Main St., Ste. 3000
Fort Worth, TX  76102

Bighorn Sand & Gravel LLC
Attn:  Cord Johnson
777 Main St., Ste. 2800
Fort Worth, TX  76102

Intermountain Electric Service, Inc.
Attn:  Cord Johnson
PO Box 2169
Rock Springs, WY  82902

Bridgelink Commodities LLC
Attn:  Cord Johnson
777 Main St., Ste. 3000
Fort Worth, TX  76102

Cole Wayne Johnson
4204 S. County Rd. 1128
Midland, TX  79706

Bridgelink Engineering LLC
Attn:  Cord Johnson
777 Main St., Ste. 2800
Fort Worth, TX  76102

Cord Henry Johnson
1677 Center Point Road
Weatherford, TX  76087

Bridgelink Investments, LLC
Attn:  Cord Johnson
777 Main St., Ste. 3000
Fort Worth, TX  76102

Cassie Hamilton
1677 Center Point Road
Weatherford, TX  76087

RE:      Surety:         Trisura Insurance Company
         Principal:      Bridgelink Engineering, LLC

4868-7051-4494

January 13, 2023
Page 2

Dear Ms. Hamilton and Messrs. Johnson:

As you know, each of you executed an Indemnity Agreement dated February 3, 2022, (a copy of which is enclosed), in favor of Trisura Insurance Company and Trisura Guarantee Insurance Company.

The Indemnity Agreement provides, in pertinent part, in Section 2 that:

Each of the Indemnitors shall indemnify and keep indemnified the Surety, against any and all losses, charges, expenses, costs, claims, demands and liabilities (hereinafter called "Indemnity Losses") of whatsoever kind or nature (including, but not limited to, the fees and disbursements of adjusters, consultants and counsel and the establishment or increase of a reserve to cover any possible Indemnity Loss) which the Surety may sustain or incur:

(a)     by reason of having executed or procured the execution of any Bond(s) (or an allegation that the Surety should have done so), including, but not limited, Indemnity Loss incurred in making any investigation in connection with any Bond, prosecuting or defending any action in connection with any Bond, obtaining the release of any Bond; or

(b)     by reason of the failure of the Indemnitors to perform or comply with this Agreement or any Bonding Facility; or

(c)     in enforcing any of the covenants and conditions hereof.

In reliance upon the Indemnity Agreement, Surety made, executed, and delivered a certain performance and payment bond No. TIC01702 whereon Trisura Insurance Company is named as Surety, Bridgelink Engineering, LLC is named as Principal, and Repsol Renewables Development Company, LLC is named as Obligee.  By letter dated October 14, 2022, Obligee provided Bridgelink and Trisura with its Notice of Termination for Contractor Default.  A copy of this letter is enclosed for your reference.

Pursuant to the terms of the above quoted section of the Indemnity Agreement, together with other applicable terms of the Indemnity Agreement, Trisura will look to you to indemnify and hold it harmless from any loss and expense which it may incur or sustain by reason of the above-described bonds.

Furthermore, Section 9 of the Indemnity Agreement further provides, in pertinent part, that:

Upon an Event of Default or determination by Surety that a potential for Indemnity Loss exists, Surety may demand that Indemnitors deposit a sum of money equal to an amount determined by Surety, or collateral security of a type and value satisfactory to Surety, to cover any Indemnity Loss or anticipated Indemnity Loss, whether Surety has established or increased any reserve, made any Indemnity Loss payment; or received any notice of any claims therefor. Without limiting the generality of the foregoing.  If for any reason the Surety deems it necessary to establish or to increase a reserve (the amount of which shall

January 13, 2023
Page 3

be in the sole discretion of the Surety, as from time to time revised) to cover any possible Indemnity Loss (including, for greater certainty, the costs of investigating and defending any claim or demand and interest on the amount thereof at the rate or rates claimed on or applicable to such claim or demand, to the probable date of its resolution), the Indemnitors shall deposit with the Surety immediately upon demand (and make such further deposits as may be required of) cash or collateral satisfactory to the Surety in an amount equal to such reserve or such increase.  The Indemnitors acknowledge that the failure of the Indemnitors to deposit with the Surety, immediately upon demand, the sum demanded by the Surety shall cause irreparable harm to the Surety for which the Surety has no adequate remedy at law, and that the Surety shall be entitled to injunctive relief (including a specific performance of the obligation to make such deposit with the Surety), and hereby waive any claims or defenses to the contrary.

Pursuant to Section 9, Surety hereby makes demand upon you for deposit of cash collateral in the amount of $10,470,000, which is the amount that we plan to offer to the obligee to settle its Performance Bond claim and is our current anticipated Indemnity Loss (exclusive of professional fees and expenses).  Said amount should be sent no later than the close of business on Friday, January 20, 2023, in the form of a cashier's check to the undersigned at the address above stated.

The foregoing, together with our continuing investigation of this matter, is without prejudice to any rights, remedies, or defenses or Trisura, all of which are hereby expressly reserved.  Without limiting the generality of the foregoing, Surety reserves its right demand upon Indemnitors to place it in additional funds at any time in the future.

Should you need any additional information in connection with your Indemnity obligation, please feel free to contact the undersigned.  Your continued cooperation will be appreciated.

Yours truly,

**Trisura Guarantee Insurance Company**

**Stuart Detsky**
**Vice President, Surety & Warranty Claims**

Enclosures
cc:      David Stieper (via e-mail only)
         Sam H. Poteet, Jr. (via e-mail only)
         Mary Paty Lynn LeVan (via e-mail only)

JS 44C/SDNY
REV.
10/01/2020

**CIVIL COVER SHEET**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

PLAINTIFFS
TRISURA INSURANCE COMPANY

DEFENDANTS
BIGHORN CONSTRUCTION AND RECLAMATION, LLC; BIGHORN INVESTMENTS AND PROPERTIES, LLC; BIGHORN SAND & GRAVEL LLC; BRIDGELINK COMMODITIES LLC; BRIDGELINK ENGINEERING LLC;

ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER
McElroy, Deutsch, Mulvaney & Carpenter, LLP
225 Liberty Street, 36th Floor
New York, New York 10281

ATTORNEYS (IF KNOWN)

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
(DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

28 U.S.C. § 1332

Has this action, case, or proceeding, or one essentially the same been previously filed in SDNY at any time? No ☒Yes ☐    Judge Previously Assigned

If yes, was this case Vol.☐ Invol.☐ Dismissed. No ☐ Yes ☐ If yes, give date _____ & Case No. _____

Is THIS AN INTERNATIONAL ARBITRATION CASE?    No ☒    Yes ☐

*(PLACE AN [x] IN ONE BOX ONLY)*     NATURE OF SUIT

TORTS     ACTIONS UNDER STATUTES

**CONTRACT**
[x] 110 INSURANCE
[ ] 120 MARINE
[ ] 130 MILLER ACT
[ ] 140 NEGOTIABLE INSTRUMENT
[ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
[ ] 151 MEDICARE ACT
[ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS)
[ ] 153 RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS
[ ] 160 STOCKHOLDERS SUITS
[ ] 190 OTHER CONTRACT
[ ] 195 CONTRACT PRODUCT LIABILITY
[ ] 196 FRANCHISE

**REAL PROPERTY**
[ ] 210 LAND CONDEMNATION
[ ] 220 FORECLOSURE
[ ] 230 RENT LEASE & EJECTMENT
[ ] 240 TORTS TO LAND
[ ] 245 TORT PRODUCT LIABILITY
[ ] 290 ALL OTHER REAL PROPERTY

**PERSONAL INJURY**
[ ] 310 AIRPLANE
[ ] 315 AIRPLANE PRODUCT LIABILITY
[ ] 320 ASSAULT, LIBEL & SLANDER
[ ] 330 FEDERAL EMPLOYERS' LIABILITY
[ ] 340 MARINE
[ ] 345 MARINE PRODUCT LIABILITY
[ ] 350 MOTOR VEHICLE
[ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
[ ] 360 OTHER PERSONAL INJURY
[ ] 362 PERSONAL INJURY - MED MALPRACTICE

**ACTIONS UNDER STATUTES**

**CIVIL RIGHTS**
[ ] 440 OTHER CIVIL RIGHTS (Non-Prisoner)
[ ] 441 VOTING
[ ] 442 EMPLOYMENT
[ ] 443 HOUSING/ ACCOMMODATIONS
[ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT
[ ] 446 AMERICANS WITH DISABILITIES -OTHER
[ ] 448 EDUCATION

**PERSONAL INJURY**
[ ] 367 HEALTHCARE/ PHARMACEUTICAL PERSONAL INJURY/PRODUCT LIABILITY
[ ] 365 PERSONAL INJURY PRODUCT LIABILITY
[ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**PERSONAL PROPERTY**
[ ] 370 OTHER FRAUD
[ ] 371 TRUTH IN LENDING

[ ] 380 OTHER PERSONAL PROPERTY DAMAGE
[ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY

**PRISONER PETITIONS**
[ ] 463 ALIEN DETAINEE
[ ] 510 MOTIONS TO VACATE SENTENCE 28 USC 2255
[ ] 530 HABEAS CORPUS
[ ] 535 DEATH PENALTY
[ ] 540 MANDAMUS & OTHER

**PRISONER CIVIL RIGHTS**
[ ] 550 CIVIL RIGHTS
[ ] 555 PRISON CONDITION
[ ] 560 CIVIL DETAINEE CONDITIONS OF CONFINEMENT

**FORFEITURE/PENALTY**
[ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
[ ] 690 OTHER

**PROPERTY RIGHTS**
[ ] 820 COPYRIGHTS
[ ] 830 PATENT
[ ] 835 PATENT-ABBREVIATED NEW DRUG APPLICATION
[ ] 840 TRADEMARK

**LABOR**
[ ] 710 FAIR LABOR STANDARDS ACT
[ ] 720 LABOR/MGMT RELATIONS
[ ] 740 RAILWAY LABOR ACT
[ ] 751 FAMILY MEDICAL LEAVE ACT (FMLA)
[ ] 790 OTHER LABOR LITIGATION
[ ] 791 EMPL RET INC SECURITY ACT (ERISA)

**IMMIGRATION**
[ ] 462 NATURALIZATION APPLICATION
[ ] 465 OTHER IMMIGRATION ACTIONS

**BANKRUPTCY**
[ ] 422 APPEAL 28 USC 158
[ ] 423 WITHDRAWAL 28 USC 157

[ ] 880 DEFEND TRADE SECRETS ACT

**SOCIAL SECURITY**
[ ] 861 HIA (1395ff)
[ ] 862 BLACK LUNG (923)
[ ] 863 DIWC/DIWW (405(g))
[ ] 864 SSID TITLE XVI
[ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
[ ] 870 TAXES (U.S. Plaintiff or Defendant)
[ ] 871 IRS-THIRD PARTY 26 USC 7609

**OTHER STATUTES**
[ ] 375 FALSE CLAIMS
[ ] 376 QUI TAM
[ ] 400 STATE REAPPORTIONMENT
[ ] 410 ANTITRUST
[ ] 430 BANKS & BANKING
[ ] 450 COMMERCE
[ ] 460 DEPORTATION
[ ] 470 RACKETEER INFLU- ENCED & CORRUPT ORGANIZATION ACT (RICO)
[ ] 480 CONSUMER CREDIT
[ ] 485 TELEPHONE CONSUMER PROTECTION ACT

[ ] 490 CABLE/SATELLITE TV
[ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE

[ ] 890 OTHER STATUTORY ACTIONS
[ ] 891 AGRICULTURAL ACTS
[ ] 893 ENVIRONMENTAL MATTERS
[ ] 895 FREEDOM OF INFORMATION ACT
[ ] 896 ARBITRATION
[ ] 899 ADMINISTRATIVE PROCEDURE ACT/REVIEW OR APPEAL OF AGENCY DECISION

[ ] 950 CONSTITUTIONALITY OF STATE STATUTES

*Check if demanded in complaint:*

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 75    OTHER _____

*Check YES only if demanded in complaint*
JURY DEMAND: ☐ YES ☒NO

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y. AS DEFINED BY LOCAL RULE FOR DIVISION OF BUSINESS 13?
IF SO, STATE:

JUDGE _____ DOCKET NUMBER _____

NOTE: You must also submit at the time of filing the Statement of Relatedness form (Form IH-32).

*(PLACE AN x IN ONE BOX ONLY)*      **ORIGIN**

[x] 1 Original
Proceeding
   [ ] 2 Removed from
State Court
   [ ] 3 Remanded
from
Appellate
Court
   [ ] 4 Reinstated or
Reopened
   [ ] 5 Transferred from
(Specify District)
   [ ] 6 Multidistrict
Litigation
(Transferred)
   [ ] 7 Appeal to District
Judge from
Magistrate Judge

     [ ] a. **all parties represented**

     [ ] b. **At least one party
is pro se.**

                              [ ] 8 Multidistrict Litigation (Direct File)

*(PLACE AN x IN ONE BOX ONLY)*      **BASIS OF JURISDICTION**      ***IF DIVERSITY, INDICATE
CITIZENSHIP BELOW.***

[ ] 1 U.S. PLAINTIFF    [ ] 2 U.S. DEFENDANT    [ ] 3 FEDERAL QUESTION    [x] 4 DIVERSITY

                                   (U.S. NOT A PARTY)

## CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)

(Place an [X] in one box for Plaintiff and one box for Defendant)

| | PTF | DEF | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1 | [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 | [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [x] 5 |
| CITIZEN OF ANOTHER STATE | [ ] 2 | [ ] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [x] 4 | [ ] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

**Trisura Insurance Company**

**2 Stamford Plaza, Suite 1504**

**281 Tresser Boulevard**

**Stamford, CT 06901**

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

**Bighorn Construction and Reclamation, LLC**

**777 Main Street, Suite 2800**

**Fort Worth, TX 76102**

**[see Civil Cover Sheet rider for other Defendants and addresses]**

DEFENDANT(S) ADDRESS UNKNOWN
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN
THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

**COURTHOUSE ASSIGNMENT**

I hereby certify that this case should be assigned to the courthouse indicated below pursuant to Local Rule for Division of Business 18, 20 or 21.

Check one:    THIS ACTION SHOULD BE ASSIGNED TO:    [ ] WHITE PLAINS    [x] MANHATTAN

DATE 12/20/2023    /s/ Dennis O'Neil Cowling
                    SIGNATURE OF ATTORNEY OF RECORD          ADMITTED TO PRACTICE IN THIS DISTRICT
                                                      [ ] NO

RECEIPT #                                             [x] YES (DATE ADMITTED Mo. May Yr. 1996 )
                                                   Attorney Bar Code # NY 2201887

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ is so Designated.

Ruby J. Krajick, Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

Clear Form      Save      Print

Civil Cover Sheet
Rider

BIGHORN INVESTMENTS AND PROPERTIES, LLC
777 Main Street, Suite 2800
Fort Worth, TX 76102

BIGHORN SAND & GRAVEL LLC
777 Main Street, Suite 2800
Fort Worth, TX 76102

BRIDGELINK COMMODITIES LLC
777 Main Street, Suite 2800
Fort Worth, TX 76102

BRIDGELINK ENGINEERING LLC
777 Main Street, Suite 2800
Fort Worth, TX 76102

BRIDGELINK INVESTMENTS, LLC
777 Main Street, Suite 2800
Fort Worth, TX 76102

BRIDGELINK RENEWABLE ENERGY DEVELOPMENT LLC
777 Main Street, Suite 2800
Fort Worth, TX 76102

BRIDGELINK RENEWABLE ENERGY INVESTMENTS LLC
777 Main Street, Suite 2800
Fort Worth, TX 76102

INTERMOUTAIN ELECTRIC SERVICE, INC.
P.O. Box 2169
Rock Springs, WY 82902

COLE WAYNE JOHNSON
4204 S. County Rd. 1128
Midland, TX 79706

CORD HENRY JOHNSON
1677 Center Point Rd.
Weatherford, TX 76087

CASSIE HAMILTON,
1677 Center Point Rd.
Weatherford, TX 76087

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
TRISURA INSURANCE COMPANY,

                Plaintiff,

        –against–

BIGHORN CONSTRUCTION AND
RECLAMATION, LLC; BIGHORN
INVESTMENTS AND PROPERTIES, LLC;
BIGHORN SAND & GRAVEL LLC;
BRIDGELINK COMMODITIES LLC;
BRIDGELINK ENGINEERING LLC;
BRIDGELINK INVESTMENTS, LLC;
BRIDGELINK RENEWABLE ENERGY
DEVELOPMENT LLC; BRIDGELINK
RENEWABLE ENERGY INVESTMENTS LLC;
INTERMOUTAIN ELECTRIC SERVICE, INC.;
COLE WAYNE JOHNSON; CORD HENRY
JOHNSON; CASSIE HAMILTON,

                Defendants.
-------------------------------------------------------------X

Civil Action No. 1:23-cv-11053-GWH-JW

**AMENDED OR SUPPLEMENTAL
RULE 7.1 STATEMENT**

       Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, Plaintiff, Trisura Insurance Company ("Trisura"), by its attorneys McElroy, Deutsch, Mulvaney & Carpenter, LLP, respectfully submits the following corporate disclosure statement:

       Trisura is an Oklahoma corporation with its principal place of business located in Oklahoma. Trisura is not publicly traded. Trisura is 100% owned by Trisura (US) Holding Company.

       Trisura (US) Holding Company is an Oklahoma corporation with its principal place of business in Oklahoma. Trisura (US) Holding Company is not publicly traded. Trisura (US) Holding Company is 100% owned by Trisura Group Ltd.

       Trisura Group Ltd. is a Canadian corporation, incorporated under the Business

Corporations Act (Ontario), with its principal place of business located in Toronto, Ontario.

Trisura Group Ltd. is a publicly traded company on the Toronto Stock Exchange.

Dated:  New York, New York                McElroy, Deutsch, Mulvaney & Carpenter, LLP
        January 10, 2024                  *Attorneys for Trisura Insurance Company*

                                          By: _____ */s/ Dennis O'Neil Cowling*_____
                                              Dennis O'Neil Cowling
                                          225 Liberty Street, 36th Floor
                                          New York, New York 10281
                                          (212) 483-9490 (Telephone)
                                          (212) 483-9129 (Facsimile)
                                          dcowling@mdmc-law.com