USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/28/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
                            :

TRISURA INSURANCE COMPANY,    :

                            :        1:23-cv-11053-GHW

           Plaintiff,        :

                            :       <u>MEMORANDUM</u>

          -v-          :      <u>OPINION & ORDER</u>

                            :

BIGHORN CONSTRUCTION      :

AND RECLAMATION, LLC, *et al.*  :

              Defendants and    :

              Third-Party Plaintiffs,  :

                            :

          -v-          :

                            :

JICARILLA SOLAR 1, LLC, *and* REPSOL  :

RENEWABLES DEVELOPMENT COMPANY,  :

LLC,                           :

             Third-Party Defendants :

------------------------------------------------------------------ x

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

      Jicarilla Solar 1, LLC ("Jicarilla LLC") contracted with Bridgelink Engineering, LLC

("Bridgelink") to build a solar power facility in New Mexico. Jicarilla LLC later assigned its interest

under the contract to Repsol Renewables Development Company, LLC ("Repsol Development

LLC"). The project did not go according to plan. Bridgelink failed to complete the work on

schedule. So the owner of the solar facility terminated the contract with Bridgelink and drew down

on surety bonds issued by Trisura Insurance Company ("Trisura") to secure Bridgelink's

performance. Trisura commenced this action to force Bridgelink and a number of its affiliates

("Defendants") to reimburse it for the funds it paid out under the bonds.

Defendants filed a third-party action against Jicarilla LLC and Repsol Development LLC, claiming that Jicarilla LLC's assignment to Repsol Development LLC violated the terms of Jicarilla LLC's agreement with Bridgelink. Jicarilla LLC and Repsol Development LLC moved to dismiss Defendants' claims against them, asserting that the Court lacks personal jurisdiction over them. Because the third-party claims arise from an agreement related to a construction project in New Mexico, and neither Jicarilla LLC nor Repsol Development LLC transacted business in New York, their motion to dismiss Defendants' third-party claims is GRANTED.

## II.    BACKGROUND

### A.  Facts

#### 1.  The Jicarilla Solar Project in New Mexico

This case grows out of a contract to develop a solar power facility in New Mexico—the Jicarilla solar project. Jicarilla Solar 1, LLC ("Jicarilla LLC") was the initial owner of the project. On February 4, 2022, Jicarilla LLC entered into a contract with Bridgelink Engineering LLC ("Bridgelink"). Third-Party Complaint, Dkt. No. 85 ("3P Compl."), ¶ 10. That contract was the Solar Power Facility Engineering, Procurement and Construction Agreement (the "EPC Agreement"). Dkt. No. 119-2 Ex. A. Under the terms of the EPC Agreement, Bridgelink had broad responsibilities "on a fixed-price turnkey basis" to, among other things, "erect, install, start-up, test and commission the Facility." EPC Agreement § 2.1.

The EPC Agreement required Bridgelink to obtain surety bonds to secure its compliance with the contract. *Id.* § 5.8(a); *see also* 3P Compl. ¶ 14. The contract required that the bonds satisfy a number of conditions to ensure their credit quality, and provided that "the reasonable costs and expenses of establishing . . . or otherwise administering" the bonds were to be borne by Bridgelink. EPC Agreement § 5.8(d). The EPC Agreement did not require that Bridgelink contract with any

particular surety, and contained no requirements regarding the terms of any contract between Bridgelink and the surety.

The EPC Agreement contained a governing law clause. Section 16.4(a) provided that the agreement "shall be governed by, and interpreted and construed in accordance with, the Laws of the United States and the State of New Mexico, excluding choice of law rules." *Id.* § 16.4(a). The EPC Agreement contained a section with the heading "Submission to Jurisdiction, Venue." *Id.* § 16.4(b). But despite the heading, the text of that section of the agreement contained no language requiring any party to submit to the jurisdiction of any court. Instead, it only described the venue for any dispute. *Id.* ("The Parties agree that any suit, action or other legal proceeding by or against any Party (or its Affiliates or designees) with respect to or arising out of this Agreement shall be brought in the federal courts of the United States or the courts of the State of New Mexico.").[1]

In order to comply with the EPC Agreement's surety bond requirements, Bridgelink obtained two bonds issued by Trisura Insurance Company ("Trisura"). 3P Compl. ¶ 14. To backstop the bonds, Bridgelink and a number of its affiliates (collectively, "Defendants") entered into an indemnity agreement with Trisura. *Id.*; Dkt. No. 5, Ex. A (the "Indemnity Agreement"). The agreement was executed on February 4, 2022. *Id.* at ECF p. 11. The Indemnity Agreement required Defendants to "indemnify . . . [Trisura], against any and all losses, charges, expenses, costs, claims, demands and liabilities . . . which [Trisura] may sustain or incur . . . by reason of having executed or procured the execution of any Bond(s) . . . ." Indemnity Agreement § 2. Neither Jicarilla LLC nor Repsol Renewables Development, LLC ("Repsol Development LLC") was a party to the Indemnity Agreement.

---

[1] The Court observes that the drafters of the EPC Agreement chose not to limit venue to the federal courts in the state of New Mexico, but rather permitted an action to be brought in any federal court. The atypical features of this clause—omitting language requiring the parties to submit to the jurisdiction of designated courts, and permitting suit in any federal court, rather than those located in a designated forum state—may be the ultimate cause of the issues that led to the litigation of this motion in this court.

Unfortunately, the construction project did not go according to plan. Bridgelink alleges that the project was delayed because of the conduct of Repsol Development LLC, to which Jicarilla LLC had assigned the EPC Agreement. 3P Compl. ¶ 15. Regardless of the underlying cause of the problem, because of its dissatisfaction with Bridgelink's performance, on October 14, 2022, Jicarilla LLC provided Bridgelink a notice of contractor default and termination in connection with the EPC Agreement. *Id.* ¶ 16. On the same day, Defendants allege, Repsol Development LLC drew down on the bonds that secured the contract. *Id.*

### 2. Trisura Sues For Reimbursement

Trisura filed this action on December 20, 2023. Dkt. Nos. 1, 5. It filed an amended complaint shortly thereafter. Dkt. No. 9 ("Compl."). Trisura sued Bridgelink and all of its affiliates that had entered into the Indemnity Agreement. *See generally* Compl. Trisura alleged that it had made payment under the surety bonds upon demand. Compl. ¶ 30. Trisura alleged that it had made a demand that Defendants deposit collateral as required by the Indemnity Agreement, but that Defendants had failed to do so. *Id.* ¶¶ 28-31. As a result, Trisura claimed, among other things, that Defendants had breached their obligations under the Indemnity Agreement. *Id.* ¶¶ 32-41.

Trisura filed suit in this court because of the venue and jurisdiction provisions included in the Indemnity Agreement. *Id.* ¶ 2. The Indemnity Agreement was governed by New York law and specifically provided that venue for any legal dispute "shall be in the federal courts for the State of New York unless any jurisdictional prerequisites are not met, in which case it will lie with the state courts of New York." Indemnity Agreement § 28. The Indemnity Agreement also provided that each Defendant "irrevocably and unconditionally submits to the jurisdiction of said courts and waives any claim or defense in any such suit . . . based on alleged lack of personal jurisdiction, improper venue, forum non conveniences [sic], or any similar basis." *Id.*

Defendants answered Trisura's complaint on March 20, 2024.  Dkt. No. 55.  They did not assert any counterclaims or third-party claims at that time.

Magistrate Judge Jennifer E. Willis, to whom this case was referred, held an initial pretrial conference on May 16, 2024.  Dkt. No. 73.  Following that conference, Judge Willis entered a case management plan and scheduling order which scheduled the conduct of discovery in the case, among other things.  *Id.*  Several months later, on September 13, 2024, without seeking prior leave of the Court, Defendants filed a counterclaim against Trisura.  Dkt. No. 82.  They also filed the third-party action that is the subject of this motion.

### 3. The Third-Party Action

Defendants filed their third-party complaint against third-party defendants Jicarilla LLC, Repsol Development LLC and Hecate Energy, LLC ("Hecate," and together with Jicarilla LLC and Repsol Development LLC, the "Third-Party Defendants") on September 17, 2024.  Dkt. No. 85.[2] Defendants' claims against the Third-Party Defendants were premised on allegations that Jicarilla LLC violated the anti-assignment provision of the EPC Agreement by transferring its interest in the contract to Repsol Development LLC.  3P Compl. ¶ 11-13.  Defendants asserted that Jicarilla LLC assigned the contract to Repsol Development LLC without prior notice to, or consent from, Bridgelink.  *Id.* ¶ 11.  Defendants alleged that Bridgelink "had no intention of doing business with [Repsol Development LLC]" because it was "a foreign entity subject to processes that would make performance under the EPC Agreement difficult and subject to delay . . . ."  *Id.* ¶ 13. Defendants alleged that the improper assignment to Repsol Development LLC led to the delays that "thwarted Bridgelink['s] . . . ability to complete the project as agreed."  *Id.* ¶ 15.

---

[2] Defendants' claims against Hecate were dismissed by the Court on May 20, 2025 at the request of Defendants.  Dkt. No. 133.

Defendants asserted several claims against the Third-Party Defendants. First, Defendants asserted claims for breach of contract as a result of the alleged violation of the EPC Agreement's anti-assignment provision against Jicarilla LLC, Hecate, and Repsol Development LLC.[3] *Id.* ¶¶ 34–38, 48–51. The third-party complaint makes clear that Defendants' breach of contract claims arise under New Mexico law—the governing law of the EPC Agreement. *See, e.g., id.* ¶¶ 35–36 ("Hecate breached the EPC Agreement, which by contractual choice of law clause is governed and interpreted under the laws of the State of New Mexico. . . . Under New Mexico law, a claim for breach of contract requires the following . . . .").

Second, Defendants asserted claims for fraud against Hecate and Repsol Development LLC. *Id.* ¶¶ 39–43; 52–54. Defendants' fraud claims were based on allegations that Hecate failed to disclose the involvement of Repsol Development LLC in the project, and that Repsol Development LLC encouraged Hecate's misrepresentations. *Id.* ¶¶ 42, 53. The third-party complaint states that the fraud claims too arise under New Mexico law. *See, e.g., id.* ¶ 40 ("To successfully bring a claim for fraud under New Mexico law, a party must show that . . . .").

Third, Defendants asserted claims against Hecate and Repsol Development LLC for breach of the implied covenant of good faith and fair dealing under the EPC Agreement. *Id.* ¶¶ 44–47; 55–57. These claims too arise under New Mexico law. *Id.* ¶ 45 (pointing to New Mexico law defining the implied covenant of good faith and fair dealing).

In the third-party complaint, Defendants asserted only one basis for the Court to assume personal jurisdiction over Jicarilla LLC and Repsol Development LLC and for venue in this court: "Venue and jurisdiction are . . . proper in the United States District Court for the Southern District of New York pursuant to the venue and jurisdiction provisions in the Indemnity Agreement as

---

[3] The breach of contract claims are asserted on behalf of all Defendants. Only Bridgelink was a party to the EPC Agreement. The third-party complaint does not explain why any Defendant other than Bridgelink has standing to assert breach of contract claims under the EPC Agreement.

defined herein, executed by Plaintiff and Defendants, and claimed under by Third Party

Defendants." *Id.* ¶ 3.  Neither Jicarilla LLC nor Repsol Development LLC was organized under the

laws of the State of New York; nor do they have a principal place of business in this state.  *Id.* ¶ 8

("Jicarilla Solar 1 LLC is a Delaware limited liability company with its principal office located at . . .

Chicago, Illinois . . . Jicarilla is a citizen of the State of New Mexico . . . ."); *id.* ¶ 9 ("Repsol

Renewables Development Company, LLC is a Texas limited liability company with a principal

domestic office located at . . . Austin, Texas . . . Repsol is a resident of Texas . . . .").

### 4.  Procedural History

Jicarilla LLC and Repsol Development LLC filed a motion to dismiss the third-party claims

against them on December 4, 2024.  Dkt. Nos. 118 (notice of motion), 119 (memorandum of law).

In their motion, the remaining Third-Party Defendants argued that the Court does not have

personal jurisdiction over them.  They provided affidavits in support of their motion establishing

that neither "engaged in New York-based conduct related to" the Jicarilla project and that neither

company conducted any operations in New York.  Dkt. Nos. 119-1 ("Omiyale Repsol Decl.") at

¶¶ 8, 10; 119-2 ("Omiyale Jicarilla Decl.") at ¶¶ 8, 10.

Defendants filed an opposition to the motion on January 6, 2025.  Dkt. No. 122 ("Opp.").

The opposition presented Defendants' arguments to support a finding that the Court has personal

jurisdiction over Jicarilla LLC and Repsol Development LLC.  The opposition attached a number of

exhibits under cover of an affidavit.  Opp. at ECF 15-179.  The motion was fully briefed when

Jicarilla LLC and Repsol Development LLC filed their reply.  Dkt. Nos. 127 ("Reply"), 128

(affidavit).

This motion to dismiss was referred to Judge Willis for a report and recommendation.

Dkt. No. 7.  The Court has decided to withdraw the reference with respect to this motion in order

to resolve it without the need for a report and recommendation.

### III.    LEGAL STANDARD

On a motion to dismiss pursuant to Rule 12(b)(2), the non-movant "bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (*per curiam*)); *accord Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) (similar). The non-movant's burden of proof "varies depending on the procedural posture of the litigation." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). At the pleading stage, and prior to discovery, a non-movant need only make a *prima facie* showing that jurisdiction exists. *Id.* at 84–85; *see also Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 167–68 (2d Cir. 2015) ("In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists.") (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013)). "This prima facie showing 'must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant.'" *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)).

"On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court may look beyond the four corners of the complaint and consider materials outside the pleadings, including accompanying affidavits, declarations, and other written materials." *Knight v. Standard Chartered Bank*, 531 F. Supp. 3d 755, 760 (S.D.N.Y. 2021); *accord MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727–28 (2d Cir. 2012). The allegations in the complaint and the non-movant's affidavits must be taken "as true 'to the extent they are uncontroverted' by the [movant's] affidavits, 'which the district court may also consider.'" *NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d 330, 341 (S.D.N.Y.

2020) (quoting *GlaxoSmithKline LLC v. Laclede, Inc.*, No. 18-cv-4945, 2019 WL 293329, at *3

(S.D.N.Y. Jan. 23, 2019) (citing *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727–28 (2d Cir. 2012)).  On

the other hand, "[w]hen a defendant provides affidavits to support a Rule 12(b)(2) motion, the

plaintiff may not simply rest on the allegations of the complaint." *Laufer Grp. Int'l, Ltd. v. Standard*

*Furniture Mfg. Co., LLC*, No. 19-cv-10885, 2020 WL 4735123, at *2 (S.D.N.Y. Aug. 14, 2020)

(quoting 4 Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1067.6 (4th ed.

2019)).  Where "the parties present conflicting affidavits, all factual disputes are resolved in the

plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary

presentation by the moving party." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d at 673 (quoting

*Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala*

*Navala*, 989 F.2d 572, 580 (2d Cir. 1993)).  Courts will not, however, "draw argumentative inferences

in the [non-movant's] favor . . . [or] accept as true a legal conclusion couched as a factual allegation."

*Id.* (internal quotation marks and citation omitted).

District courts "resolving issues of personal jurisdiction must . . . engage in a two-part

analysis." *Bank Brussels Lambert*, 171 F.3d at 784.  "First, they must determine whether there is

jurisdiction over the [movant] under the relevant forum state's laws. . . .  Second, they must

determine whether an exercise of jurisdiction under these laws is consistent with federal due process

requirements." *Id.*  "To establish personal jurisdiction over a [movant], due process requires a [non-

movant] to allege (1) that a [movant] has 'certain minimum contacts' with the relevant forum, and

(2) that the exercise of jurisdiction is reasonable in the circumstances." *In re Terrorist Attacks*, 714

F.3d at 673 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  "To determine whether a

[party] has the necessary 'minimum contacts,' a distinction is made between 'specific' and 'general'

personal jurisdiction." *Id.*  Courts "may assert general personal jurisdiction over a [party] to hear any

and all claims against that [party] only when the [party]'s affiliations with the State in which suit is

brought 'are so constant and pervasive so as to render it essentially at home in the forum State.'"

*Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (quoting *Daimler AG v. Bauman*,

571 U.S. 117, 122 (2014)). Specific jurisdiction, by contrast, "depends on an affiliation between the

forum and the underlying controversy, principally, activity or an occurrence that takes place in the

forum State and is therefore subject to the State's regulation." *Id.* (quoting *Goodyear Dunlop Tires*

*Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

## IV.    DISCUSSION

### a.    General Jurisdiction Under N.Y. C.P.L.R. § 301

There is no basis for the Court to exercise general jurisdiction over Jicarilla LLC or Repsol

Development LLC. Section 301 of the N.Y. C.P.L.R. "allows courts in New York to exercise

general personal jurisdiction over individuals who are 'domiciled in New York, have a physical

presence in New York, . . . consent to New York's exercise of jurisdiction, [or,] . . . "do[] business"

in [New York].'" *Delgado-Perez v. City of New York*, No. 17-cv-01194, 2018 WL 6200039, at *2

(S.D.N.Y. Nov. 28, 2018) (quoting *Pinto-Thomaz v. Cusi*, No. 15-cv-1993, 2015 WL 7571833, at *3

(S.D.N.Y. Nov. 24, 2015)). To exercise general personal jurisdiction over a foreign corporation

under Section 301, the defendant must be "engaged in such a continuous and systematic course of

'doing business' here as to warrant a finding of its 'presence' in this jurisdiction." *McGowan v. Smith*,

52 N.Y.2d 268, 272 (1981) (quoting *Simonson v. Int'l Bank*, 14 N.Y.2d 281, 285 (1964)); *see also TAGC*

*Mgmt., LLC v. Lehman*, 842 F. Supp. 2d 575, 581 (S.D.N.Y. 2012) ("Under CPLR § 301, general

jurisdiction, which arises out of a defendant's contacts with the forum even if the contacts are

unrelated to the action before the court, is established over a foreign corporation or individual

engaging in a 'continuous and systematic course of doing business in New York.'" (citations

omitted)). "Occasional or casual business in New York does not confer general jurisdiction in New

York such that a foreign corporation may be sued in New York on causes of action that are wholly

unrelated to its activities in New York." *Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 226 (S.D.N.Y. 2013) (citing *Ball*, 902 F.2d at 198).

The Court cannot exercise general jurisdiction over Jicarilla LLC. Nothing in Defendants' factual allegations supports a finding of Jicarilla LLC's "presence" in New York. Jicarilla LLC is a Delaware limited liability company. Omiyale Jicarilla Decl. ¶ 3. The company's principal place of business is located in Texas. *Id.* ¶ 4.[4] The company's sole member is Repsol Development LLC. Jicarilla LLC does not conduct any operations in New York. *Id.* ¶ 10. Nor does it sell products or engage in marketing activities in New York. *Id.* ¶¶ 11, 12, 15. It does not have land, offices, facilities or bank accounts in New York. *Id.* ¶¶ 14, 16. None of the company's officers, directors or employees are in New York. *Id.* ¶ 17. Defendants assert no facts in either their third-party complaint or their opposition brief regarding Jicarilla LLC's contacts with New York state. The Court does not have general jurisdiction over Jicarilla LLC.

As with Jicarilla LLC, the Court cannot exercise general jurisdiction over Repsol Development LLC. Repsol Development LLC is a Texas limited liability company; its principal place of business is in that state. Omiyale Repsol Decl. ¶ 3, 4. None of the company's members reside in New York. *Id.* ¶ 5. Repsol Development LLC does not conduct any operations in New York. *Id.* ¶ 10. Nor does it sell products or engage in marketing activities in New York. *Id.* ¶¶ 11, 12, 15. It does not have land, offices, facilities or bank accounts in New York. *Id.* ¶¶ 14, 16. None of the company's officers, directors or employees are in New York. *Id.* ¶ 17. Defendants assert no facts in their third-party complaint regarding Repsol Development LLC's contacts with New York state.

---

[4] Defendants allege that Jicarilla LLC has its principal place in business in Illinois. 3P Compl. ¶ 8. The Court accepts the uncontested factual assertion in Mr. Omiyale's declaration. However, even Defendants' allegation does not provide a basis for the Court to conclude that a New York court has general jurisdiction over Jicarilla LLC.

Defendants' assertions in their opposition brief do not support a finding that the Court has general jurisdiction over Repsol Development LLC. In their opposition, Defendants assert that "Repsol continually maintains a presence in the State of New York. . . . Further, Repsol is developing a solar project in New York by the name of 'Harvest Hills Solar Project.'" Opp. at 10. Even if true, these factual assertions would likely be found to be insufficient to establish general jurisdiction over Repsol Development LLC because they do not establish a continuous and systematic course of doing business in New York. But the Court need not evaluate that question because Defendants' factual assertions are not supported by the evidence upon which Defendants rely.

To support the assertion that "Repsol continually maintains a presence in the State of New York," Defendants point to a page from the website of "Repsol." Dkt. No. 122-1 ("Repsol Webpage"). It is evident that the Repsol Webpage relates to a global family of companies under the Repsol banner, not Repsol Development LLC, the developer of the Jicarilla solar project. *Id.* at 2 ("We employ more than 24,000 people worldwide and our products are sold in nearly 100 countries, reaching around 24 million customers."). The webpage goes on to say that "we provide more than 500 local jobs at our office and operations in Texas, Pennsylvania, New York and Alaska." *Id.* Defendants assume that the reference to an office in New York refers to an office operated by Repsol Development LLC, but the webpage does not support that contention, only that some Repsol affiliate has an office in New York. Repsol Development LLC has represented that it has no offices in New York. Omiyale Repsol Decl. ¶ 14. Defendants' facially implausible interpretation of the Repsol Webpage as a description of the operations of Repsol Development LLC alone does not rebut that representation.

Defendants rely on another announcement on the internet to support their assertion that Repsol Development LLC is "developing a solar project in New York by the name of 'Harvest Hills

Solar Project.'" Opp. at 10. That assertion too is not adequately supported by the document that Defendants cite. The webpage upon which Defendants rely states that "Repsol Renewables is developing a large-scale solar project in the Towns of Genoa and Venice, which has the potential to power over 75,000 homes in New York State annually." Dkt. No. 122-2 ("Harvest Hills Webpage"). However, the Harvest Hills Webpage does not establish that the "Repsol Renewables" referenced in it is Repsol Development LLC, the specific entity involved in this lawsuit. Repsol Development LLC has represented that it does not have operations in New York. Omiyale Repsol Decl. ¶ 14. Defendants' interpretation of the Harvest Hills Webpage does not rebut that representation.

### b.  Specific Jurisdiction Under N.Y. C.P.L.R. § 302(a)(1)

The Court does not have specific jurisdiction over Jicarilla LLC or Repsol Development LLC under Section 302(a)(1) because neither conducted business in connection with the transaction that is the subject of Defendants' claims.[5] Section 302(a)(1) provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1). "To establish personal jurisdiction under Section 302(a)(1), two requirements must be met: (1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt. LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (citing *McGowan*, 52 N.Y.2d at 273).

"A nondomiciliary transacts business under CPLR § 302(a)(1) when he purposefully avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986) (internal quotation marks, brackets and citations omitted). "The New York Court of Appeals has explained

---

[5]  Defendants do not contend that any provision of the N.Y. C.P.L.R. other than Section 302(a)(1) supports a finding of personal jurisdiction over Jicarilla LLC and Repsol Development LLC.

that 'the overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York,' thereby 'invoking the benefits and protections of its laws.'" *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 61 (2d Cir. 2012) (citations omitted).  "Not all purposeful activity, however, constitutes a 'transaction of business within the meaning of [N.Y. C.P.L.R. § 302(a)(1)].'" *Id.* at 62 (alteration in original) (citation omitted).

> Purposeful activities are volitional acts by which the non-domiciliary "avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" . . . .  More than limited contacts are required for purposeful activities sufficient to establish that the non-domiciliary transacted business in New York.

*Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 376 (2014) (internal citations omitted).

"The lack of an in-state physical presence is not dispositive of the question whether a non-domiciliary is transacting business in New York." *Id.*  The exercise of long-arm jurisdiction under N.Y. C.P.L.R. § 302(a)(1) can be warranted when an out of state actor projects itself into New York to conduct business transactions by electronic and telephonic means.  *See id.*

> Regardless of whether by bricks and mortar structures, by conduct of individual actors, or by technological methods that permit business transactions and communications without the physical crossing of borders, a non-domiciliary transacts business when "on his or her own initiative . . . the non-domiciliary projects himself or herself" into this state to engage in a "sustained and substantial transaction of business."  Thus, where the non-domiciliary seeks out and initiates contact with New York, solicits business in New York, and establishes a continuing relationship, a non-domiciliary can be said to transact business within the meaning of CPLR 302(a)(1).

*Id.* at 376–77 (internal quotations and brackets omitted).

Determining whether a non-domiciliary is transacting business in New York is a fact-based determination.  *Id.* at 376.

Several factors should be considered in determining whether an out-of-state defendant transacts business in New York under Section 302(a)(1), including:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; (iv) whether the contract requires [parties to that contract] to send notices and payments to the forum state or subjects them to supervision by the corporation in the forum state.

*Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) (quoting *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.* 98 F.3d 25, 29 (2d Cir. 1996) (internal quotation marks omitted)). "Although all factors are relevant, no one factor is dispositive and other factors may be considered." *Id.* at 23. "[T]he ultimate determination is based on the totality of the circumstances." *Id.* (alteration in original) (citation omitted).

"If the defendant is transacting business in New York, the second half of the Section 302(a)(1) inquiry asks whether the cause of action 'aris[es] from' that business transaction or transactions." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 249 (2d Cir. 2007) (alteration in original) (citing *Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 818 N.Y.S.2d 164, 167 (2006)). "New York courts have held that a claim 'aris[es] from' a particular transaction when there is 'some articulable nexus between the business transacted and the cause of action sued upon,' or when 'there is a substantial relationship between the transaction and the claim asserted.'" *Id.* (quoting *Sole Resort*, 450 F.3d at 103). "[J]urisdiction is not justified where the relationship between the claim and transaction is too attenuated." *Johnson v. Ward*, 4 N.Y.3d 516, 520 (2005). "A connection that is 'merely coincidental' is insufficient to support jurisdiction." *Best Van Lines*, 490 F.3d at 249 (quoting *Sole Resort*, 450 F.3d at 103). "[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Sanderson v.*

*Horse Cave Theatre 76*, 881 F. Supp. 2d 493, 504 (S.D.N.Y. 2012) (quoting *Deutsche Bank*, 818 N.Y.S.2d at 166–67).

The Court does not have jurisdiction over either Jicarilla LLC or Repsol Development LLC under Section 302(a)(1). An evaluation of the facts of this case leads to the conclusion that neither "transacted business" in New York. The claims arise in connection with the EPC Agreement, a contract governed by New Mexico law to develop a project located in Mexico. Each of Defendants' arguments that Section 302(a)(1) applies on these facts lacks merit. The Court addresses each in turn.

### 1. Defendants' Jurisdictional Allegation In the Third-Party Complaint is Factually Inaccurate and Inadequate to Establish Jurisdiction

The Indemnity Agreement does not give rise to personal jurisdiction over Jicarilla LLC or Repsol Development LLC. The contention that it does is the sole basis asserted in the third-party complaint for personal jurisdiction over them. Defendants assert the following: "Venue and jurisdiction are also proper in the United States District Court for the Southern District of New York pursuant to the venue and jurisdiction provisions in the Indemnity Agreement as defined herein, executed by Plaintiff and Defendants, and claimed under by Third Party Defendants." 3P Compl. ¶ 3. This contention is factually inaccurate and does not support a finding that the Court has personal jurisdiction over Jicarilla LLC and Repsol Development LLC.

The first fundamental flaw with Defendants' jurisdictional allegation in the complaint is that neither Jicarilla LLC nor Repsol Development LLC was party to the Indemnity Agreement. The Indemnity Agreement was entered into between Trisura and Defendants. The Indemnity Agreement requires that the parties to it submit to the personal jurisdiction of the federal courts located in the State of New York. Indemnity Agreement § 28. Because Jicarilla LLC and Repsol Development LLC did not sign the Indemnity Agreement, that provision of the Indemnity Agreement does not bind them. To their credit, Defendants do not argue that it does. Instead,

Defendants argue that Jicarilla LLC and Repsol Development LLC "claimed under" the Indemnity Agreement.

The second fundamental flaw with Defendants' jurisdictional allegation in the complaint is that Defendants' assertion that Jicarilla LLC and Repsol Development LLC "claimed under" the Indemnity Agreement is factually inaccurate. As beneficiary of the bonds issued by Trisura, any claim by Jicarilla LLC or Repsol Development LLC was made "under" the bonds issued by Trisura. The Indemnity Agreement provided for reimbursement from Defendants to Trisura. Trisura is making a claim under the Indemnity Agreement against Defendants in this action. *See generally* Compl. Defendants' assertion in the third-party complaint that Jicarilla LLC and Repsol Development LLC "claimed under" the Indemnity Agreement is an erroneous description of the facts of this case. Those entities "claimed under" the surety bonds, which were issued by Trisura. In their opposition to this motion to dismiss, Defendants did not defend the jurisdictional allegation contained the third-party complaint. *See generally* Opp. Instead, they articulated a number of other, similarly flawed, arguments to support a finding of personal jurisdiction over Jicarilla LLC and Repsol Development LLC, to which the Court turns now.

### 2. The Bonds Do Not Support a Finding of Personal Jurisdiction Over Third-Party Defendants

Pivoting from the third-party complaint's jurisdictional allegations, Defendants argued in their opposition to the motion to dismiss that Jicarilla LLC and Repsol Development LLC transacted business in New York because they assigned the EPC Agreement to Repsol "knowing that the attendant performance bond agreements were subject to the law of the State of New York." *Id.* at 9 (Repsol Development LLC), 10 (Jicarilla LLC). This argument is not supported by the factual record and does not support the conclusion that the Court has personal jurisdiction over Jicarilla LLC and Repsol Development LLC.

As described above, the EPC Agreement required that Bridgelink obtain bonds to secure its payment and performance obligations under the agreement. Trisura issued two bonds to Jicarilla LLC on February 10, 2022. 3P Compl. ¶ 14. The bonds were a performance bond (the "Solar Performance Bond") and a payment bond (the "Solar Payment Bond," and, together with the Solar Performance Bond, the "Bonds"). *Id.*; *see also* Dkt. No. 122-8 at 1-5 (the Solar Performance Bond); Dkt. No. 122-8 at 6-9 (the Solar Payment Bond).

There is no factual support for Defendants' assertion that the performance bond agreements "were subject to the law of the State of New York." Both Bonds contain provisions that establish the proper venue for any dispute. They each provide that "[a]ny proceeding, . . . may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located." Solar Performance Bond § 11; Solar Payment Bond § 12. The project that is the subject of the bond was located in New Mexico. Neither Bond indicates that it is to be governed by New York law. Therefore, Defendants' argument that Jicarilla LLC and Repsol Development LLC transacted business in New York because the Bonds were "subject to the law of the State of New York" lacks merit.

Nor do the Bonds incorporate the terms of the Indemnity Agreement. Defendants argue in their opposition that the "Solar Bonds Agreement provides for an 'Indemnity Agreement' subject to New York law and venue." Opp. at 9 (Repsol Development LLC), 10 (Jicarilla LLC). This contention too is unsupported by the facts. Neither Bond refers to the Indemnity Agreement. The only external contracts to which the Bonds make reference are the EPC Agreement and documents "that comprise the agreement between the Owner and Contractor." Solar Performance Bond §§ 14.2 and 14.5; Solar Payment Bond §§ 16.3 and 16.5. The Bonds do not "provide for" the Indemnity Agreement. Defendants' assertion that they do is not supported by the factual record.

Therefore this argument does not support a finding that the Court has jurisdiction over Jicarilla LLC and Repsol Development LLC.[6]

The assignment of a contract that benefited from the Bonds did not constitute the transaction of business in New York. While Defendants' opposition fails to articulate this argument, the Court considers whether Jicarilla LLC's assignment of the EPC Agreement, which in turn benefited from the credit support of the Bonds, constituted the transaction of business in New York. The clear answer to this question is no. Neither Jicarilla LLC nor Repsol Development LLC had an on-going contractual relationship with a New York corporation; none of the entities involved in the Jicarilla solar project or the issuance of the Bonds is a New York corporation. No facts have been presented to the Court indicating that the EPC Agreement or the assignment from Jicarilla LLC to Repsol Development LLC—the subjects of Defendants' claims against them—was negotiated or executed in New York. Similarly, no facts have been presented to the Court suggesting that meetings regarding those agreements took place in this state. The agreements that are the subject of Defendants' claims are not governed by New York law. And no payment in connection with them was to be made into or out of New York. The assignment by Jicarilla LLC to Repsol of the EPC Agreement did not constitute the transaction of business in New York.

The fact that the EPC Agreement benefited from the credit support of the Bonds does not change the analysis. First, as described above, the Bonds themselves have no connection to New York: they were issued by a Trisura, a company organized in Oklahoma, in support of a transaction in New Mexico. Second, the Indemnity Agreement was structured to be independent of the EPC

---

[6] The EPC Agreement required only the issuance of performance bonds with an insurer with a particular credit rating. It did not prescribe the entity from which the bonds would be provided or the nature of the arrangements between Bridgelink and the surety. In particular, it did not require that the issuer of the bond be located in New York or that New York law govern the underlying contracts. Through their argument that the bond agreements "provided for" the Indemnity Agreement, Defendants misrepresent the facts, and also seem to misapprehend the structure of the transaction. The EPC Agreement appears to provide for the issuance of a surety bond as a safeguard against the credit risk of the contractor, which is assumed by the surety. Given that, it is unsurprising that the EPC Agreement would not include provisions dictating the terms of the indemnity arrangements between the surety and Bridgelink.

Agreement and the Bonds themselves—the EPC Agreement only required bonds from a credit-worthy issuer; it contained no requirements with respect to the backstop arrangements between the contractor and the surety.  Third, the Bonds existed before the date of the assignment.  Even if there was a connection between the Bonds and New York (and none has been shown), the assignment did not procure the issuance of the Bonds or influence their terms.  The Bonds existed before the assignment was implemented.

### 3. The Termination Letter Does Not Support a Finding of Personal Jurisdiction Over Third-Party Defendants

Defendants' final attempt to find a ground upon which to rest personal jurisdiction over Repsol Development LLC is also unsupported by the factual record.  In their opposition, Defendants contend that "Repsol also asked that the bond claims be decided pursuant to New York law, with any disputes relating to same to be adjudicated in this United States District Court for the Southern District of New York."  Opp. at 9.  To support this contention, Defendants cite to the letter that Jicarilla LLC sent to Bridgelink and Trisura, declaring Bridgelink in default under the EPC Agreement and demanding performance under the Solar Performance Bond.  Dkt. No. 122-4 (the "Termination Letter").

There is nothing in the Termination Letter that supports Defendants' assertion that in it "Repsol . . . asked that the bond claims be decided pursuant to New York law."  Opp. at 9.  The Termination Letter contains no statement regarding choice of law, jurisdiction or venue. Defendants' description of the letter in their opposition is factually inaccurate and does not support a finding of personal jurisdiction over Repsol Development LLC.

### c. Pendent Personal Jurisdiction

Defendants' argument that the Court has jurisdiction over Jicarilla LLC and Repsol Development LLC under the doctrine of pendent party jurisdiction is based on a profound misunderstanding of the concept and the cases that Defendants cite in support of their argument.

"Put simply, a court may exercise pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which a court does have personal jurisdiction." *Truck-Lite Co., LLC v. Grote Industries, Inc.*, 2020 WL 5793297, at *2 (W.D.N.Y. 2020) (internal quotations omitted); *see also Pension Committee of University of Montreal Pension Plan v. Banc of America Securities, LLC*, 446 F.Supp.2d 163, 175 (S.D.N.Y. 2006) ("A court may assert pendent personal jurisdiction over defendants with respect to state-law claims where that court has personal jurisdiction over those defendants based on federal claims stemming from the same facts.").

Defendants' argument that the Court has personal jurisdiction over Jicarilla LLC and Repsol Development LLC merely because Defendants' claims against them allegedly share a common nucleus of operative facts with Trisura's claims against Defendants is plainly wrong. Opp. at 8, 10, 11. The cases that Defendants cite in support of their argument do not stand for that proposition. For example, Defendants cite to the decision in *Truck-Lite* to support their argument, but the holding of the case expressly contradicts their interpretation of it. In *Truck-Lite*, the court wrote that "pendent personal jurisdiction exists where: (1) the court has personal jurisdiction over the defendant with respect to one claim, via either a statute authorizing nationwide service of process or the forum state's long-arm statute; and (2) the plaintiff raises another claim against that defendant, based on the same core facts, for which the court lacks an independent basis for personal jurisdiction." *Truck-Lite Co., LLC*, 2020 WL 5793297, at *2. Defendants ignore the first of these two requirements. Defendants' argument that the Court has pendent party jurisdiction over Jicarilla LLC and Repsol Development LLC despite the want of any other hook for the Court to obtain personal jurisdiction over them borders on frivolous. It is contradicted by the very cases they cite.

## V.     CONCLUSION

The Court does not have personal jurisdiction over either Jicarilla LLC or Repsol Development LLC.  Therefore, their motion to dismiss for lack of personal jurisdiction is GRANTED.  The claims against Jicarilla LLC and Repsol Development LLC are dismissed without prejudice.[7]

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 118.  There being no just reason for delay, the Clerk of Court is directed to enter judgment for Jicarilla Solar 1, LLC and Repsol Renewables Development Company, LLC and to remove their names from the caption of this case.

SO ORDERED.

Dated:  May 28, 2025
New York, New York

_____
GREGORY H. WOODS
United States District Judge

---

[7] For the avoidance of doubt, because the Court has dismissed these claims without prejudice, the dismissal does not bar Defendants from pursuing their claims in a jurisdiction with personal jurisdiction over Jicarilla LLC and Repsol Development LLC.